# NO. 23-4615

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## DAVID HYUN CHANG,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

———————————

**JOINT APPENDIX
Volume I of II
(Pages 1 – 200)**

———————————

Matthew B. Kaplan
THE KAPLAN LAW FIRM
1100 N Glebe Road
Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

Megan M. Montoya
OFFICE OF THE UNITED
  STATES ATTORNEY
Suite 300
Fountain Plaza 3
721 Lakefront Commons
Newport News, VA 23606
(757) 441-6331
megan.montoya@usdoj.gov

*Counsel for Appellant*                    *Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS
## Volume I of II

Page:

Docket Entries [2:21-cr-00146-JAG-LRL All Defendants] ........................JA1

Indictment,
   filed December 16, 2021 [DE8] ...........................................JA15

Statement of the Facts (*Campbell*)
   filed March 25, 2022 [DE31] ...............................................JA20

Statement of the Facts (*Chang*)
   filed April 1, 2022 [DE35] ..................................................JA23

Sentencing Guidelines Order
   filed April 1, 2022 [DE36] ..................................................JA26

Transcript of Sentencing Hearing (*Campbell*)
Before the Honorable John A. Gibney, Jr.
   on July 29, 2022 [DE44].....................................................JA29

Judgment in a Criminal Case (*Campbell*)
   filed July 26, 2022 [DE45]...................................................JA48

Government's Position with
Respect to Sentencing (*Chang*)
   filed August 1, 2022 [DE50]................................................JA55

Defendant's Position on Sentencing (*Chang*)
   filed August 1, 2022 [DE51]................................................JA61

**Order**
**Court Will Consider Upward Variance for the Guideline**
**Sentencing Range Set Forth by the Presentence Report**
      **filed August 8, 2022 [DE56]**...................................................................JA69

**Defendant Chang Letter to Judge**
      **filed September 19, 2022 [DE64]** ......................................................JA70

**Transcript of Sentencing Hearing (*Chang*)**
**Before the Honorable John A. Gibney, Jr.**
      **on October 21, 2022 [DE70]** .................................................................JA71

      **Testimony of <u>John H. Galbreath</u>:**

      **Direct Examination by Mr. O'Donnell**..............................................JA88

**Defendant's Notice of Appeal (*Chang*)**
      **filed October 24, 2022 [DE71]** ............................................................JA137

**Amended Judgment (*Chang*)**
      **filed October 24, 2022 [DE72]** ...........................................................JA139

**Order**
**Granting Motion to Remand Case (*Chang*)**
      **filed June 26, 2023 [DE89]**...................................................................JA146

**Judgment in a Criminal Case (*Chang*)**
      **filed June 26, 2023 [DE90]**...................................................................JA148

**Government's Position with Respect to Resentencing (*Chang*)**
      **filed September 15, 2023 [DE99]** .......................................................JA149

**Order**
**Court Will Consider Upward Variance for the Guideline**
**Sentencing Range Set Forth by the Presentence Report**
     filed September 26, 2023 [DE102] .....................................................JA156


**Transcript of Resentencing Hearing (*Chang*)**
**Before the Honorable John A. Gibney, Jr.**
     on September 29, 2023 [DE103] .......................................................JA157


**Notice of Appeal (*Chang*)**
     filed September 29, 2023 [DE104] ...................................................JA192


**Amended Judgment in a Criminal Case (*Chang*)**
     filed October 2, 2023 [DE105] .........................................................JA194

# TABLE OF CONTENTS
## Volume II of II – Under Seal and Nonpublic

Page:

**Presentence Investigative Report (*Chang*)**
**With Addendum**
    **filed July 27, 2022 [DE42]**.................................................................JA201

**Defendant's Objections to the Presentence Report (*Chang*),**
**with Exhibit,**
    **filed August 1, 2022 [DE52]**.............................................................JA224

    **Exhibit:**
    **A.**    **Proffer Letter from Amanda Conner,**
        **with Attachment,**
            **dated July 14, 2022 [DE52-1]**.........................................JA245

**Government's Response in Opposition to**
**Defendant's Sentencing Objection (*Chang*),**
**with Exhibit,**
    **filed August 4, 2022 [DE53]**..............................................................JA253

    **Exhibit:**

    **1.**    **Report of Investigation**
            **dated August 1, 2022 [DE53-1]**.....................................JA264

**Defendant's Reply to Government's Response to**
**Defendant's Objections to the Presentence Report (*Chang*)**
    **filed August 9, 2022 [DE55]**..............................................................JA267

**Statement of Reason (*Chang*)**
    **filed October 24, 2022 [DE73]**.........................................................JA280

**Defendant Chang Sentencing Position and Motion for Downward Variance, With Exhibit,**

    filed September 9, 2023 [DE101] ......................................................JA284

    <u>Exhibit</u>:

    C.    **Confidential Medical Record for David H. Chang [DE101-3]** ......................................................JA305

**Statement of Reasons (*Chang*)**

    filed October 2, 2023 [DE106] ..........................................................JA314

**Final Presentence Investigation Report (*Chang*)**

    filed October 3, 2023 [DE107] ..........................................................JA318

Query   Reports   Utilities   Help   Log Out

APPEAL,CLOSED

# U.S. District Court
# Eastern District of Virginia - (Norfolk)
## CRIMINAL DOCKET FOR CASE #: 2:21-cr-00146-JAG-LRL All Defendants

Case title: USA v. Chang et al                    Date Filed: 12/16/2021

Magistrate judge case number: 2:21-mj-00307      Date Terminated: 10/24/2022

---

Assigned to: District Judge John A. Gibney, Jr
Referred to: Magistrate Judge Lawrence R. Leonard

Appeals court case numbers: 22-4605 4CCA
Case manager Richard H. Sewell, 23-4615
4CCA Case Manager Rachel Phillips

### Defendant (1)

**David Hyun Chang**
*TERMINATED: 10/24/2022*
*also known as*
Dave Cali
*TERMINATED: 10/24/2022*

represented by **Christopher James O'Donnell**
Christopher J. O'Donnell, PLLC
100 7th Street
Suite 104
Portsmouth, VA 23704
757-544-8673
Email: cjoattorney@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Amanda Catherine Conner**
Federal Public Defender's Office
500 East Main Street
Ste 500
Norfolk, VA 23510
757-457-0800
Fax: 757-457-0880
Email: amanda_conner@fd.org
*TERMINATED: 08/15/2022*
*Designation: Public Defender*

### Pending Counts

T.21:846, 841(a)(1), and 841(b)(1)(B) -
Conspiracy to Distribute and Possess with
Intent to Distribute Cocaine/T.18:924(d)(1);
T.21:853; and T.28:2461(c) - Criminal

### Disposition

69 MONTHS IMPRISONMENT; 10
YEARS SUPERVISED RELEASE; $100
S/A

## JA1

Forfeiture
(1)

## Highest Offense Level (Opening)

Felony

## Terminated Counts                                    Disposition

None

## Highest Offense Level (Terminated)

None

## Complaints                                           Disposition

T.21:846 and T.21:841(b)(1)(C) -
Conspiracy to distribute and possess with
intent to distribute a mixture or substance
containing a detectable amount of cocaine, a
Schedule II controlled substance

---

Assigned to: District Judge John A. Gibney,
Jr
Referred to: Magistrate Judge Lawrence R.
Leonard

## Defendant (2)

**Harold Dushawn Campbell**                 represented by  **S.W. Dawson**
*TERMINATED: 07/29/2022*                                    Dawson PLC
                                                            P O Box 58
                                                            Norfolk, VA 23501
                                                            (757) 282-6601
                                                            Fax: (757) 282-6617
                                                            Email: swd@dawsonplc.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

## Pending Counts                                       Disposition

T.21:846, 841(a)(1), and 841(b)(1)(B) -
Conspiracy to Distribute and Possess with
Intent to Distribute Cocaine/T.18:924(d)(1);     72 MONTHS IMPRISONMENT; 4 YEARS
T.21:853; and T.28:2461(c) - Criminal            SUPERVISED RELEASE; $100 S/A
Forfeiture
(1)

## Highest Offense Level (Opening)

Felony

JA2

## Terminated Counts                                    Disposition

None

## Highest Offense Level (Terminated)

None

## Complaints                                          Disposition

None

---

## Plaintiff

**USA**                          represented by  **Megan M. Montoya**
                                                 United States Attorney Office - Norfolk
                                                 101 W Main St
                                                 Suite 8000
                                                 Norfolk, VA 23510
                                                 757-441-6331
                                                 Email: megan.montoya@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/18/2021 | 1 | CRIMINAL COMPLAINT as to David Chang (1). (jhie, ) [2:21-mj-00307] (Entered: 11/18/2021) |
| 11/18/2021 | 2 | REDACTED AFFIDAVIT in support of 1 Criminal Complaint by USA as to David Chang (jhie, ) [2:21-mj-00307] (Entered: 11/18/2021) |
| 11/18/2021 | 3 | SEALED AFFIDAVIT in support of 1 Criminal Complaint by USA as to David Chang (jhie, ) [2:21-mj-00307] (Entered: 11/18/2021) |
| 11/18/2021 | 4 | Arrest Warrant Issued and Delivered to USM in case as to David Chang. (jhie, ) [2:21-mj-00307] (Entered: 11/18/2021) |
| 11/19/2021 |  | Arrest of David Chang in Central District of California. (jhie, ) [2:21-mj-00307] (Entered: 11/29/2021) |
| 11/19/2021 | 6 | CJA 23 Financial Affidavit filed in Central District of California by David Chang (jhie, ) [2:21-mj-00307] (Entered: 11/29/2021) |
| 11/29/2021 | 7 | Rule 5(c)(3) Documents Received as to David Chang (jhie, ) [2:21-mj-00307] (Entered: 11/29/2021) |
| 12/16/2021 | 8 | INDICTMENT returned and filed in Open Court as to David Hyun Chang (1) count(s) 1, Harold Dushawn Campbell (2) count(s) 1. On motion of the Government, the court directed warrant to be issued for Harold Dushawn Campbell. David Chang in Federal Custody. Arrested in CA and is being brought to ED/VA. (Attachments: # 1 Deft. Info. Sheet - Chang, # 2 Deft. Info. Sheet - Campbell) (tamarm, ) (Entered: 12/16/2021) |
| 12/16/2021 | 12 | Arrest Warrant Issued and delivered to USM in case as to Harold Dushawn Campbell. (tamarm, ) (Entered: 12/16/2021) |

| 01/20/2022 | 13 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report - CACD) (SEALED - government and defense counsel) as to David Hyun Chang. (bell, robert) (Entered: 01/20/2022) |
|---|---|---|
| 01/25/2022 | 14 | NOTICE OF ATTORNEY APPEARANCE: S.W. Dawson appearing for Harold Dushawn Campbell (Dawson, S.W.) (Entered: 01/25/2022) |
| 01/27/2022 | | Set Hearings as to David Hyun Chang: Arraignment set for 1/27/2022 at 02:30 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Lawrence R. Leonard. (lwoo) (Entered: 01/27/2022) |
| 01/27/2022 | | Set Hearings as to Harold Dushawn Campbell: Initial Appearance set for 1/27/2022 at 02:30 PM in Norfolk Mag Courtroom 2 before Magistrate Judge Lawrence R. Leonard. (cdod, ) (Entered: 01/27/2022) |
| 01/27/2022 | | Arrest of Harold Dushawn Campbell (tamarm, ) (Entered: 01/27/2022) |
| 01/27/2022 | 15 | Minute Entry for Arraignment as to David Hyun Chang (1) Count 1 held on 1/27/2022 before Magistrate Judge Lawrence R. Leonard. Defendant present, in custody. Defendant waived formal arraignment, entered plea of not guilty, wishes to appear at preliminary hearings and demands jury trial. Status Conference set for 2/2/2022 at 12:00 PM in Norfolk Telephonically before District Judge John A. Gibney Jr. Defendant remanded.<br><br>**Appearances**: AUSA Megan Montoya for the Government, AFPD Amanda Conner for defendant. (Court Reporter FTR.)(lwoo) (Entered: 01/27/2022) |
| 01/27/2022 | 16 | Agreed Discovery Order as to David Hyun Chang. Signed by Magistrate Judge Lawrence R. Leonard and filed in open court on 1/27/22. (lwoo) (Entered: 01/27/2022) |
| 01/27/2022 | 17 | Minute Entry for proceedings held before Magistrate Judge Lawrence R. Leonard. (Court Reporter FTR.) Initial Appearance as to Harold Dushawn Campbell held. Megan Montoya, AUSA, present on behalf of the Government. Attorney S.W. Dawson present on behalf of the defendant. Defendant present in custody. Government motion for detention. Detention Hearing set for 2/1/2022 at 02:30 PM in Norfolk Courtroom 5 before Magistrate Judge Robert J. Krask. Status Conference set for 2/2/2022 at 12:00 PM Telephonically before District Judge John A. Gibney Jr. Defendant remanded to custody of USM. (tamarm, ) (Entered: 01/27/2022) |
| 01/27/2022 | 18 | Temporary Detention Order as to Harold Dushawn Campbell. Signed by Magistrate Judge Lawrence R. Leonard on 1/27/2022. (tamarm, ) (Entered: 01/27/2022) |
| 01/27/2022 | 19 | ORDER - This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116-182, 134 Stat. 894 (Oct. 21, 2020), the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including vacating a conviction or disciplinary action against the prosecution. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to Harold Dushawn Campbell. Signed by Magistrate Judge Lawrence R. Leonard on 1/27/2022. (tamarm, ) (Entered: 01/27/2022) |
| 01/27/2022 | | JS2 as to David Hyun Chang (afar) (Entered: 05/09/2022) |

JA4

| 01/28/2022 | 20 | Arrest Warrant Returned Executed on 1/28/22 in case as to Harold Dushawn Campbell. (bpet, ) (Entered: 01/28/2022) |
|---|---|---|
| 01/28/2022 | | Reset Hearings as to Harold Dushawn Campbell: Arraignment and Detention Hearing set for 2/3/2022 at 02:30 PM in Norfolk Courtroom 5 Magistrate Judge Robert J. Krask. (btit) (Entered: 01/28/2022) |
| 01/31/2022 | | Reset Hearings as to Harold Dushawn Campbell: Arraignment and Detention Hearing set for 2/1/2022 at 02:30 PM in Norfolk Courtroom 5 Magistrate Judge Robert J. Krask. (btit) (Entered: 01/31/2022) |
| 02/01/2022 | 21 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED - government and defense counsel) as to Harold Dushawn Campbell. (bell, robert) (Entered: 02/01/2022) |
| 02/02/2022 | 22 | ORDER - This matter comes before the Court on its own initiative to set trial dates and pretrial deadlines. The Court sets this case for a jury trial on **April 6-11, 2022.** Trial will begin each day at 9:00 a.m. SEE ORDER FOR DEADLINES AND DETAILS. Signed by District Judge John A. Gibney, Jr. on 2/2/2022. (smej, ) (Entered: 02/02/2022) |
| 02/02/2022 | | Set Hearing as to David Hyun Chang and Harold Dushawn Campbell: Jury Trial set for 4/6/2022 at 09:00 AM in Norfolk Courtroom 4 before District Judge John A. Gibney, Jr. (wtuc) (Entered: 02/02/2022) |
| 02/02/2022 | | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Conference call to set trial date as to David Hyun Chang, Harold Dushawn Campbell held on 2/2/2022 (wtuc) (Entered: 02/14/2022) |
| 02/04/2022 | | Reset Hearings as to Harold Dushawn Campbell: Arraignment and Detention Hearing set for 2/15/2022 at 03:00 PM Magistrate Judge Lawrence R. Leonard. Location TBD. (btit) (Entered: 02/04/2022) |
| 02/14/2022 | 23 | Consent MOTION for Extension *of Time to File Pretrial Motions* by David Hyun Chang. (Attachments: # 1 Proposed Order)(Conner, Amanda) (Entered: 02/14/2022) |
| 02/14/2022 | 24 | ORDER On this day, this matter came before the Court on the defendant's unopposed motion to extend the time to file pre-trial motions from Wednesday, February 16, 2022, to Wednesday, March 2, 2022. For good cause shown, the motion is granted and it is hereby ORDERED that the deadline for the defendant to file any pre-trial motions is extended to March 2, 2022. (ECF No. 23 .). Signed by District Judge John A. Gibney, Jr on 2/14/2022. (asho, ) (Entered: 02/14/2022) |
| 02/15/2022 | 25 | Minute Entry for Arraignment and Detention Hearing as to Harold Dushawn Campbell held on 2/15/2022, before Magistrate Judge Lawrence R. Leonard. Defendant present, in custody. Defendant waived detention hearing. Arraignment held. Defendant waived formal arraignment, entered plea of not guilty, demands jury trial and wishes to appear at preliminary hearings. Jury Trial set for 4/6/2022 at 10:00 AM before District Judge John A. Gibney Jr. in Norfolk, courtroom TBD. Agreed Discovery Order filed. Defendant remanded.<br><br>**Appearances**: AUSA Megan Montoya for the Government, retained attorney S.W. Dawson for defendant. (Court Reporter FTR.)(lwoo) (Entered: 02/16/2022) |
| 02/15/2022 | 26 | Agreed Discovery Order as to Harold Dushawn Campbell. Signed by Magistrate Judge Lawrence R. Leonard and filed in open court on 2/15/22. (lwoo) (Entered: 02/16/2022) |
| 02/16/2022 | 27 | DETENTION ORDER as to Harold Dushawn Campbell. Signed by Magistrate Judge Lawrence R. Leonard on 2/15/2022. (tamarm, ) (Entered: 02/16/2022) |

JA5

| 03/14/2022 | 28 | Sealed Document (dbra, ) (Entered: 03/14/2022) |
|---|---|---|
| 03/21/2022 | | Set Hearing as to Harold Dushawn Campbell: Plea Agreement Hearing set for 3/25/2022 at 09:00 AM in Norfolk Courtroom 1 before District Judge John A. Gibney, Jr. (wtuc) (Entered: 03/21/2022) |
| 03/22/2022 | | Set Hearing as to David Hyun Chang: Plea Agreement Hearing set for 4/1/2022 at 10:30 AM before District Judge John A. Gibney, Jr. (courtroom to be determined) (wtuc) (Entered: 03/22/2022) |
| 03/25/2022 | 29 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Plea Agreement Hearing as to Harold Dushawn Campbell held on 3/25/2022; Plea entered by Harold Dushawn Campbell (2) Guilty Count 1; Sentencing set for July 29 at 9:00 a.m.; Dft remanded to custody (Court Reporter P. McManus,OCR.)(wtuc) (Entered: 03/25/2022) |
| 03/25/2022 | 30 | PLEA AGREEMENT as to Harold Dushawn Campbell (wtuc) (Entered: 03/25/2022) |
| 03/25/2022 | 31 | Statement of Facts as to Harold Dushawn Campbell (wtuc) (Entered: 03/25/2022) |
| 03/25/2022 | 32 | Order for sentencing guidelines as to Harold Dushawn Campbell. Signed by District Judge John A. Gibney, Jr. on 3/25/22. (wtuc) (Entered: 03/25/2022) |
| 03/25/2022 | | Set Hearing as to Harold Dushawn Campbell: Sentencing set for 7/29/2022 at 09:00 AM before District Judge John A. Gibney, Jr. (wtuc) (Entered: 03/25/2022) |
| 03/25/2022 | | Reset Hearing as to David Hyun Chang: Plea Agreement Hearing set for 4/1/2022 at 10:30 AM in Norfolk Courtroom 1 before District Judge John A. Gibney, Jr. (ONLY CHANGE - COURTROOM DESIGNATION) (wtuc) (Entered: 03/25/2022) |
| 04/01/2022 | 34 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Plea Agreement Hearing as to David Hyun Chang held on 4/1/2022; Plea entered by David Hyun Chang (1) Guilty Count 1; Sentencing set for August 12 at 10:00 a.m.; Dft remanded to custody (Court Reporter J. Trail, OCR.)(wtuc) (Entered: 04/01/2022) |
| 04/01/2022 | 35 | Statement of Facts as to David Hyun Chang (wtuc) (Entered: 04/01/2022) |
| 04/01/2022 | 36 | Order for sentencing guidelines as to David Hyun Chang. Signed by District Judge John A. Gibney, Jr. on 4/1/22. (wtuc) (Entered: 04/01/2022) |
| 04/01/2022 | | Set Hearing as to David Hyun Chang: Sentencing set for 8/12/2022 at 10:00 AM before District Judge John A. Gibney, Jr. (wtuc) (Entered: 04/01/2022) |
| 06/23/2022 | 37 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation ReportADDENDUM DUE 07/12/2022) (SEALED - government and defense counsel) as to Harold Dushawn Campbell. Objections to PSI due 07/08/2022. (Smyre, Tiffany) (Entered: 06/23/2022) |
| 07/07/2022 | 38 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report-Addendum Due Date: 07/26/2022) (SEALED - government and defense counsel) as to David Hyun Chang. Objections to PSI due 07/22/2022. (Hollier, Stephanie) (Entered: 07/07/2022) |
| 07/12/2022 | 39 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report ADDENDUM) (SEALED - government and defense counsel) as to Harold Dushawn Campbell. (Smyre, Tiffany) (Entered: 07/12/2022) |
| 07/15/2022 | 40 | Position on Sentencing by Harold Dushawn Campbell (Attachments: # 1 Letter, # 2 Supplement)(Dawson, S.W.) (Entered: 07/15/2022) |

JA6

| 07/15/2022 | 41 | Position on Sentencing by USA as to Harold Dushawn Campbell (Montoya, Megan) (Entered: 07/15/2022) |
|---|---|---|
| 07/27/2022 | 42 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED - government and defense counsel) as to David Hyun Chang. New Information and Addendum (mayes, travis) (Entered: 07/27/2022) |
| 07/27/2022 | | Reset Hearing as to Harold Dushawn Campbell: Sentencing reset for 7/29/2022 at 09:00 AM in Norfolk Courtroom 1 before District Judge John A. Gibney, Jr. (ONLY CHANGE - COURTROOM DESIGNATION) (wtuc) (Entered: 07/27/2022) |
| 07/27/2022 | 43 | Sealed Document (bpet, ) (Entered: 07/27/2022) |
| 07/29/2022 | 44 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Sentencing held on 7/29/2022 for Harold Dushawn Campbell (2); Count 1: 72 MONTHS IMPRISONMENT; 4 YEARS SUPERVISED RELEASE; $100 S/A; dft remanded to custody (Court Reporter J. Stewart, OCR.)(wtuc) (Entered: 07/29/2022) |
| 07/29/2022 | 45 | JUDGMENT as to Harold Dushawn Campbell (2); Count 1: 72 MONTHS IMPRISONMENT; 4 YEARS SUPERVISED RELEASE; $100 S/A. Signed by District Judge John A. Gibney, Jr. on 7/29/22. (wtuc) (Entered: 07/29/2022) |
| 07/29/2022 | 46 | Sealed Statement of Reasons as to Harold Dushawn Campbell. Signed by District Judge John A. Gibney, Jr. on 7/29/22. (wtuc) (Entered: 07/29/2022) |
| 07/29/2022 | 47 | Consent MOTION for Extension *of time to file sentencing pleading* by David Hyun Chang. (Attachments: # 1 Proposed Order)(Conner, Amanda) (Entered: 07/29/2022) |
| 07/29/2022 | 48 | ORDER This matter comes before the Court on the defendant's unopposed motion for leave to file sentencing pleadings beyond the deadline. (ECF No. 47 .) Upon due consideration, the Court GRANTS the motion and DIRECTS both parties to submit their respective sentencing pleadings on or before August 1, 2022. Signed by District Judge John A. Gibney, Jr on 7/29/2022. (asho, ) (Entered: 07/29/2022) |
| 08/01/2022 | 49 | Consent MOTION to Seal *Objections to the PSR* by David Hyun Chang. (Attachments: # 1 Proposed Order)(Conner, Amanda) (Entered: 08/01/2022) |
| 08/01/2022 | 50 | Position on Sentencing by USA as to David Hyun Chang (Montoya, Megan) (Entered: 08/01/2022) |
| 08/01/2022 | 51 | Position on Sentencing by David Hyun Chang (Conner, Amanda) (Entered: 08/01/2022) |
| 08/01/2022 | 52 | (Sealed) OBJECTION TO PRESENTENCE INVESTIGATION REPORT by David Hyun Chang. (Attachments: # 1 Exhibit A) (bpet, ) (Entered: 08/02/2022) |
| 08/04/2022 | 53 | (Sealed) RESPONSE in Opposition by USA to 52 Defendant's Sentencing Objection. (Attachments: # 1 Exhibit 1) (bpet, ) (Entered: 08/04/2022) |
| 08/08/2022 | 54 | ORDER as to David Hyun Chang. AND NOW, having considered the Defendant's Motion to Allow Filing Under Seal and finding it necessary that Defendant's Objections to the PSR be filed under seal because it includes sensitive information properly subject to sealing, IT IS HEREBY ORDERED that the Clerk accept the Defendant's Objections to the PSR under seal. The government is also permitted to file its Objections under seal. Signed by District Judge John A. Gibney, Jr on 8/8/2022. (asho, ) (Entered: 08/08/2022) |
| 08/09/2022 | 55 | (Sealed) REPLY to Government's Response by David Hyun Chang re 52 Defendant's Objections to the PSR. (bpet, ) (Entered: 08/09/2022) |
| 08/09/2022 | 56 | ORDER - The Court hereby places the parties on notice that the Court will consider an upward variance from the guideline sentencing range set forth by the Presentence |

JA7

| | | |
|---|---|---|
| | | Investigation Report for David Hyun Chang filed on July 27, 2022. (ECF No. 42.) The Court believes the following factors may merit an upward variance from the guideline sentencing range: The nature and circumstances of the offense; The seriousness of the offense; The need to provide just punishment for the offense; And, most importantly, the need to avoid unwarranted sentence disparities. Signed by District Judge John A. Gibney, Jr. on 8/9/2022. (smej, ) (Entered: 08/09/2022) |
| 08/11/2022 | 57 | MOTION to Withdraw as Attorney by Amanda C. Conner. by David Hyun Chang. (Attachments: # 1 Proposed Order)(Conner, Amanda) (Entered: 08/11/2022) |
| 08/11/2022 | 58 | ORDER - This matter comes before the Court on the defendant David Hyun Chang's attorney's motion to withdraw. (ECF No. 57.) Upon due consideration, the Court CONTINUES GENERALLY the sentencing hearing currently scheduled for August 12, 2022. and SCHEDULES a hearing on the attorney's motion for August 12, 2022, at 10:00 a.m. Signed by District Judge John A. Gibney, Jr. on 8/11/2022. (smej, ) (Entered: 08/11/2022) |
| 08/11/2022 | | Set in case as to David Hyun Chang 57 MOTION to Withdraw as Attorney by Amanda C. Conner.: Motion Hearing set for 8/12/2022 at 10:00 AM in Norfolk Courtroom 1 before District Judge John A. Gibney, Jr. The sentencing is continued. (wtuc) (Entered: 08/11/2022) |
| 08/12/2022 | 59 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Motion Hearing as to David Hyun Chang held on 8/12/2022 re 57 MOTION to Withdraw as Attorney by Amanda C. Conner filed by David Hyun Chang; the motion is granted; the Clerk shall appoint new counsel; new counsel shall contact the court to reschedule the sentencing; dft remanded to custody (Court Reporter P. McManus, OCR.)(wtuc) (Entered: 08/15/2022) |
| 08/15/2022 | 60 | ORDER - This matter comes before the Court on the defendant David Hyun Chang's attorney's motion to withdraw. (ECF No. 57.) The Court held a hearing on the motion on August 12, 2022. Upon due consideration and for the reasons stated from the bench, the Court GRANTS the motion. The Court DIRECTS the Clerk to appoint new counsel for Chang. Once new counsel is appointed, the Court DIRECTS the parties to contact Chambers within seven days of the appointment to reschedule the sentencing in this case. Signed by District Judge John A. Gibney, Jr. on 8/15/2022. (smej, ) (Entered: 08/15/2022) |
| 08/15/2022 | | CJA 20 as to David Hyun Chang: Appointment of Attorney Christopher James O'Donnell. (smej, ) (Entered: 08/15/2022) |
| 08/19/2022 | | Reset Hearing as to David Hyun Chang: Sentencing set for 9/2/2022 at 09:00 AM before District Judge John A. Gibney, Jr. (courtroom to be determined) (wtuc) (Entered: 08/19/2022) |
| 08/24/2022 | 61 | First MOTION to Continue by David Hyun Chang. (O'Donnell, Christopher) (Entered: 08/24/2022) |
| 08/25/2022 | 62 | ORDER as to David Hyun Chang - This matter comes before the Court on the defendant David Hyun Chang's unopposed motion to continue his sentencing hearing. (ECF No. 61.) Chang's counsel has requested and not yet received additional documents in discovery from the government. Moreover, the parties may request a Drug Enforcement Agency (DEA) case agent, Jessica Farrell, to testify at the defendant's sentencing hearing. Ms. Farrell is unavailable on September 2, 2022, the current date of the hearing. Upon due consideration, the Court GRANTS the motion, (ECF No. 61), and CONTINUES GENERALLY the sentencing hearing. The parties shall contact the Court's staff within seven business days to select a new sentencing date. Signed by District Judge John A. Gibney, Jr. on 8/25/2022. (smej, ) (Entered: 08/25/2022) |

JA8

| 08/25/2022 | | Sentencing continued generally as to David Hyun Chang: (wtuc) (Entered: 08/25/2022) |
|---|---|---|
| 09/14/2022 | | Set Hearing as to David Hyun Chang: Sentencing CONTINUED to 10/21/2022 at 09:00 AM before District Judge John A. Gibney, Jr. (COURTROOM TO BE DETERMINED) (wtuc) (Entered: 09/14/2022) |
| 09/19/2022 | 63 | MOTION for Issuance of Subpoenas by David Hyun Chang. (Attachments: # 1 Supplement Subpoena)(O'Donnell, Christopher) (Entered: 09/19/2022) |
| 09/19/2022 | 64 | Letter from David H. Chang (Defendant) (O'Donnell, Christopher) (Entered: 09/19/2022) |
| 10/03/2022 | 65 | ORDER: granting 63 Motion for Issuance of Subpoenas and DIRECTS the Clerk's Office to issue the subpoena for Task Force Officer Galbreath and notify Chang's counsel when it is available to be picked up for service as to David Hyun Chang (1). Signed by District Judge John A. Gibney, Jr on 10/3/2022. (afar) (Entered: 10/03/2022) |
| 10/03/2022 | 66 | ORDER: This matter comes before the Court on its own initiative. On 10/3/22, the Court granted defendant David Chang's motion, ECF 63, for issuance of a subpoena. In that order, the Court listed the incorrect address for the location of defendant Chang's sentencing. Thus, the Court RETRACTS its previous order. It is hereby ORDERED that a subpoena for John Galbreath to appear at the sentencing hearing in this matter, scheduled to commence at 9:00 am on 10/21/22, at the USD Courthouse in Norfolk, VA. The Court DIRECTS the clerk's office to issue a subpoena for Task Force Office Galbreath and notify Chang's counsel when it is available. Signed by District Judge John A. Gibney, Jr on 10/3/22. (afar) (Entered: 10/03/2022) |
| 10/03/2022 | 67 | Subpoena issued on behalf of defendant, David Chang (afar) (Entered: 10/03/2022) |
| 10/11/2022 | 68 | Subpoena Returned as to David Hyun Chang. (dbra, ) (Entered: 10/11/2022) |
| 10/13/2022 | | Set Hearing as to David Hyun Chang: Sentencing set for 10/21/2022 at 09:00 AM in Norfolk Courtroom 1 before District Judge John A. Gibney, Jr. (ONLY CHANGE - COURTROOM DESIGNATION) (wtuc) (Entered: 10/13/2022) |
| 10/20/2022 | 69 | Letter from Sarah M. Long (girlfriend to Mr. Chang)) (O'Donnell, Christopher) (Entered: 10/20/2022) |
| 10/21/2022 | 70 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr.:Sentencing held on 10/21/2022 for David Hyun Chang (1); Count 1: 72 MONTHS IMPRISONMENT; 4 YEARS SUPERVISED RELEASE; $100 S/A; Dft remanded to custody (Court Reporter J. Stewart, OCR.)(wtuc) (Entered: 10/21/2022) |
| 10/24/2022 | 71 | NOTICE OF APPEAL *As to Sentence* by David Hyun Chang (O'Donnell, Christopher) (Entered: 10/24/2022) |
| 10/24/2022 | 72 | (See Amended Judgment entered 12/8/22) JUDGMENT as to David Hyun Chang (1); Count 1: 72 MONTHS IMPRISONMENT; 4 YEARS SUPERVISED RELEASE; $100 S/A. Signed by District Judge John A. Gibney, Jr. on 10/24/22. (wtuc) Modified on 12/8/2022 (wtuc). (Entered: 10/24/2022) |
| 10/24/2022 | 73 | Sealed Statement of Reasons as to David Hyun Chang. Signed by District Judge John A. Gibney, Jr. on 10/24/22. (wtuc) (Entered: 10/24/2022) |
| 10/25/2022 | 74 | Transmission of Notice of Appeal to 4CCA as to David Hyun Chang to US Court of Appeals re 71 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Attachments: # 1 Notice of Appeal)(dbra, ) (Entered: 10/25/2022) |
| 10/26/2022 | 75 | USCA Case Number 22-4605 4CCA Case manager Richard H. Sewell for 71 Notice of |

JA9

| | | |
|---|---|---|
| | | Appeal filed by David Hyun Chang. (22-4605) (epri, ) (Entered: 10/26/2022) |
| 10/26/2022 | 76 | ORDER of USCA appointing James O'Donnell as counsel for David Hyun Chang re 71 Notice of Appeal. (22-4605) (epri, ) (Entered: 10/26/2022) |
| 10/27/2022 | | Set Exhibit Return Deadline as to David Hyun Chang: If appeal has not been filed, return sentencing exhibits due by 12/26/2022. (ptom, ) (Entered: 10/27/2022) |
| 10/28/2022 | 77 | ORDER of USCA as to David Hyun Chang re 71 Notice of Appeal. The court grants the motion to withdraw as counsel on appeal. The court appoints Matthew B. Kaplan to represent David Hyun Chang on appeal.(22-4605) (epri, ) (Entered: 10/31/2022) |
| 11/15/2022 | 78 | TRANSCRIPT of proceedings as to David Hyun Chang for dates of 1-27-2022 before Judge Lawrence R. Leonard, re 71 Notice of Appeal Court Reporter/Transcriber Jody Stewart, Telephone number 757-222-7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov.** *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/15/2022. Redacted Transcript Deadline set for 1/16/2023. Release of Transcript Restriction set for 2/13/2023.(stewart, jody) (Entered: 11/15/2022)** |
| 11/15/2022 | 79 | TRANSCRIPT of proceedings (Sentencing) as to David Hyun Chang for dates of 10-21-2022 before Judge John A. Gibney, Jr., re 71 Notice of Appeal Court Reporter/Transcriber Jody Stewart, Telephone number 757-222-7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov.** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/15/2022. Redacted Transcript Deadline set for 1/16/2023. Release of Transcript Restriction set for 2/13/2023.(stewart, jody) (Entered: 11/15/2022)** |
| 11/16/2022 | 80 | Transcript Order Acknowledgment from USCA re 71 Notice of Appeal : Court Reporter/Transcriber Jill Trail; 4/1/22 hearing; deadline 12/27/22. (22-4605) (epri, ) (Entered: 11/16/2022) |
| 11/16/2022 | 81 | Transcript Order Acknowledgment from USCA re 71 Notice of Appeal : Court Reporter/Transcriber Jody Stewart; 10/21/22 and 7/29/22 hearings; deadline 12/27/22. (22-4605) (epri, ) (Entered: 11/16/2022) |
| 11/16/2022 | 82 | Transcript Order Acknowledgment from USCA re 71 Notice of Appeal : Court Reporter/Transcriber Paul McManus; 3/5/22 and 8/12/22 hearings; deadline 12/27/22. (22-4605)(epri, ) (Entered: 11/16/2022) |
| 12/08/2022 | 83 | (See Amended Judgment entered on 10/2/23, ECF 105 after Remand) AMENDED JUDGMENT - ONLY CHANGE: CORRECTED THE USM NUMBER. Signed by District Judge John A. Gibney, Jr on 12/8/22. (wtuc) Modified on 10/2/2023 (wtuc, ). (Entered: 12/08/2022) |

JA10

| 12/22/2022 | 84 | TRANSCRIPT of proceeding, Change of Plea as to Harold Dushawn Campbell (Co-Defendant) for date of 3/25/2022 before Judge John A. Gibney, Jr., re 71 Notice of Appeal Court Reporter/Transcriber Paul McManus, Telephone number 757-222-7077. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov *Does this satisfy all appellate orders for this reporter? n* Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/23/2023. Redacted Transcript Deadline set for 2/21/2023. Release of Transcript Restriction set for 3/22/2023.(mcmanus, paul) Modified text for defendant's name on 12/22/2022 (mrees, ). (Main Document 84 replaced on 12/22/2022) (mrees, ). (Entered: 12/22/2022)** |
| --- | --- | --- |
| 12/22/2022 | 85 | TRANSCRIPT of proceedings Motion to Withdraw as to David Hyun Chang for date of 08/12/2022 before Judge John A. Gibney, Jr., re 71 Notice of Appeal Court Reporter/Transcriber Paul McManus, Telephone number 757-222-7077. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov *Does this satisfy all appellate orders for this reporter? y* Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/23/2023. Redacted Transcript Deadline set for 2/21/2023. Release of Transcript Restriction set for 3/22/2023.(mcmanus, paul) (Entered: 12/22/2022)** |
| 12/22/2022 | 86 | TRANSCRIPT of Proceedings held on April 1, 2022, before Judge John A. Gibney, Jr.. Court reporter/transcriber Jill Trail, Telephone number 757-222-7072. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/23/2023. Redacted Transcript Deadline set for 2/21/2023. Release of Transcript Restriction set for 3/22/2023.(trail, jill) (Entered: 12/22/2022)** |
| 12/30/2022 | 87 | TRANSCRIPT of proceedings as to David Hyun Chang for dates of April 1, 2022 before Judge John A. Gibney, Jr., re 71 Notice of Appeal Court Reporter/Transcriber Jill Trail, Telephone number 757-222-7072. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov *Does this satisfy all appellate orders for this reporter? y* Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 3/1/2023. Release of Transcript Restriction set for 3/30/2023.(trail, jill) (Entered: 12/30/2022)** |

JA11

| | | |
|---|---|---|
| 01/03/2023 | 88 | TRANSCRIPT of proceedings as to David Hyun Chang, Harold Dushawn Campbell for dates of 7-29-2022 before Judge John A. Gibney, Jr., re 71 Notice of Appeal Court Reporter/Transcriber Jody Stewart, Telephone number 757-222-7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov.** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/2/2023. Redacted Transcript Deadline set for 3/6/2023. Release of Transcript Restriction set for 4/3/2023.(stewart, jody) (Entered: 01/03/2023)** |
| 06/26/2023 | 89 | ORDER of USCA Granting Motion to Remand case as to David Hyun Chang. re 71 Notice of Appeal. [22-4605] (Vpea) (Entered: 06/28/2023) |
| 06/26/2023 | 90 | JUDGMENT of USCA as to David Hyun Chang re 71 Notice of Appeal. The defendant's sentence is Vacated. This case is remanded to the District Court for further proceedings consistent with the court's decision. This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41. (Vpea) [22-4605] (Entered: 06/28/2023) |
| 06/28/2023 | 91 | USCA Mandate as to David Hyun Chang re 71 Notice of Appeal. The Judgment of this Court entered takes effect today. [22-4605] (Vpea) (Entered: 06/28/2023) |
| 07/06/2023 | | CJA 20 as to David Hyun Chang: Reappointment of Attorney Christopher James O'Donnell for David Hyun Chang on Remand Resentencing. (afar) (Entered: 07/06/2023) |
| 08/14/2023 | 92 | ORDER as to David Hyun Chang. The Court SCHEDULES Mr. Chang's resentencing for September 29, 2023, at 9:00 a.m. The Court DIRECTS the United States Marshals Service to transport Mr. Chang to the Norfolk courthouse for resentencing. Signed by District Judge John A. Gibney, Jr on 8/14/2023. (Vpea) (Entered: 08/14/2023) |
| 08/15/2023 | | Set Hearing as to David Hyun Chang: Re-Sentencing after remand set for 9/29/2023 at 09:00 AM before District Judge John A. Gibney, Jr. (courtroom to be determined) (wtuc) (Entered: 08/15/2023) |
| 08/22/2023 | 93 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED - government and defense counsel) as to David Hyun Chang. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendants attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case-by-case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (Smyre, Tiffany) (Entered: 08/22/2023) |
| 08/23/2023 | 94 | First MOTION to Seal *Defendant's Sentencing Position and Motion for a Downward Variance* by David Hyun Chang. (O'Donnell, Christopher) (Entered: 08/23/2023) |
| 08/24/2023 | 95 | Petition and Order for Writ of Habeas Corpus ad Prosequendum as to David Hyun Chang. Signed by Magistrate Judge Robert J. Krask on 8/24/2023. (Vpea) (Entered: 08/24/2023) |
| 08/24/2023 | 96 | Writ of Habeas Corpus ad Prosequendum Issued as to David Hyun Chang for 9/29/2023. (Vpea) (Entered: 08/24/2023) |

JA12

| 09/11/2023 | 98 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED - government and defense counsel) as to David Hyun Chang. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendant's attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case-by-case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. Second Additional Addendum (mayes, travis) (Entered: 09/11/2023) |
|---|---|---|
| 09/15/2023 | 99 | Position on Sentencing by USA as to David Hyun Chang (Montoya, Megan) (Entered: 09/15/2023) |
| 09/19/2023 | 100 | ORDER re 94 Motion to Seal as to David Hyun Chang (1). The Court GRANTS the motion and Mr. Chang may file his sentencing position and Attachment C under seal. Copies distributed as directed. Signed by District Judge John A. Gibney, Jr on 9/19/2023. (Vpea) (Entered: 09/19/2023) |
| 09/19/2023 | 101 | Sealed Document - Position on Sentencing filed by defendant David Chang (Attachments: # 1 Exhibit A # 2 Exhibit B, # 3 Exhibit C) (wtuc). (Entered: 09/22/2023) |
| 09/22/2023 |  | Set/Reset Hearings as to David Hyun Chang: Re-Sentencing after remand set for 9/29/2023 at 09:00 AM in Norfolk Courtroom 1 before District Judge John A. Gibney Jr.. (ONLY CHANGE - COURTROOM DESIGNATION) (jmey, ) (Entered: 09/22/2023) |
| 09/26/2023 | 102 | ORDER- The Court hereby places the parties on notice that the Court will consider an upward variance from the guideline sentencing range set forth by the Presentence Investigation Report for D. Chang filed on September 11, 2023. See Order for details. Copies distributed as directed. Signed by District Judge John A. Gibney, Jr on 9/26/2023. (Vpea) (Entered: 09/26/2023) |
| 09/29/2023 | 103 | Minute Entry for proceedings held before District Judge John A. Gibney, Jr: Sentencing held on 9/29/2023 for David Hyun Chang (1), Count(s) 1, 69 MONTHS IMPRISONMENT; 10 YEARS SUPERVISED RELEASE; $100 S/A. Defendant remanded to custody. (Court Reporter Jody Stewart.)(dbra, ) (Entered: 09/29/2023) |
| 09/29/2023 | 104 | NOTICE OF APPEAL *Sentencing Minutes Doc.# 103* by David Hyun Chang (O'Donnell, Christopher) (Entered: 09/29/2023) |
| 09/29/2023 | 108 | Transmission of Notice of Appeal to 4CCA as to David Hyun Chang to US Court of Appeals re 104 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Attachments: # 1 Notice of Appeal)(Vpea) (Entered: 10/03/2023) |
| 10/02/2023 | 105 | JUDGMENT after Remand from Fourth Circuit Court of Appeals as to David Hyun Chang (1); Count 1: 69 MONTHS IMPRISONMENT; 10 YEARS SUPERVISED RELEASE; $100 S/A. Signed by District Judge John A. Gibney, Jr. on 10/2/23. (wtuc) (Entered: 10/02/2023) |
| 10/02/2023 | 106 | Sealed Statement of Reasons as to David Hyun Chang. Signed by District Judge John A. Gibney, Jr. on 10/2/23. (wtuc) (Entered: 10/02/2023) |
| 10/03/2023 | 107 | PRESENTENCE INVESTIGATION REPORT (Final Presentence Investigation Report) (SEALED - government and defense counsel) as to David Hyun Chang. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendant's attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case-by-case basis, whether retention of the PSR by |

JA13

| | | Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (wells-major, belinda) (Entered: 10/03/2023) |
|---|---|---|
| 10/04/2023 | 112 | USCA Case Number 23-4615 4CCA Case Manager Rachel Phillips for 104 Notice of Appeal filed by David Hyun Chang. (Vpea) (Entered: 10/10/2023) |
| 10/04/2023 | 113 | ORDER of USCA appointing Matthew Kaplan as counsel for David Hyun Chang re 104 Notice of Appeal. [23-4615] (Vpea) (Entered: 10/10/2023) |
| 10/18/2023 | 116 | Transcript Order Acknowledgment from USCA re 104 Notice of Appeal: Court Reporter/Transcriber Jody Stewart; 9/29/23 sentencing hearing; deadline 11/27/23. [23-4615] (jhie, ) (Entered: 10/20/2023) |
| 11/27/2023 | 117 | TRANSCRIPT of proceedings as to David Hyun Chang for dates of 9-29-2023 before Judge John A. Gibney, Jr., re 104 Notice of Appeal, 71 Notice of Appeal Court Reporter/Transcriber Jody Stewart, Telephone number 757-222-7071. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov.** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/27/2023. Redacted Transcript Deadline set for 1/29/2024. Release of Transcript Restriction set for 2/26/2024.**(stewart, jody) (Entered: 11/27/2023) |
| 12/19/2023 | 118 | Judgment Returned Executed as to David Hyun Chang on 10/30/2023. (tameub, ) (Entered: 12/19/2023) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 01/11/2024 11:05:00 | | |
| **PACER Login:** | tmstuckey | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cr-00146-JAG-LRL |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

JA14



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED
IN OPEN COURT

DEC 1 6 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:21CR*146* |
| | ) | |
| v. | ) | 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) |
| | ) | Conspiracy to Distribute and Possess with |
| DAVID HYUN CHANG, | ) | Intent to Distribute Cocaine |
| a/k/a "Dave Cali" | ) | (Count 1) |
| (Count 1) | ) | |
| | ) | 18 U.S.C. § 924(d); 21 U.S.C. § 853 |
| and | ) | Criminal Forfeiture |
| | ) | |
| HAROLD DUSHAWN CAMPBELL, | ) | |
| (Count 1) | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

December 2021 Term - at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

From at least in or about March 2021 and continuing thereafter up to and including October 2021, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, DAVID HYUN CHANG, a/k/a "Dave Cali," and HAROLD DUSHAWN CAMPBELL, the defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree together with each other and with other persons, both known and unknown to the grand jury, to knowingly and intentionally distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(ii).

**JA15**

## WAYS, MANNER, AND MEANS OF THE CONSPIRACY

The primary purpose of the conspiracy was to make money through the distribution of cocaine within the Eastern District of Virginia and elsewhere. The ways, manner, and means by which the defendants and co-conspirators carried out the purpose of the conspiracy include but are not limited to the following:

1.   It was part of the conspiracy that the defendants and co-conspirators would and did play different roles in the conspiracy, taking upon themselves different tasks and participating in the affairs of the conspiracy through various criminal acts. Some of the roles which the defendants and co-conspirators assumed and carried out included, among others, organizer, manager, distributor, packager, supplier, middleman, collector, and facilitator. Specifically, DAVID HYUN CHANG, a/k/a "Dave Cali," acted as a source of supply and distributor of cocaine from California to the Eastern District of Virginia. HAROLD DUSHAWN CAMPBELL acted as a mid-level distributor of cocaine within the Eastern District of Virginia and elsewhere.

2.   It was further a part of the conspiracy that the defendants and coconspirators were engaged in the unlawful business of possessing with intent to distribute and distributing cocaine in Hampton Roads in the Eastern District of Virginia for profit.

3.   It was further part of the conspiracy that defendants and coconspirators would and did derive substantial gross receipts from their unlawful activities.

4.   It was further part of the conspiracy that the defendants and co-conspirators communicated through telecommunications devices. The defendants and co-conspirators used telephonic communications to arrange for the time and place of cocaine transactions and payments of United States currency, and to assist in and further the possession with intent to distribute and the distribution of controlled substances.

## OVERT ACTS

In furtherance of the conspiracy and to bring about the objects and goals of the

conspiracy, the defendants and co-conspirators committed overt acts in the Eastern District of

Virginia, and elsewhere, including but not limited to the following:

    a.      On different dates during the conspiracy, DAVID HYUN CHANG, a/k/a "Dave Cali," utilized the United States Postal Service ("USPS") to send packages containing cocaine from Long Beach, California, to the Eastern District of Virginia.

    b.      On different dates during the conspiracy, DAVID HYUN CHANG, a/k/a "Dave Cali," and HAROLD DUSHAWN CAMPBELL possessed with intent to distribute quantities of cocaine.

    c.      On different dates during the conspiracy, HAROLD DUSHAWN CAMPBELL distributed quantities of cocaine in exchange for United States currency.

    d.      On different dates during the conspiracy, DAVID HYUN CHANG, a/k/a "Dave Cali," and HAROLD DUSHAWN CAMPBELL communicated via WhatsApp Messenger to further the aims of the conspiracy.

    (All in violation of Title 21, United States Code, Section 846.)

**JA17**

## FORFEITURE

1.      The defendants, if convicted of the violation alleged in Count One of this

information, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule

of Criminal Procedure 32.2:

      a.   Any property constituting, or derived from, any proceeds obtained, directly or

          indirectly, as the result of the violation;

      b.   Any property used, or intended to be used, in any manner or part, to commit, or to

          facilitate the commission of, the violation; and

      c.   Any firearm or ammunition involved in or used in the violation.

2.      If any property that is subject to forfeiture above is not available, it is the intention

of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United

States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Section 924(d)(1); Title 21, United States
Code, Section 853; and Title 28, United States Code, Section 2461(c).)

4

**JA18**

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

*United States v. David Hyun Chang et al.*, Criminal No. 2:21cr*146*

A TRUE BILL

REDACTED COPY

_____

FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By:    _____
       Megan M. Montoya
       Assistant United States Attorney
       Attorney for the United States
       101 West Main Street, Suite 8000
       Norfolk, Virginia 23510
       Office Number: (757) 441-6331
       Facsimile Number: (757) 441-6689
       Email Address:   megan.montoya@usdoj.gov

5

**JA19**



FILED
IN OPEN COURT

MAR 2 5 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.                                              No. 2:21CR146

HAROLD DUSHAWN CAMPBELL,

Defendant.

## STATEMENT OF FACTS

The United States and the defendant, HAROLD DUSHAWN CAMPBELL ("CAMPBELL") agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and competent evidence:

1.      From approximately March 2021 and continuing thereafter up to and including October 2021, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, CAMPBELL participated in a cocaine trafficking conspiracy with co-defendant DAVID HYUN CHANG, a/k/a "Dave Cali," and others. CAMPBELL and CHANG conspired to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

2.      It was part of the conspiracy that the defendants and unindicted co-conspirators would and did play different roles in the conspiracy, taking upon themselves different tasks and participating in the affairs of the conspiracy through various criminal acts. Some of the roles which the defendants and co-conspirators assumed and carried out included, among others, organizer, manager, distributor, packager, supplier, and collector. Specifically, CHANG acted as a source of supply and distributor of cocaine from California to CAMPBELL in Virginia Beach,

1

Virginia. CAMPBELL acted as a mid-level distributor of cocaine within the Eastern District of Virginia and elsewhere.

     3.     In furtherance of the conspiracy's aims, the defendants committed overt acts including, but not limited to, the following:

     a.     On different dates during the conspiracy, CHANG utilized the United States Postal Service ("USPS") to send packages containing cocaine from Long Beach, California, to the Eastern District of Virginia.

     b.     On different dates during the conspiracy, CHANG and CAMPBELL possessed with intent to distribute quantities of cocaine.

     c.     On different dates during the conspiracy, CAMPBELL distributed quantities of cocaine in exchange for United States currency.

     d.     On different dates during the conspiracy, CHANG and CAMPBELL communicated via WhatsApp Messenger to further the aims of the conspiracy.

     e.     On different dates during the conspiracy, CHANG arranged for an unindicted co-conspirator to deliver packages containing cocaine to CAMPBELL in Virginia Beach.

     4.     The parties agree that the quantities of controlled substances involved in the conspiracy attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to the defendant are at least 500 grams of cocaine. Cocaine is a Schedule II narcotic controlled substance.

     5.     Virginia Beach is located within the Eastern District of Virginia.

     6.     The acts taken by the defendant, HAROLD DUSHAWN CAMPBELL, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts is a partial summary of the case and does not describe all of the defendant's conduct relating to the offenses charged in this case, nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

2



Respectfully submitted,

Jessica D. Aber
United States Attorney

By:     *Megan M. Montoya* (signature)

Megan M. Montoya
Assistant United States Attorney

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*Harold Dushawn Campbell* (signature)

HAROLD DUSHAWN CAMPBELL
Defendant

I am counsel for HAROLD DUSHAWN CAMPBELL. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

*S.W. Dawson* (signature)

S.W. Dawson, Esq.
Attorney for HAROLD DUSHAWN CAMPBELL

3

JA22

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

```
FILED
IN OPEN COURT

APR − 1 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

UNITED STATES OF AMERICA

v.                                                    Criminal No. 2:21CR146

DAVID HYUN CHANG,

Defendant.

## STATEMENT OF FACTS

The United States and the defendant, DAVID HYUN CHANG ("CHANG") agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and competent evidence:

1.    From approximately March 2021 and continuing thereafter up to and including October 2021, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, CAMPBELL participated in a cocaine trafficking conspiracy with co-defendant DAVID HYUN CHANG, a/k/a "Dave Cali," and others.  CAMPBELL and CHANG conspired to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

2.    It was part of the conspiracy that the defendants and unindicted co-conspirators would and did play different roles in the conspiracy, taking upon themselves different tasks and participating in the affairs of the conspiracy through various criminal acts. Some of the roles which the defendants and co-conspirators assumed and carried out included, among others, organizer, manager, distributor, packager, supplier, and collector. Specifically, on more than one occasion from March 2021 through October 2021, CHANG mailed cocaine from California to

1

**JA23**

CAMPBELL in Virginia Beach, Virginia for CAMPBELL to distribute within the Eastern

District of Virginia and elsewhere.

    3.    In furtherance of the conspiracy's aims, the defendants committed overt acts

including, but not limited to, the following:

    a.    On different dates during the conspiracy, CHANG utilized the United States
Postal Service ("USPS") to send packages containing cocaine from Long Beach,
California, to the Eastern District of Virginia.

    b.    On different dates during the conspiracy, CHANG and CAMPBELL possessed
with intent to distribute quantities of cocaine.

    c.    On different dates during the conspiracy, CAMPBELL distributed quantities of
cocaine in exchange for United States currency.

    d.    On different dates during the conspiracy, CHANG and CAMPBELL
communicated via WhatsApp Messenger to further the aims of the conspiracy.

    4.    The parties agree that the quantities of controlled substances involved in the

conspiracy attributable to the defendant as a result of his own conduct and the conduct of other

conspirators reasonably foreseeable to the defendant are at least 500 grams of cocaine. Cocaine is

a Schedule II narcotic controlled substance.

    5.    Virginia Beach is located within the Eastern District of Virginia.

    6.    The acts taken by the defendant, DAVID HYUN CHANG, in furtherance of the

offenses charged in this case, including the acts described above, were done willfully and

knowingly with the specific intent to violate the law. The defendant acknowledges that the

foregoing statement of facts is a partial summary of the case and does not describe all of the

defendant's conduct relating to the offenses charged in this case, nor does it identify all of the

persons with whom the defendant may have engaged in illegal activities.

    Respectfully submitted,

    Jessica D. Aber

2



**JA24**

United States Attorney

By:    _M. M. Montoya_
       Megan M. Montoya
       Assistant United States Attorney

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DAVID HYUN CHANG
Defendant

I am counsel for DAVID HYUN CHANG.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Amanda Conner, Esq.
Attorney for DAVID HYUN CHANG

3

**JA25**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
IN OPEN COURT

APR - 1 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA

v.

Criminal No. 2:21CR146-01

DAVID HYUN CHANG
                    Defendant.

### SENTENCING GUIDELINE ORDER

1.  The sentencing hearing shall be scheduled no earlier than SEVENTY-FIVE (75)

DAYS following a finding or verdict of guilty, and sentencing is scheduled in this case on

_August 12, 2022_ at _10:00 am_ .

2.  Counsel for the defendant shall attend any interview of the defendant conducted

by the Probation Office in the course of the presentence investigation.

3.  The presentence investigation report, including guideline computations, shall

be completed and provided to the parties at least THIRTY-FIVE (35) DAYS prior to the

sentencing hearing.   This Order shall operate as notice to counsel that the presentence

investigation report will be available in the Probation Office THIRTY-FIVE (35) DAYS

prior to the sentencing hearing.   The presentence investigation report shall not be

disclosed to persons other than the defendant, unless otherwise ordered by the Court.

4.  At least TWENTY-ONE (21) DAYS prior to the sentencing hearing, the parties

must state in writing to the Probation Office and opposing counsel any objections to the

presentence  investigation  report,  including  objections  to  material  information,

**JA26**

sentencing guideline ranges, and policy statements contained in or omitted from the report.

.5.     Any party objecting to the presentence investigation report must seek resolution of all objections in conference with opposing counsel and the Probation Office as soon as possible, but no later than SEVENTEEN (17) DAYS prior to the sentencing hearing.   The presentence conference is mandatory, except when the contents of the presentence investigation report are not in dispute, and the complaining party shall be responsible for scheduling the conference with the Probation Office and opposing counsel.

6.   Counsel for the defendant and the government shall file and serve sentencing pleadings (as defined in paragraph 7) FOURTEEN (14) DAYS prior to the sentencing hearing.   Responses and replies thereto shall be filed and served SEVEN (7) and FOUR (4) days, respectively, prior to the sentencing hearing.   Copies shall be delivered to the Probation Office on the same schedule.

7.   The sentencing pleadings shall include (1) a statement that there are no objections to the presentence investigation report, if applicable; (2) notice of any objections to the presentence investigation report and any supporting evidence, documents, or affidavits; (3) any motion for upward or downward departure or motion for variance sentence; (4) a statement making clear what sentence they will argue for the judge to impose.   The Court shall resolve objections and motions upon the submissions of the parties and will hear testimony only for good cause shown.

**JA27**

8.   The Probation Office shall transmit to the sentencing judge the presentence investigation report, including guideline computations and an addendum indicating any unresolved objections, no later than FOURTEEN (14) days prior to the sentencing hearing.

9.   The time periods set forth above may be modified by the Court for good cause shown.   Time periods under this Order shall be CALENDAR days.   In computing any period of time under this Order, if any deadline falls on a Saturday, Sunday, or holiday, the deadline shall be the last business day prior to the Saturday, Sunday, or holiday.

It is SO ORDERED.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Norfolk, Virginia

Date:   April 1, 2022

Counsel for the Defendant shall send a copy of this Order to the Defendant.

**JA28**

```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
 2                            Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                        )
 5    UNITED STATES OF AMERICA,          )
                                         )
 6       v.                              )   CRIMINAL ACTION NO.
                                         )   2:21cr146-2
 7                                       )
      HAROLD DUSHAWN CAMPBELL,           )
 8                                       )
              Defendant.                 )
 9   - - - - - - - - - - - - - - - - - -

10

11

12                       TRANSCRIPT OF PROCEEDINGS

13                          (Sentencing hearing)

14                           Norfolk, Virginia

15                            July 29, 2022

16

17   BEFORE:  THE HONORABLE JOHN A. GIBNEY, JR.
                  United States District Judge
18

19

20   APPEARANCES:

21              UNITED STATES ATTORNEY'S OFFICE
                    By:  Megan M. Montoya
22                       Assistant United States Attorney
                         Counsel for the United States
23
                UNITED STATES ATTORNEY'S OFFICE
24                  By:  S.W. Dawson
                         Counsel for the Defendant
25
```

DAWSON PLC

JODY A. STEWART, Official Court Reporter

**JA29**

```
 1              (Hearing commenced at 9:03 a.m.)
 2          THE CLERK:  Criminal case number 2:21cr146, the
 3   United States of America versus Harold Dushawn Campbell.
 4          Ms. Montoya, is the government ready to proceed?
 5          MS. MONTOYA:  The government is ready to proceed.
 6          Good morning, Your Honor.
 7          THE COURT:  Good morning.
 8          THE CLERK:  Mr. Dawson, is your client ready to
 9   proceed?
10          MR. DAWSON:  The defendant is ready.
11          Good morning.
12          THE COURT:  Good morning, Ms. Montoya, Mr. Dawson
13   and Mr. Campbell.  Good morning to all three of you.
14          I've got sort of a preliminary question for
15   Ms. Montoya and Mr. Dawson.  I take it that the co-defendant
16   in this case, Mr. Chang, is maybe not the head guy in the
17   whole drug distribution chain, but he's somewhere above
18   Mr. Campbell.  Is that right?
19          MS. MONTOYA:  Yes, Your Honor, that's what our
20   investigation has revealed to date.
21          THE COURT:  It would be a miscarriage of justice if
22   Mr. Chang were able to, because of his superior position,
23   provide information that would result in a shorter sentence
24   than the guy down on the totem pole got.
25          I want to make sure that that doesn't happen.
```

```
 1            MS. MONTOYA:  Your Honor, if I could speak.  I
 2    think I want to be careful about saying anything because of
 3    the sensitivity.
 4            THE COURT:  Let's take a brief recess.  We will
 5    take a brief recess.
 6            MS. MONTOYA:  Yes, Your Honor.
 7            (Recess from 9:05 a.m. to 9:08 a.m.)
 8            THE COURT:  Mr. Dawson, have you and Mr. Campbell
 9    had a chance to review the presentence report and go over
10    it?
11            MR. DAWSON:  Yes, Your Honor, we have.
12            THE COURT:  Do you have any objections to it?
13            MR. DAWSON:  No, Your Honor.
14            THE COURT:  Did you also review with him the
15    standard conditions of supervised release, which are
16    included in the presentence report?
17            MR. DAWSON:  I did, Your Honor.
18            THE COURT:  You have no objections to any of that?
19            MR. DAWSON:  No, Your Honor.
20            THE COURT:  Does the government have any objections
21    to the presentence report?
22            MS. MONTOYA:  No, Your Honor.
23            THE COURT:  I will adopt the factual portion of the
24    presentence report as a finding of fact in this case.
25    Essentially, the way this case works out is that
```

1  Mr. Campbell has a base offense level of 30, in terms of the
2  guidelines, which is based on the drug weight.  There are no
3  adjustments, so it's an adjusted offense level of 30.  The
4  government has moved for a third point off for acceptance of
5  responsibility.  That motion is granted.  So he gets the
6  total of three-points off for acceptance, which makes him a
7  total offense level of 27.  He has a criminal history of
8  three points, which makes him a category two and leads to a
9  guideline sentence range of 78 to 97 months.
10        Now, I have received a number of letters in this
11  case, and I've read them all.  They are very well-written
12  and obviously written from the heart.  They are thoughtful
13  letters.  I received letters from Caroline Boyd, who is
14  Mr. Campbell's aunt; from Laqueta Powell, a friend of his;
15  from Michelle Kirkland Hood, a cousin from Sai; Campbell,
16  his daughter; from Tolliver Robertson, a friend; and from
17  Regina Jones, Mr. Campbell's mother.
18        I've read all those letters, and there's some
19  common themes that come through them.  The people say that
20  Mr. Campbell is very helpful to the members of his family,
21  members of his community.  He's very supportive of the
22  members of his family.  He is especially helpful to his
23  mother.  He is deeply loving of his daughter and worked
24  multiple jobs to help these people.  He not only sort of
25  provides assistance and guidance but actually financial

1    support to people.  So it's quite a salute to him that's in

2    these letters.  The guidelines, of course, are advisory

3    only.

4            Does the government have any witnesses in this

5    case?

6            MS. MONTOYA:  No, Your Honor, and I have no

7    evidence, just argument.

8            THE COURT:  And do you have any witnesses or

9    evidence?

10           MR. DAWSON:  No, Your Honor, likewise just

11   argument.

12           THE COURT:  There's a motion for a variance,

13   although I must say that from the papers it's not very clear

14   what the basis of that is, but I'll hear from the government

15   on the appropriate sentence, then I'll hear from Mr. Dawson

16   on the appropriate sentence and the motion for a variance,

17   and then you can respond to the motion for a variance.

18           Ordinarily, I'd have you answer that now, but I

19   have no idea why he says he deserves a variance.

20           Go ahead.

21           MS. MONTOYA:  Thank you, Your Honor.  It's the

22   Government's position that the guideline sentence of 78 to

23   97 months is sufficient but not greater than necessary in

24   this case.  First, I'd ask the Court, and really that's two

25   big factors, I think, in this case, are the offense conduct.

```
 1   This was an interstate cocaine trafficking conspiracy.  It
 2   wasn't an isolated or one-off event.  It ran for almost a
 3   year, from March 2021 to October 2021.
 4            THE COURT:  That's not almost a year.
 5            MS. MONTOYA:  About half.
 6            THE COURT:  Half a year.
 7            MS. MONTOYA:  But not an isolated incident.
 8            THE COURT:  Right.
 9            MS. MONTOYA:  And certainly plenty of time for the
10   defendant to withdraw, which he did not.  This defendant is
11   attributed with over 11 kilograms of cocaine.  This
12   defendant has also previously been convicted in federal
13   court of possession with intent to distribute cocaine base
14   back in 2004, he was arrested for that offense, and yet he
15   is here today on a drug trafficking charge, demonstrating a
16   lack of deterrence and a need to ensure the defendant
17   respects the law.  So for those reasons I'd ask for a
18   guideline sentence.
19            THE COURT:  All right.  Thank you.
20            Mr. Dawson, let me hear from you on what is the
21   appropriate sentence, why Mr. Campbell deserves a variance
22   of some sort.  It looks like Mr. Campbell has some
23   supporters here today.  Can you introduce them to me,
24   please.
25            MR. DAWSON:  He does, yes.  His mother is here.  If
```

```
 1    you can stand up.  His aunt and his uncle.

 2             THE COURT:  And who?

 3             MR. DAWSON:  This is his uncle.

 4             THE COURT:  Well, thanks to all three of you for

 5    coming.  I appreciate it.  It means a lot, obviously, to

 6    Mr. Campbell to have you here.  It means a lot to me, as

 7    well, because I'm trying to figure out an appropriate

 8    sentence for Mr. Campbell.

 9             At the end of that, I need some assurance that

10    Mr. Campbell will be a productive citizen in society, and

11    knowing that he has good people like you behind him gives me

12    an assurance that there will be people there to help him on

13    that road.  So thank you all very much for coming.

14             Go ahead, Mr. Dawson.

15             MR. DAWSON:  Thank you, Your Honor.  I do get a

16    little queasy sometimes about -- or all the time about

17    including all of my reasons in a position paper.

18             THE COURT:  Well, that's why we have position

19    papers.  Tell me the reasons, and there is nothing in your

20    position paper that I could see that tells me why he ought

21    to get a lower sentence.

22             MR. DAWSON:  The depth and breadth of his

23    assistance to the government at this point as far as

24    Mr. Chang is concerned.

25             THE COURT:  Okay.
```

1          MR. DAWSON:  Mr. Campbell admitted his involvement

2    very early, I think the day of his arrest.  He has met with

3    the government multiple times, upon request from the

4    government, to include the latest being yesterday, for

5    reasons that we discussed.

6          THE COURT:  I understand.

7          MR. DAWSON:  That is the basis for the variance.

8          THE COURT:  What do you think is the appropriate

9    sentence?

10         MR. DAWSON:  60 months.

11         THE COURT:  Tell me why.

12         MR. DAWSON:  As I mentioned in my position paper,

13   Mr. Campbell is somebody who can go out and earn an honest

14   living.  He does have a strong network of support.  His main

15   driver, as far as his conduct since arrest, has been to get

16   out to see his daughter graduate from college.  She is set

17   to graduate in two years, roughly May of 2024.

18         THE COURT:  I don't think that's going to happen.

19         MR. DAWSON:  That's his goal.

20         THE COURT:  Well, that may be his goal, but I don't

21   think he's -- I mean, he's got a five-year sentence I've got

22   to give him.  He could be Pope Francis, and I'd have to give

23   him five years.  That's the law.

24         MR. DAWSON:  He understands that.  That is why we

25   are asking for that sentence.  He has been in custody now

1  since August.  He's requesting a sentence that would enable

2  him to take part in a drug program, RDAP program, and also

3  to be as close to his family as possible.  When he does get

4  out, he is going to have a strong network of support.  He is

5  somebody who can go on and be productive.

6         Again, I think there have been periods in

7  Mr. Campbell's life, significant periods in his life where

8  he has been a productive member of society.  He has the

9  skills to do that.  He's perhaps the -- the Court may be

10 able to tell from the letters that have been submitted that

11 he's a very pleasant person.  I can't say I've really

12 described someone in a setting like this that way, but he

13 truly is a very pleasant, nice man.

14        I ask the Court to sentence him to the minimum

15 sentence here so that he can get out and be productive again

16 because I believe he certainly can.

17        THE COURT:  Thank you.

18        Ms. Montoya, do you want to respond to that

19 briefly?

20        MS. MONTOYA:  Your Honor, briefly, I would just say

21 with regard to any debriefs that he has done, I think that's

22 best handled in a separate motion at a later date.

23        THE COURT:  Thank you.

24        Mr. Campbell, if you would like to address me now,

25 now is the time for you to do that.  Please come up to the

1    podium, and I'll be happy to hear whatever you have to say.

2              THE DEFENDANT:  Good morning, Your Honor.

3              THE COURT:  Good morning.

4              THE DEFENDANT:  First off I just, you know -- I've

5    been, over the couple of weeks, just trying to put things

6    together and what to say and just, you know, retracting back

7    on some things that have took place in my life, you know.

8    Before I go into what I wrote, I just want to say that I was

9    released in 2016.  I did get off of papers.  I had five

10   years' probation.  I did get off of papers successfully.

11   Within two years I was off papers.

12             I held a job from the day I came home.  Got my

13   driver's license immediately.  I'm not going to go into

14   detail and throw all this COVID and things to that extent,

15   but it really took a financial and emotional toll on me when

16   COVID came, which it did for the whole society as well, and

17   with me having all that free time and my bills piling up on

18   me, because of the job that I had, I was selling timeshares

19   for Diamond Resorts on oceanfront, and I was very successful

20   at that.

21             So just to say when that period came when we all

22   was locked in our homes for two years, a lot of things was

23   on me emotionally and financially.  One of the things, while

24   my daughter wrote a letter, and he spoke about her

25   graduation, is because all those years that I was in prison,

1   that was one of my main things I was focused on, was getting

2   to her high school graduation, which she lives in Texas.

3          That was taken away from me due to COVID as well,

4   you know, so that was a lot of emotional strain, that I

5   wasn't able to see her walk across the stage in 2020 due to

6   COVID.  I just wanted to share those things that I did.  I

7   worked from the day I came home until I got laid off in

8   March of 2020.  I held a job the whole time I was home for

9   six years.

10         So at this point I just want to say, you know,

11  Judge, I was wrong.  I'm sorry.  My financial situation is

12  not an excuse for being involved in these activities, but

13  this will not happen again, and I just want to say thank you

14  for giving me the opportunity to speak.

15         THE COURT:  Thank you very much.  You may be

16  seated.  Let me go through the 3553(a) factors in this case.

17  First, the nature and circumstances of the offense.  Well,

18  there was a lot of cocaine involved in this.  Mr. Chang was

19  the supplier of the cocaine.  He mailed the drugs to

20  Virginia, or somehow they were to mail them to Virginia, and

21  Mr. Campbell then was involved in distributing them.

22         When Mr. Campbell, much to his credit, was

23  confronted by the police, he confessed immediately.  It's

24  significant in this case that -- and this really gets into

25  the history and characteristics of the defendant, that at

1    the time he was sentenced on this, he was just a few years

2    out from having finished a 172-month sentence for the same

3    offense, for distributing drugs, and he went back to it.

4            His personal history is that his parents were

5    separated.  His mother lives in Virginia Beach.  He was

6    raised by his grandparents.  But from all appearances, from

7    everything I could read, he had a pretty decent life as a

8    young person.  He's not married.  He does have a child who

9    is a 20-year-old and much to -- I know that Mr. Campbell was

10   in prison for part of that, but I think he stayed in

11   communication with his child, and she obviously loves him a

12   great deal, and she has grown up to be a successful, young

13   adult and is in college and, hopefully, will eventually

14   graduate.

15           Mr. Campbell's physical condition is good.  He's

16   used some substances, mostly Adderall and marijuana.  He has

17   a high school diploma, some college, and his work has been

18   in sales, and he has worked steadily at it, cars and

19   timeshares.

20           The next factor is the need for the sentence to

21   reflect the seriousness of the offense, promote respect for

22   the law, and provide just punishment.  Well, the seriousness

23   of the offense is that there was a lot of cocaine involved

24   in this.

25           With respect to the law, in many ways Mr. Campbell

```
1   has lived like a law-abiding citizen, but when push came to
2   shove, he went back to his criminal activity, even though he
3   had served 172 months in prison, almost 15 years, and just
4   punishment is always the difficult question.
5           The next factor is the need to afford deterrence to
6   keep other people from doing this.  I think that whatever I
7   do today will not deter anybody else from distributing
8   cocaine.  The minute Mr. Chang and Mr. Campbell went into
9   custody, somebody else picked up their share of the drug
10  world.  I can give him a life sentence, and somebody else
11  would be immediately filling in his shoes.  I hope that this
12  sentence will deter Mr. Campbell from doing this in the
13  future.
14          The next factor is the need to protect the public
15  from further crimes of the defendant.  Well, it's a lot of
16  cocaine.  The public needs to be protected from that.
17          The next factor is to give him education,
18  vocational training, medical care, and other treatment.  I
19  don't think that is much of a factor.  I'm to consider the
20  kinds of sentences available.  There is a maximum of 40
21  years, a mandatory minimum of five, a fine of $5 million.
22  I'm to take into account the guidelines, and, of course, the
23  guideline range in this case is 78 to 97.
24          I'm to avoid sentencing disparities among similarly
25  situated defendants.  Obviously, there are a lot of cocaine
```

```
 1   dealers, but in this particular case we are concerned about
 2   Mr. Chang, who was supplying Mr. Campbell with cocaine.
 3   I'll ask Ms. Montoya when Mr. Chang comes up for sentence to
 4   remind me what Mr. Campbell's sentence was so that there is
 5   not a disparity between them.
 6          There is a motion for a variance in this case
 7   because he can be a productive citizen and because he was
 8   honest with the police and a motion to go down to 60 months.
 9   I'll grant it in part but not much because there are a lot
10   of drugs in this case.  There was a prior almost identical
11   offense.
12          Mr. Campbell, please stand up.  Pursuant to the
13   factors set forth in 18 U.S. Code Section 3553(a), and the
14   Sentencing Reform Act of 1984, and having considered the
15   federal sentencing guidelines as advisory, it is the
16   judgment of the Court that you are hereby committed to the
17   custody of the U.S. Bureau of Prisons for a term of 72
18   months.  There is credit for time served.
19          This is sufficient but does not exceed the amount
20   of time necessary to achieve the goals of sentencing as set
21   forth in 18 U.S. Code Section 3553, reflects the seriousness
22   of the offense, promotes respect for the law, provides just
23   punishment, and deters other people from criminal conduct,
24   and protects the public from further crimes that you might
25   commit.
```

1          I recommend that while you're in prison you

2     participate in any education or vocational training offered

3     by the Bureau of Prisons.  I also recommend that the Bureau

4     of Prisons allow you to participate in its 500-hour

5     intensive substance abuse treatment program, if you qualify

6     and volunteer.

7          I recommend that the Bureau of Prisons assign you

8     to a facility as close as possible to Norfolk.  Upon release

9     from imprisonment, you will be placed on supervised release

10    for four years.  So that means that within 72 hours, you

11    have to report to the probation office in the district in

12    which you are released, and they will get you started on

13    that.

14         While on supervised release, you will not commit

15    any federal, state, or local crime.  You will not unlawfully

16    possess a controlled substance, and you will not possess a

17    firearm or destructive device.  You will comply with the

18    standard conditions of supervised release as recommended by

19    the U.S. Sentencing Commission.

20         At the discretion of your probation officer, you

21    will participate in a program for substance abuse problems.

22    This program may include residential treatment and will

23    include testing to determine whether you have gone back to

24    using any illegal substances.

25         The cost of this program will be paid by the

1    government.  You will waive any rights of patient

2    confidentiality.  And allow the Court and probation office

3    to see any records from drug treatment as directed by your

4    probation officer.  You will participate in that program.

5         You will also participate in Alcoholics Anonymous

6    or Narcotics Anonymous or its secular equivalent.  Those are

7    spiritual programs, and I'm not going to require you to go

8    to anything that's religious or quasi-religious.  So if you

9    can find a suitable replacement for AA and NA, you are

10   welcome to ask both the Court and your probation officer to

11   approve that, but it must be approved by a judge.  You have

12   to do 90 meetings in 90 days starting 10 days after your

13   release from prison.  Any combination of Alcoholics

14   Anonymous and Narcotics Anonymous meetings is acceptable.

15        You must get a sponsor who will agree to be -- to

16   not only to serve as your sponsor but to advise the Court

17   that he or she is your sponsor and to advise the Court if he

18   or she stops being your sponsor, but your sponsor need not

19   tell us anything about what you and your sponsor discuss.

20        Your sponsor is someone who will guide you through

21   the program of Alcoholics Anonymous or Narcotics Anonymous.

22   By the time you get out of prison, marijuana will be legal,

23   I'm positive of it, but you can't smoke it.  You are

24   forbidden to smoke marijuana because you do not need to use

25   any mood-altering substance.  That's just what has gotten

1   you into trouble in this case, so you may not use marijuana,

2   and you may not drink alcohol.  So you can't use any

3   substances with the active substance THC in it for the time

4   that you're on supervised release.

5          You cannot open new credit cards or lines of credit

6   or take out loans without the approval of your probation

7   officer.  You will give the probation officer access to any

8   requesting financial information.  I've considered your net

9   worth and liquid assets, your lifestyle and financial needs

10  as reflected in the presentence report, your earning

11  potential, and the dependents relying on your support.  I

12  realize your daughter is not technically a dependent, but I

13  can assure you that your children will always come to you

14  seeking something to help them.

15         I find that you're not capable of paying a fine.

16  No fine will be imposed, but you have to pay a special

17  assessment in the amount of $100 if you have not already

18  done so.  Technically, it's due immediately.  Any balance

19  remaining unpaid at the start of your supervised release

20  will be paid in installments of not less than $10 per month

21  until paid in full.

22         Those payments will start 60 days after your

23  supervised release begins, so you have a chance to get a job

24  and so forth.  The payment of any unpaid balance is a

25  special condition of your supervised release.

```
 1          Was there a forfeiture in the case?  I don't think
 2  so.
 3          MS. MONTOYA:  No, Your Honor.
 4          THE COURT:  Is there anything you need dismissed?
 5          MS. MONTOYA:  No, Your Honor.  This is a one count.
 6          THE COURT:  Sir, you have 14 days to appeal the
 7  sentence to the U.S. Court of Appeals for the Fourth
 8  Circuit.  If you want to do that, you have to file a notice
 9  of appeal.  You don't have to pay any money to do that.  If
10  you want to do that, talk to Mr. Dawson, and he will do that
11  for you, and he will tell you what rights of appeal you have
12  left.
13          Anything else, Ms. Montoya?
14          MS. MONTOYA:  Nothing further from the government.
15          THE COURT:  Anything else, Mr. Dawson?
16          MR. DAWSON:  No, Your Honor.  Thank you.
17          THE COURT:  Thank you all very much.
18          Mr. Campbell, God bless you and good luck, sir.  I
19  wish you the best.
20          THE DEFENDANT:  Thank you.
21          THE COURT:  Take a recess.
22          (Hearing adjourned at 9:32 a.m.)
23
24
25
```

```
 1                        CERTIFICATION

 2

 3        I certify that the foregoing is a correct transcript

 4   from the record of proceedings in the above-entitled matter.

 5

 6

 7            X_____/s/_____x

 8                       Jody A. Stewart

 9                X_____1-3-2022 _____x

10                            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

AO 245B (Rev. 09/19) (VAE 01/22)  Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| | ) | |
| v. | ) | Case Number:     2:21CR00146-002 |
| | ) | |
| HAROLD DUSHAWN CAMPBELL, | ) | USM Number:    56311-083 |
| | ) | S.W. Dawson, Esq. |
| | ) | Defendant's Attorney |
| | ) | |
| | ) | |

The defendant pleaded guilty to Count One of the Indictment.

The defendant is adjudged guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846 and 841(a)(1) and 841(b)(1)(B) | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE COCAINE | October 2021 | One |

   The defendant is sentenced as provided in pages 2 through 7 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

   The defendant has been found not guilty on count(s)
Count(s)              ☐ is    ☐ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

July 29, 2022
Date of Imposition of Judgment

/s/
John A. Gibney, Jr.
United States District Judge

Digitally signed by John Gibney
Date: 2022.07.29 11:58:04 -04'00'

Date

**JA48**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                          Page 2 of 7
      Sheet 2 - Imprisonment

Case Number:         **2:21CR00146-002**
Defendant's Name:    **CAMPBELL, HAROLD DUSHAWN**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
term of SEVENTY-TWO (72) MONTHS.  The defendant shall receive credit for time served on this charge.


The Court makes the following recommendations to the Bureau of Prisons:
1. THAT THE DEFENDANT BE DESIGNATED TO A FACILITY NEAR NORFOLK, VA;
2. THAT THE DEFENDANT PARTICIPATE IN THE 500 HOUR INTENSIVE DRUG TREATMENT PROGRAM, IF HE
   QUALIFIES AND VOLUNTEERS;
3. THAT THE DEFENDANT RECEIVE EDUCATIONAL AND VOCATIONAL TRAINING.

The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

        ☐   at _____ ☐ a.m. ☐ p.m. on_____.

        ☐   as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on _____ .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.


## RETURN

I have executed this judgment as follows: _____

_____
Defendant delivered on _____ to_____
at_____, with a certified copy of this Judgment.


                            _____
                            UNITED STATES MARSHAL

                By    _____
                            DEPUTY UNITED STATES MARSHAL

**JA49**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                                                                   Page 3 of 7
   Sheet 3 – Supervised Release

---

| | |
|---|---|
| **Case Number:** | **2:21CR00146-002** |
| **Defendant's Name:** | **CAMPBELL, HAROLD DUSHAWN** |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of FOUR (4) YEARS.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**JA50**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                    Page 4 of 7
     Sheet 3 – Supervised Release

---

| | |
|---|---|
| **Case Number:** | **2:21CR00146-002** |
| **Defendant's Name:** | **CAMPBELL, HAROLD DUSHAWN** |

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____ Date

**JA51**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                          Page 5 of 7
Sheet 3A – Supervised Release

Case Number:            2:21CR00146-002
Defendant's Name:       CAMPBELL, HAROLD DUSHAWN

# SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall not incur new credit card charges or open additional lines of credit without the approval of the probation officer.

2.    The defendant shall provide the probation officer with access to requested financial information.

3.    The defendant shall participate, at no cost to the defendant, in a program approved by the United States Probation Office for substance abuse, which program may include residential treatment and shall include testing to determine whether the defendant has reverted to the use of drugs or alcohol, at the direction and in the discretion of the probation officer.

4.    The defendant shall waive all rights of confidentiality regarding substance abuse treatment in order to allow the release of information to the probation officer and authorize communication between the probation officer and the treatment provider.

5.    The defendant shall not consume any alcohol or marijuana, even if it becomes legal.

6.    The defendant shall participate in Narcotics Anonymous/Alcoholics Anonymous or a similar secular program.  Any program that the defendant chooses as a secular equivalent to NA/AA must be approved by the probation officer and the Court.  Within 10 days of release, the defendant shall begin attendance in the selected program.  The defendant shall attend 90 meetings of the selected program within 90 days.  The defendant shall obtain a sponsor in the selected program who agrees to confirm the sponsor relationship with the defendant's probation officer and advise the probation officer if the sponsor relationship ends.

7.    The defendant shall pay the balance owed on any court-ordered financial obligations in monthly installments of not less than $10, starting 60 days after supervision begins until paid in full.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                                    Page 6 of 7
     Sheet 5 – Criminal Monetary Penalties

Case Number:          2:21CR00146-002
Defendant's Name:     CAMPBELL, HAROLD DUSHAWN

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $  100.00 | $  N/A | $  0.00 | $  N/A | $  N/A |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss**** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **TOTALS** | $ | $ | |

☐  Restitution amount ordered pursuant to plea agreement   $

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:
    ☐  the interest requirement is waived for the ☐ fine ☐ restitution.
    ☐  the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# JA53

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case

Sheet 6 – Schedule of Payments

| | |
|---|---|
| **Case Number:** | 2:21CR00146-002 |
| **Defendant's Name:** | CAMPBELL, HAROLD DUSHAWN |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐    Lump sum payment of $_____ due immediately, balance due
         ☐   not later than _____ , or
         ☐   in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐    Payment in equal   *(e.g., weekly, monthly, quarterly)* installments of $_____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐    Payment in equal   *(e.g., weekly, monthly, quarterly)* installments of $_____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐    Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒    Special instructions regarding the payment of criminal monetary penalties:
         The defendant shall pay any remaining balance on his special assessment in monthly installments of at least $10, with payments to begin within 60 days of release from imprisonment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

☐   Joint and Several

     Case Number
     Defendant and Co-Defendant Names               Joint and Several           Corresponding Payee,
     *(including defendant number)*       Total Amount         Amount                if appropriate

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 2:21CR146-01 |
| v. | ) | |
| | ) | |
| DAVID HYUN CHANG, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Megan M. Montoya, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guideline sentence to be a term of 46 to 57 months' imprisonment, which will result in a restricted sentence of 60 months' imprisonment. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and has no objections to the PSR.

For the reasons outlined below, the United States respectfully submits that a sentence greater than 72 months would fulfill the purposes set forth in 18 U.S.C. § 3553(a).

I.    **Background**

Harold Dushawn Campbell and David Hyun Chang, a/k/a "Dave Cali," were named in a one-count Indictment returned by the Grand Jury in the Eastern District of Virginia, Norfolk Division, on December 16, 2021. Count One charges Count One charges Chang with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or more of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii), from at least in or about March 2021 and

1

**JA55**

continuing thereafter up to and including October 2021.  On April 1, 2022, Chang appeared before this Court and pleaded guilty to the one-count Indictment. The Court accepted Chang's guilty plea and found him guilty as charged, and sentencing was continued pending the completion of a presentence report. There is no plea agreement in this case.

**II.**     **Standards Governing Sentencing**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.  *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence."  *Id.* at 90.  Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors.  *Id.* at 49-50.  The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence."  *United States v. Simmons*, 269

Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

III.     **Position on Sentencing and Argument**

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.  For the reasons that follow, the government respectfully submits that a sentence greater than 72 months is appropriate and reasonable in light of the Section 3553(a) factors.

A.     <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of this offense weigh in favor of a sentence at the bottom of the advisory guideline range. The investigation into Chang and his coconspirators began when United States Postal Service authorities conducted a review of their Postal Service internal databases on March 1, 2021, for suspicious activity regarding one of their United States Post Office City Carriers, herein referred to as unindicted co-conspirator 1 (UCC-1). The defendant was an active participant in an interstate drug trafficking organization that transported and distributed quantities of cocaine from California to the Hampton Roads area from approximately March 2021 through October 2021. Within the conspiracy, the Chang acted as a source of supply and middleman from California to the defendant in Virginia Beach, Virginia. Postal Service records revealed that between March 31, 2021, and July 21, 2021, 26 suspected Money Parcels were

3

**JA57**

delivered to Chang's residence located in Long Beach, California. 12 of those suspected Money Parcels were sent from Virginia. A review of Postal Service records also revealed that between February 2, 2021, and July 31, 2021, 65 suspected Drug Parcels were inducted in United States Post Offices in Long Beach, California, and sent to addresses in Chesapeake, Virginia. Campbell acted as a mid-level distributor of cocaine within the Eastern District of Virginia. Chang and his coconspirators distributed a significant amount of cocaine and marijuana. Chang is attributed with 2.715146 kilograms of cocaine and 907.2 grams of marijuana, for a total converted drug weight of 544.91 kilograms. The defendant's offense conduct warrants a significant period of incarceration.

B.    History and Characteristics of the Defendant

The defendant is a 44-year-old male who reports he had an overall good upbringing with no history of abuse in the home. The defendant has previously been convicted of Driving with A Blood Alcohol Content of .08% or More and received a conditional discharge for a money laundering, 2nd degree offense. The defendant has previously abused alcohol and cocaine and would benefit from drug treatment.

C.    Other Factors to be Considered Under 18 U.S.C. § 3553(a)

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense, afford adequate deterrence to future criminal conduct, and the need to provide the defendant with substance abuse treatment. The United States would also highlight the need to avoid unwarranted sentencing disparities. As a middleman, Chang was higher up in the conspiracy than Campbell, who was recently sentenced to 72 months' imprisonment. The United States would also note that Campbell accepted responsibility early on in the prosecution and was candid about his own involvement in the conspiracy, whereas Chang made false and misleading

statements to law enforcement.  The government submits that a sentence greater than 72 months' imprisonment for Chang is warranted.

IV.   **Conclusion**

The United States respectfully submits that a sentence greater than 72 months' imprisonment is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the Court to impose the same.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:  _____/s/_____
Megan M. Montoya
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 W. Main St., Suite 800
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-3205
E-Mail Address: Megan.Montoya@usdoj.gov

5

**JA59**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of August 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record.

I hereby certify that on the 1st day of August 2022, I emailed a true and correct copy of the foregoing to the following:

Robyn S. Basilio
United States Probation Officer

/s/

Megan M. Montoya
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 W. Main St., Suite 800
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-3205
E-Mail Address: <u>Megan.Montoya@usdoj.gov</u>

**JA60**

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

UNITED STATES OF AMERICA

        v.                          Docket No.: 2:21cr146

DAVID HYUN CHANG,

        Defendant.

### <u>DEFENDANT'S POSITION ON SENTENCING</u>

The Defendant, David Hyun Chang ("Mr. Chang"), by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines Policy Statements, as well as this Court's Sentencing Order, hereby files his sentencing pleading.

### Sentence requested

David Chang is an educated 44-year-old man who was raised by a good, hard-working family. However, his proclivity for gambling, alcohol, and cocaine have led him astray, again and again. In fact, Mr. Chang's criminal record consists of just two offenses, and both relate to alcohol and gambling. The instant offense is another wakeup call for Mr. Chang to address his addictive tendencies. He recognizes that his consistent use of cocaine was the first step down a path that led to this conspiracy. Mr. Chang hopes that, while incarcerated, he will finally get the help that he needs. He is ready in a way he was not before to confront his addictions.

Mr. Chang has been deeply affected by this entire experience, both by this arrest and by his pretrial incarceration so far from home. Mr. Chang has never spent this amount of time in custody, and he quickly has learned it's not something he wishes to continue or to repeat. Mr. Chang has one felony conviction where he received a three-year conditional discharge, which is similar to a three-year period of good behavior. He did not even receive probation, which speaks volumes about the judge's view of the seriousness of the conviction. The only other thing Mr. Chang has on his record is a DWI misdemeanor conviction from 16 years ago, and he received just three years of probation. This is the first time in his life Mr. Chang *knows* he will go to prison.

Based on several factors outlined below, Mr. Chang respectfully submits that a sentence of 36 months is more than sufficient to satisfy the mandate of 18 U.S.C. § 3553(a). This is just one month below the adjusted guidelines of 37-46 months,[1] should this Court grant him safety valve under 18 U.S.C. § 3553(f). However, should this Court rule that Mr. Chang is not eligible for safety valve, a sentence of 60 months is appropriate.

## I.   Mr. Chang's history and characteristics supports the sentence requested.

David Hyun Chang was born in Tehran, Iran. PSR ¶ 39. Mr. Chang had a solid upbringing, and he maintains a close relationship with his parents who live in a retirement community in California. PSR ¶¶ 40, 41.  None of his family members have a criminal record to his knowledge. *Id*. Unfortunately, Mr. Chang and his brother have a strained relationship and have not spoken in 4 or 5 years. PSR ¶ 40.  Like many families,

---

[1] Total offense level 21, criminal history category I.

the dispute arose out of financial stressors, and the care of their parents. Mr. Chang was not able to even speak to his parents for about 4 years. PSR ¶ 42. This was a very difficult time for him, as he is very close to his parents.

Mr. Chang became a United States Citizen in November of 1996 and moved out of the family home when he was 29. PSR ¶¶ 39, 41. He has never been married, has no children, and has lived and worked in California since immigrating to the United States. PSR ¶¶ 43, 44. Upon release, Mr. Chang would return to Long Beach, California and secure his own residence there, or he would reside with his parents until he could establish permanent living arrangements nearby. PSR ¶ 46.

Mr. Chang is a graduate of Warren High School in Downey, California, and he received his bachelor's degree in business administration from California State University. PSR ¶ 53. Mr. Chang worked as a bank teller to pay his way through college. PSR ¶ 56. He also proudly served in the United States Air Force for four years, where he specialized as a journeyman in aircraft electrical and environmental systems. PSR ¶ 55. Mr. Chang received an honorable discharge in 2003, and his rank at separation was Senior Airman (E-4). *Id*. Afterwards, Mr. Chang was employed as a sales representative for Penske Truck Rental, before becoming a sales engineer for Tecnara Tooling Systems, Inc. PSR ¶¶ 57, 58. From 2009 to 2016, Mr. Chang was self-employed and worked for an online gambling business. PSR ¶ 59. Unfortunately, by 2017, Mr. Chang was gambling for a living until his arrest, something he now recognizes only promoted his addictive behavior. PSR ¶ 60.

Mr. Chang is in fairly good health, but he has been experiencing shoulder pain. PSR ¶ 48. Additionally, he suffers from pain in his knee from a previous military injury and experiences hearing loss as well. *Id.*

Regarding his mental health, Mr. Chang still deals with depression that he first experienced when he joined the military. PSR ¶ 49.  While in the military, he did not receive the needed care for this and attempted to deal with the feelings on his own. *Id.* Now, Mr. Chang strongly believes that he would benefit from mental health counseling. *Id.* Accordingly, it is important to Mr. Chang that he participate in the mental health treatment while incarcerated.

Mr. Chang knows that he needs help with his struggles with alcohol. PSR ¶ 49. Mr. Chang says that he had his first beer at age 17 or 18, and that he only drank socially until he joined the military. PSR ¶ 50. After that, he began drinking every day: beer during the week and hard liquor on the weekends. *Id.* Mr. Chang tried to get sober after he left the military, but he was charged with a DUI in 2006. *Id.* The downward spiral continued after Mr. Chang was arrested in 2015 for illegal gambling, and then he began to drink even more. *Id.*

Unfortunately, Mr. Chang's predisposition to addiction did not stop at alcohol or gambling. While in Costa Rica on vacation around age 28 or 29, Mr. Chang tried cocaine for the first time. PSR ¶ 51. From that moment, he admits to using cocaine until his arrest. *Id.* Mr. Chang considers himself to be more of an alcohol abuser than a cocaine addict. PSR ¶ 52. But, there is no such thing as a healthy amount of cocaine use, so Mr. Chang could definitely benefit from substance treatment while incarcerated.

### III.   This sentence is sufficient for the remaining § 3553(a) factors.

Thirty-six months of incarceration is more than sufficient for the remaining 18 U.S.C. § 3553(a) factors. It reflects the seriousness of Mr. Chang's offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A).

As Mr. Chang awaits sentencing, he has had time to reflect on the life that brought him to this point through the lens of a clear mind. Because he knows treating and managing his addictions is key to preventing him from reoffending, Mr. Chang desires to participate in the Residential Drug Abuse Program ("RDAP").

It is not necessary to impose a sentence greater than 36 months of imprisonment to deter Mr. Chang and others. 18 U.S.C. § 3553(a)(2)(B). As to general deterrence, research indicates that it is not the severity of punishment but the certainty of punishment that drives general deterrence.[2] In 2016, even the Department of Justice confessed in its publication on deterrence that "[i]ncreasing the severity of punishment does little to deter crime," acknowledging that "[l]aws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective."[3] This DOJ concession was presumably made in light of the fact that "studies repeatedly show that awareness

---

[2] Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 7-8 (Nov. 2010), *available at* http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf (last visited July 27, 2022).

[3] U.S. Dept. of Justice, *National Institute of Justice Five Things About Deterrence* (May 2016), *available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf (last visited July 27, 2022).

of potentially severe sanctions does not produce less crime."[4] General deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid."[5] Certainly, any rational person would seek to avoid a 36-month sentence, especially if much of that sentence was to be served in a local jail. As for Mr. Chang, deterrence has already been achieved through his arrest and prosecution. He's well aware that he is on the government's radar and will face harsh penalties, like his co-defendant in this case, if he engages in drug distribution in the future.

Moreover, treatment, education, and vocational training will help eliminate any minimal risk of recidivism by addressing the factors that may have contributed to Mr. Chang's commission of the instant offense. The community is the best place for Mr. Chang to learn skills and engage in treatment; the law is clear that prison is not an effective means of treating, rehabilitating, or training. *Tapia v. United States*, 564 U.S. 319 (2011); 28 U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."). In the end, a 36-month term of imprisonment is significant, and a term of supervision to follow will further reduce any recidivism risk. After all, supervision is challenging and constitutes a

---

[4] Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted).

[5] *Id.* at 1205.

substantial restriction of liberty. *Gall v. United States*, 552 U.S. 38 (2007) (explaining that standard conditions of supervision "substantially restrict [defendants'] liberty").

There is no evidence that a longer sentence of incarceration would lower the risk of recidivism. In fact, the opposite is true, especially for someone like Mr. Chang who has not received a sentence of incarceration before. *See*, *e.g.*, *United States v. Graf*, No. 07-CR-320, 2008 WL 5101696, at *2 (E.D. Wis. Dec. 1, 2008) *citing United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.Wis.2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Finally, the sentence requested would not create unwarranted disparity in sentencing under 18 U.S.C. § 3553(a)(6). On July 29, 2022, Mr. Campbell received 72 months for his participation in this same conspiracy. ECF Nos. 44, 45. Defense counsel does not know the specifics of Mr. Campbell's record, but understands he has a prior conviction for Possession with Intent to Distribute Cocaine Base, wherein he served some amount of prison time. ECF No. 41, at 4. Mr. Chang has no prior drug convictions and has never even received a jail sentence.

## Conclusion

Given consideration to the facts and factors above, Mr. Chang respectfully asks the Court to impose a sentence of 36 months' imprisonment followed by four years of supervised release. Such a sentence is more than sufficient to comply with the statutory sentencing factors. He also respectfully requests that this Court recommend to the BOP

that he participate in RDAP. Finally, Mr. Chang respectfully requests that Court recommend to the BOP that he serve his sentence at a facility as close to Long Beach, California as possible.

Respectfully submitted,

DAVID HYUN CHANG

By: ___/s/_____
Amanda C. Conner
Virginia State Bar No. 88317
Assistant Federal Public Defender
Attorney for David Hyun Chang
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: (757) 457-0816
Facsimile: (757) 457-0880
Email: amanda_conner@fd.org

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                          Criminal Action No. 2:21cr146-1

DAVID HYUN CHANG,
          Defendant.

## ORDER

The Court hereby places the parties on notice that the Court will consider an upward variance from the guideline sentencing range set forth by the Presentence Investigation Report for David Hyun Chang filed on July 27, 2022.  (ECF No. 42.)  The Court believes the following factors may merit an upward variance from the guideline sentencing range:

1.      The nature and circumstances of the offense;

2.      The seriousness of the offense;

3.      The need to provide just punishment for the offense;

4.      And, most importantly, the need to avoid unwarranted sentence disparities.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: ____9___ August 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

**JA69**

Dear Honorable Judge Gibney,

My name is David Chang and I am very sorry for the crimes I have committed. As a Korean American I am very embarrassed to put myself in this situation. I have battled alcohol and gambling addiction since I was in High School. I have unsuccessfully tried to correct these problems by myself. I just started talking to my mother for the first time in almost 4 years. She told me that she has been praying for me to find Jesus Christ for over 10 years. This journey that I am on has been both crazy and beautiful. I have never experienced this amount of stress in my life. On the flip side I have both my parents back in my life and a new relationship with Jesus Christ my Lord and Savior. I feel it was my destiny to be here and find God. My dad is 87 and my mother is turning 77. My only plans after my incarceration is to take care of my parents and go to church. I know some people find God temporarily then go back to their old ways I wont be that person. I have accepted my forever relationship with God. I took my military career serious, my time as a college student serious, and I take my relationship with Jesus Christ very serious. I am not a violent person and I'm not a gang member. I promise you that I will never end up in your court room. I ask you for mercy so I can take care of my parents. Thank you for taking time to read this. God bless you.

DAVID CHANG

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                        )
 5    UNITED STATES OF AMERICA,         )
                                        )
 6                                      )   CRIMINAL ACTION NO.
      v.                                )   2:21cr146-1
 7                                      )
      DAVID HYUN CHANG,                 )
 8                                      )
              Defendant.                )
 9   - - - - - - - - - - - - - - - - - -

10

11

12                    TRANSCRIPT OF PROCEEDINGS

13                       (Sentencing hearing)

14                        Norfolk, Virginia

15                        October 21, 2022

16

17   BEFORE:  THE HONORABLE JOHN A. GIBNEY, JR.
              United States District Judge

18

19

20   APPEARANCES:

21            UNITED STATES ATTORNEY'S OFFICE
              By:  Megan M. Montoya
22                 Assistant United States Attorney
                   Counsel for the United States
23
              CHRISTOPHER J. O'DONNELL, PLLC
24            By:  Christopher J. O'Donnell
                   Counsel for the Defendant
25
```

```
 1                       I N D E X

 2    GOVERNMENT'S
      WITNESSES             DIRECT   CROSS   REDIRECT   RECROSS
 3
      NONE
 4

 5    DEFENDANT'S
      WITNESSES             DIRECT   CROSS   REDIRECT   RECROSS
 6

 7    JOHN H. GALBREATH         18     --

 8                     E X H I B I T S

 9

10    GOVERNMENT'S
      NO.                                            PAGE
11
      NONE
12

13
      DEFENDANT'S
14    NO.                                            PAGE

15    1A                                             7
      1B                                             7
16    1C                                             7
      2A                                             7
17    2B                                             7
      2C                                             7
18    2D                                             7
      3                                              7
19    4A                                             7
      4B                                             7
20    5                                              7
      6                                              7
21    7                                              7

22

23

24

25
```

```
 1              (Hearing commenced at 9:04 a.m.)

 2              THE CLERK:  In case 2:21cr146, United States of

 3    America represented by Megan Montoya versus David Hyun Chang

 4    represented by Christopher O'Donnell.

 5              Are the parties ready to proceed?

 6              MS. MONTOYA:  The government is ready to proceed.

 7              Good morning, Your Honor.

 8              THE COURT:  Good morning, Ms. Montoya.

 9              MR. O'DONNELL:  Good morning, Your Honor.

10    Defendant is ready to proceed.

11              THE COURT:  All right.  Good morning,

12    Mr. O'Donnell.

13              Good morning, Mr. Chang.

14              Good to see all three of you.  Thanks for coming

15    today.

16              Let's see.  Has he been found guilty?  Did he enter

17    his plea before me?  I think he did.

18              MS. MONTOYA:  I believe so, Your Honor.

19              THE COURT:  Well, if you haven't been formally

20    found guilty yet, Mr. Chang, I hereby find you guilty of the

21    offenses to which you are pleading guilty.

22              So where we are on this case is we are here for a

23    sentencing today.  Mr. O'Donnell, have you had a chance to

24    review the presentence report with Mr. Chang and discuss it

25    with him?
```

```
1            MR. O'DONNELL:  Yes, Your Honor, I have.

2            THE COURT:  Have you gone over the conditions of

3    supervised release which are included in the presentence

4    report?

5            MR. O'DONNELL:  Yes, sir, I did.

6            THE COURT:  Do you have any objection to any of

7    that?

8            MR. O'DONNELL:  No.  Other than the objections

9    already filed in the court record.

10           THE COURT:  What we have is the question about the

11   safety valve.

12           MR. O'DONNELL:  Safety valve, question of fact for

13   the Court today, Your Honor.  I have a witness, as the Court

14   may recall, that I subpoenaed from the government to take

15   the stand.  I have the burden of persuasion and proof by a

16   preponderance on safety valve.

17           THE COURT:  Right.  I understand that.

18           MR. O'DONNELL:  Then I'm going to present

19   information on the fine, not capable of paying a fine.

20           THE COURT:  I'm not going to impose a fine, so

21   don't worry about that.

22           MR. O'DONNELL:  Okay.  Thank you, Your Honor.

23           THE COURT:  If he was capable of paying a fine, he

24   probably wouldn't have you for a lawyer, I mean, he wouldn't

25   have a court-appointed lawyer.
```

```
 1              MR. O'DONNELL:  Right.  Yes, Your Honor.
 2              THE COURT:  All right.  Ms. Montoya, does the
 3      government have any objections to the presentence report?
 4              MS. MONTOYA:  No, Your Honor.
 5              THE COURT:  So let me just, before we get too far
 6      into this, Ms. Montoya, I need to ask you a question dealing
 7      with the government's position on sentencing.  On Page 4 or
 8      Page 3 of your position on sentencing, you say, at the end
 9      of the first paragraph, "The government submits that a
10      sentence greater than 72 months is appropriate and
11      reasonable in light of the Section 3553(a) factors," and
12      then in the next sentence you say, "The nature and
13      circumstances of this offense weigh in favor of a sentence
14      at the bottom of the advisory guideline range."
15              MS. MONTOYA:  Yes, Your Honor.
16              THE COURT:  Which one do you want?
17              MS. MONTOYA:  I'm sorry, sir.  That was my error.
18      We are asking for a sentence of greater than 72 months based
19      on the fact of all the nature and circumstances, including
20      that Mr. Campbell, the co-conspirator, was sentenced to 72
21      months.  So it's the government's position that a sentence
22      of --
23              THE COURT:  Well, that's what's sort of the rest of
24      your --
25              MS. MONTOYA:  Yes, sir.  I apologize.  It was a
```

1   typographical error.

2         THE COURT:  Okay.  All right.  Well, let's see.

3   You have some evidence on the issue of safety valve; is that

4   correct?

5         MR. O'DONNELL:  I do, Your Honor.  In fact, I have

6   alerted Ms. Montoya that I seek to make a proffer this

7   morning to try to speed this along.

8         THE COURT:  Well, if she's willing to go along with

9   the proffer, that's fine.

10         MS. MONTOYA:  And my understanding is that it was

11   going to be an outline of just the history of the case.

12   Certainly, as long as it's factually accurate, I have no

13   objection to proffer.

14         MR. O'DONNELL:  That you, Ms. Montoya.

15         Your Honor, I'm going to try to be factually

16   accurate.  I'm going to go through the case chronologically

17   a little bit, and then tee it up for where we disagree on

18   the safety valve issue.

19         Now, this case, about June of 2020, Mr. Chang, my

20   client, met Harold Campbell for the first time.  In October

21   of 2020, Mr. Campbell initiated a drug dealing conversation

22   with my client.  He asked my client for a marijuana plug,

23   which is a supplier.  That's supported by Defendant's

24   Exhibit 3.

25         Now, Your Honor, I'm going to be offering at the

1    end of my proffer several exhibits.  They are the

2    government's own reports.  They are the debriefs of my

3    client and Mr. Campbell and some other documents.  I've made

4    a copy for the Court.

5           THE COURT:  Got them right here.

6           MR. O'DONNELL:  Very good, Your Honor.  I'll refer

7    to them as I'm moving through the proffer.

8           THE COURT:  Mr. O'Donnell, what I have here are

9    Defendant's Exhibits 1A, 1B, 1C, 2A, 2B, 2C, 2D, Exhibit 3,

10   Exhibit 4A and 4B, and Exhibits 5, 6 and 7, and they will

11   all be received into evidence.  Okay.

12          (Defendant's Exhibits 1A, 1B, 1C, 2A, 2B, 2C, 2D, 3,

13   4A, 4B, 5, 6 and 7 received in evidence.)

14          MR. O'DONNELL:  Thank you, Your Honor.  That moves

15   it along.

16          THE COURT:  Did you give a copy of this to the

17   clerk?

18          MR. O'DONNELL:  I did.  I gave a copy of the cover

19   sheet to the clerk.

20          MS. MONTOYA:  And, Your Honor, this is an ongoing

21   investigation, so we would just ask that the exhibits be

22   offered under seal.

23          THE COURT:  All right.

24          MR. O'DONNELL:  I agree with that.

25          THE COURT:  They will be sealed.

1          MR. O'DONNELL:  So in about October of 2020
2     Mr. Campbell asked my client for a marijuana plug, a
3     supplier.  October 22nd, 2021, the DEA with the Virginia
4     Beach Police executed a search warrant pursuant to a
5     controlled delivery to the residence of Harold Campbell in
6     Virginia Beach.
7          The debrief of Mr. Campbell followed.  That's
8     marked as Exhibit 1A.  Nowhere in the first interview of
9     Mr. Campbell is Chang even mentioned.  That did not occur
10    until five months later, almost five months later.  In that
11    first interview Mr. Campbell identified his cocaine supplier
12    as an Asian male named Tung T. Ha, AKA Bozz, B-o-z-z.
13    Mr. Campbell even supplied the DEA with Tung T. Ha's phone
14    number.  The DEA took pictures of the drugs, cash and others
15    items it seized from Campbell's residence.  They are marked
16    as Exhibit 1B.  They also created an inventory listing all
17    the items they seized from Campbell's residence, marked as
18    1C.
19          On November 18th, 2021, Mr. Chang was arrested in
20    Long Beach, California.  He was arrested by the DEA.  They
21    executed a search warrant at his residence.  They executed
22    that pursuant to a search warrant, and they interviewed his
23    roommate, Tony Nguyen.  That is marked -- the interview of
24    Tony Nguyen is marked as Defense Exhibit 2D.
25          Post-arrest Mr. Chang was interviewed.

```
 1              THE COURT:  I don't have a 2E.  2D.

 2              MR. O'DONNELL:  2D, I'm sorry, as in delta, Your

 3      Honor.

 4              Mr. Chang was interviewed, and that's marked as 2A.

 5      Items were seized from Mr. Chang's residence.  They're

 6      listed on a search warrant inventory, Exhibit 2B.  That same

 7      day a criminal complaint was filed.  It was supported by an

 8      affidavit of DEA Agent Jack H. Faddis, Jr.  The affidavit is

 9      marked as Defendant's Exhibit 2C.

10              On December 16th, 2021, my client, Mr. Change, and

11      Harold Campbell were both indicted by the Grand Jury.  On

12      March 15th, 2022, Mr. Campbell was debriefed for a second

13      time by the DEA.  This was the first occasion he mentioned

14      my client.

15              In Paragraph 4 of that debrief Campbell told the

16      DEA, quote, "In late March/early April of 2021, Campbell

17      received his first cocaine package from Chang.  The package

18      contained approximately a half a kilogram of cocaine and was

19      shipped via the United States Postal Service."  That debrief

20      is marked as Defendant's Exhibit 3.

21              A week later -- well, excuse me, a week after that,

22      Mr. Campbell pleaded guilty.  He executed a plea agreement

23      and a cooperation agreement with the United States.  A week

24      after that, exactly one week later, my client pleaded guilty

25      but without a plea agreement, with no cooperation agreement.
```

1          Both Mr. Chang and Mr. Campbell signed a detailed

2     statement of facts.  They mirrored each other.  On July

3     14th, 2022, prior counsel to Mr. Chang, Amanda Conner from

4     the Public Defender's Office, sent a proffer letter

5     outlining information that Mr. Chang could disclose to the

6     government.  It was eight pages total.  That proffer letter

7     is marked as Defendant's Exhibit 4A.

8          In his proffer, among other things, Mr. Chang again

9     confirmed he mailed multiple packages of narcotics, cocaine,

10    marijuana, and marijuana accessories to Virginia, including

11    the four packages of cocaine as outlined in the presentence

12    report at Paragraph 12.

13         Mr. Chang provided other information on drug

14    trafficking.  For example, he identified a Hispanic male

15    known as Jay or Jay Boss who supplied a kilogram of cocaine

16    to Mr. Campbell.  Chang reported that one of Mr. Jay's

17    associates was carrying a firearm when they met, so he

18    avoided him after that, but Mr. Campbell continued to deal

19    with Jay.

20         Mr. Chang also admitted that he bought cocaine from

21    Mr. Campbell, some of which he sold through his friends and

22    friends of friends.  That's Defendant's Exhibit 4A, Page 6

23    at the bottom.

24         On July 28th, the DEA conducted a proffered

25    debrief.  They began that morning by first interviewing

1    Mr. Campbell and reviewing with him and his attorney my

2    client's proffer letter.  They said at the beginning of that

3    debrief, which is Defendant's Exhibit 5, "The purpose of the

4    debrief was to review and discuss a proffer letter submitted

5    by co-defendant David Chang."

6          After they were done with the debrief of

7    Mr. Campbell, they immediately interviewed my client.  They

8    transported him back to their office, and that debrief

9    lasted one hour and 45 minutes.  The debrief of my client is

10   Defendant's Exhibit 4B.

11         Notably, Mr. Campbell and Mr. Chang's accounts,

12   their respective roles in the offense, mirrored each other

13   in some regards.  For example, both told the government that

14   Mr. Chang mailed four packages containing cocaine to

15   Virginia and others containing marijuana, but there were

16   also differences.

17         For example, Mr. Campbell characterized Mr. Chang

18   as being a bigger player in the conspiracy than he.  The

19   government decided my client had not been truthful, that he

20   minimized his role in the conspiracy, and he was, quote,

21   higher up in the conspiracy than Campbell.  That's

22   electronic case file number 50.

23         And so they maintained Mr. Chang is not deserving

24   of the safety valve application and perhaps not even for a

25   reduction for acceptance of responsibility.  Now on August

1   26th the government was kind enough to provide me with a

2   reverse proffer as new counsel on the case.  We sat down,

3   they made some observations.  They said that both Campbell

4   and Mr. Chang had not been honest in their first interview.

5           They also told me that they realized that Karmelita

6   Prado, the girlfriend to Harold Campbell, was involved in

7   the conspiracy, even though Harold Campbell denied that she

8   was and wouldn't help provide any information about her role

9   in the conspiracy.

10          THE COURT:  She's the person that went to the post

11  office out in California a couple of times?

12          MR. O'DONNELL:  She is one of the people that went

13  to the post office, and I think the DEA has a video and

14  still photographs of that, Your Honor.

15          THE COURT:  Okay.

16          MR. O'DONNELL:  Notwithstanding the government's

17  position that safety valve should not be applied and that my

18  client had not been truthful, my client called to my

19  attention that he recalled certain additional details about

20  Ms. Prado which could be useful to the government.

21          I immediately reached out to the government, left a

22  voicemail message for Ms. Montoya calling to her attention

23  the fact that he was willing to sit down and provide more

24  information.  Ms. Montoya replied with an e-mail dated

25  September 20th, 2022.  In that the e-mail she stated, "...we

```
1    are not interested in another proffer with him at this time
2    because we do not assess him as having been honest in the
3    last proffer."
4          MS. MONTOYA:  Your Honor, I just object to that.
5    He's only read part of a sentence, and I think it just takes
6    it out of context.
7          THE COURT:  Read the whole thing, Mr. O'Donnell.
8          MR. O'DONNELL:  I'll read the whole sentence, and I
9    call the Court's attention that Defendant's Exhibit 6 is
10   that e-mail.  So it's in the Court's record now.  It's been
11   admitted.  I'm reading the entire sentence, "We are not
12   interested in another proffer with him at this time because
13   we do not assess him as having been honest in the last
14   proffer.  If he will agree that he was dishonest in the last
15   proffer and would like to completely start over again with a
16   new proffer, acknowledging his culpability in this
17   conspiracy, we can look into doing another proffer."
18         MS. MONTOYA:  And, Your Honor, that is not the full
19   sentence, and that is not all that I said.  I said, "If you
20   would like to meet with him and send us the information, we
21   would be happy to look into it, but we are not interested in
22   another proffer with him at this time because we do not
23   assess him as having been honest in the last proffer.  If
24   you will agree that he was dishonest in the last proffer and
25   would like to completely start over again with a new
```

1   proffer, acknowledging his culpability in the conspiracy, we

2   can look into doing another proffer."

3          I just think that's --

4          THE COURT:  The sense I get from all this is that

5   they didn't think that Mr. Chang was forthcoming in his

6   initial meeting with them, and that's sort of outlined in

7   the presentence report where there's a section where

8   Mr. Chang sort of tends to minimize his role in this thing

9   until the government produces -- tells them what evidence

10  they have, and then he says, well, yeah, that's true, too.

11         So, in any event, they thought he was not being

12  completely candid with them, but they said if you want to

13  open the door with another proffer, we will be happy to hear

14  you.  That's where we are.  They didn't believe him, and he

15  said he was being truthful, and then what happened?

16         MR. O'DONNELL:  Yes, Your Honor.  Safety valve

17  itself is codified at 18 U.S.C. 3553(f).  It's also got a

18  mirrored provision found in United States Sentencing

19  Guidelines Section 5C1.2.  For clarity today, when I refer

20  to safety valve, I'm referring to both provisions.  There

21  are five requirements for safety valve.

22         THE COURT:  One at issue here is the one about the

23  completely truthful with the government.

24         MR. O'DONNELL:  That's correct, Your Honor.

25  3553(f).

```
 1            THE COURT:  As I read the rule, it seems to say it
 2    recognizes that a lot of people lie when they first get
 3    caught.
 4            MR. O'DONNELL:  It does, Your Honor.
 5            THE COURT:  And then it says by the time of
 6    sentencing, they have to be completely candid in order to be
 7    eligible for the safety valve.  I take it that your position
 8    is that while Mr. Chang may not have been as honest as a Boy
 9    Scout the first time he met with the police, by the end of
10    things, he had fessed up everything that he knew as honestly
11    as he could; is that right?
12            MR. O'DONNELL:  Just so, Your Honor.  So as the
13    Court's aware, Mr. Chang used no violence or threats of
14    violence.  There were no firearms used in the offense.  The
15    offense did not result in injury or death to any person.
16    Mr. Chang comes to the Court with just one criminal history
17    point.  The Court's already admitted my proffered exhibits
18    into evidence.
19            Before I call my witness, Mr. Galbreath, from the
20    DEA, I want to flag for the Court that after Mr. Galbreath
21    is done testifying, I'll seek to argue before the Court that
22    the safety valve should be applied, that an upward variance
23    is not justified in this case considering the role of this
24    defendant in the conspiracy and his criminal history, and
25    I'll explain -- well, I'm going to skip the whole discussion
```

```
 1    of fines since the Court's already ruled on that.
 2             THE COURT:  Let me just tell you the things that I
 3    find a little odd about your position in this case.
 4    Essentially, your contention is that Mr. Chang is, at best,
 5    the number two guy in this case underneath Mr. Campbell and
 6    maybe somewhere farther down the chain.
 7             The government's position is that he and Campbell
 8    are at least equals, if not having Mr. Chang being above
 9    Mr. Campbell in this whole drug conspiracy.  What I find odd
10    is that if Mr. Chang is not at the top of the ladder in
11    this, why he's the guy who was sending the drugs to
12    Mr. Campbell and then getting all the money?  That, to me,
13    is a little inconsistent with having Campbell be the boss.
14    Everyplace I've ever worked, the boss gets the money and
15    might give some of it to me but not all of it, and I don't
16    understand how that works.
17             MR. O'DONNELL:  Your Honor, I understand where the
18    Court's coming from.  I'm going to address those issues
19    head-on in my argument.  I'm not going to shirk them.  The
20    Court will hear from me on those, once I'm through the
21    examination of Mr. Galbreath.  I think that the examination
22    of Galbreath might start giving the Court an inkling of
23    where I'm going and why.
24             THE COURT:  All right.  So we've got the proffer
25    now done.
```

```
 1              MR. O'DONNELL:  Proffer is done, Your Honor.
 2              THE COURT:  Ms. Montoya, do you have anything that
 3    you object to in the proffer other than his failure to fully
 4    quote you?
 5              MR. O'DONNELL:  No, Your Honor.  Thank you.
 6              THE COURT:  Okay.  Thank you.
 7              MR. O'DONNELL:  My apologies.
 8              THE COURT:  It's okay.  Just call your witness.
 9              MR. O'DONNELL:  Thank you, Your Honor.  Call John
10    Galbreath.
11              THE COURT:  All right.  Mr. Galbreath is already
12    here.
13              THE WITNESS:  Good morning, Your Honor.
14              THE COURT:  Hello Mr. Galbreath.  How are you?
15              (Witness was sworn.)
16              THE COURT:  All right, Mr. Galbreath.  Thank you
17    for coming today, sir.
18              THE WITNESS:  Yes, sir.
19              THE COURT:  So just speak directly into the
20    microphone, and we will get through this.
21              THE WITNESS:  Yes, sir.
22              THE COURT:  All right.  Go ahead.
23              JOHN H. GALBREATH, called by the Defendant, having
24    been first duly sworn, was examined and testified as
25    follows:
```

1                        DIRECT EXAMINATION

2    BY MR. O'DONNELL:

3    Q.  Good morning, Mr. Galbreath.  Please state your name,

4    age, and occupation.

5    A.  John H. Galbreath, 45 years old, task force officer with

6    the DEA.

7    Q.  How long have you served in law enforcement?

8    A.  Total of 20 years:  Four and a half years corrections,

9    coming up on five corrections; 15 and a half state police.

10   Q.  Thank you for your service.  How long have you been on

11   the DEA task force?

12   A.  Approximately seven years.

13   Q.  Are you assigned to the Norfolk resident office?

14   A.  Yes, I am.

15   Q.  What, if any, particular geographic territory or area of

16   responsibility is covered by the DEA's Norfolk resident

17   office?

18   A.  Eastern District of Virginia, which includes the seven

19   cities; Portsmouth, Norfolk, Newport News, those locales.

20   Q.  Just so I'm clear, if there was a drug trafficking

21   enterprise operating in a place like Richmond, which is in

22   the Eastern District of Virginia, but it didn't touch Hampton

23   Roads at all, would your office -- would the Richmond office

24   cover that?

25   A.   The Richmond office would cover it unless we were

```
 1   requested to assist.
 2   Q.  Thank you.  By virtue of your role and experience as a
 3   DEA task force officer, are you or are you not generally
 4   aware of the policies and procedures used by the DEA
 5   regarding how interviews are to be reported?
 6   A.  I would say yes.
 7   Q.  Do the rules of procedures --
 8            THE COURT:  I think what he said is he is familiar.
 9            MR. O'DONNELL:  Yes.  He's aware.
10   BY MR. O'DONNELL:
11   Q.  Can interviews be recorded unless they always be typed in
12   summaries on a form 6?
13   A.  Called a DEA 6, yes, they can be recorded but we don't
14   always have a recording.
15   Q.  In your office you would have that luxury, presumably,
16   with recording equipment present in your office, right?
17   A.  If chosen, yes.
18   Q.  Thank you.  Tell us, within what time frame, if any, is
19   the DEA form 6 debrief supposed to be prepared after an
20   interview is conducted?
21   A.  It's usually within a five-day period.  Sometimes
22   operational needs, unfortunately, don't allow us to meet that
23   time frame.
24   Q.  What's the reason the DEA has remanded in a time frame
25   like that?
```

Galbreath, J. - Direct                                      20

1    A.  I would say like any other agency or operation, be as
2    fresh as possible when reporting.
3    Q.  What type of role, if any, did you play in the
4    investigation of David Chang and Harold Campbell, just
5    briefly?
6    A.  I was an Assistant U.S. Postal Service task force
7    officer, conducted it as just like any other DEA operation;
8    debriefings, surveillance, operational preparedness.
9    Q.  Gotcha.  What predicated the investigation?
10   A.  Special Agent Farrell initially found a postal worker who
11   was helping to deliver narcotics to Mr. Campbell, which was
12   identified.
13   Q.  Is that Robert Young, AKA, Shawan?
14   A.  That is correct.
15   Q.  Was he debriefed by law enforcement; Mr. Young?
16   A.  Yes, he was.
17   Q.  What, if anything, did Mr. Young tell law enforcement
18   about whether he ever met Harold Campbell?
19   A.   Initially, he told us he had not.  Once we furthered the
20   interview and did phone analysis and phone dumps, we
21   discovered that he had knowledge of them, and prior to
22   departing the initial arresting debrief, he fessed that he
23   knew Mr. Harold Campbell.
24   Q.  When did Mr. Young tell law enforcement about whether he
25   ever met David Chang?

Galbreath, J. - Direct                              21

1   A.  He did not tell us that he knew him.

2   Q.  What kind of prior criminal record did Harold Campbell

3   have before this case?

4   A.  He served federal time for --

5   Q.  And was that for possession with intent to distribute

6   cocaine base?

7   A.  That is correct.

8   Q.  And possession of a firearm in furtherance of drug

9   trafficking activity?

10  A.  That is correct.

11  Q.  He was sentenced in this very courthouse, wasn't he, in

12  2005 by Judge Doumar to 215 months?

13  A.  He was.

14  Q.  He later got that reduced, right?

15  A.  That is correct.

16  Q.  As a result of the investigation into this matter, in

17  October of 2021, did the DEA conduct a controlled delivery

18  search warrant at Campbell's residence?

19  A.  Yes.

20  Q.  Who, if anyone, was arrested that day?

21  A.  Mr. Campbell was taken into custody.

22  Q.  After the arrest of Campbell and the search of his

23  residence, was Mr. Campbell interviewed?

24  A.  He was.

25  Q.  There is a red binder right up there with you.  In that

1    you will find Defendant's exhibits that have been admitted in

2    this case already.  I want to direct your attention to

3    Exhibit 1A.  You will see a little sticker down in the right

4    corner.  Do you recognize what 1A is?

5    A.  Yes.  It is a DEA 6.

6    Q.  Feel free to pull any of these exhibits out of the

7    plastic sheeting they might be in.  Who prepared that report?

8    A.  Special Agent Farrell.

9    Q.  When was the report prepared?

10   A.  Preparation date was 11-4.

11   Q.  How can you tell the date it was prepared?

12   A.  It's visibly indicated on section number 8.

13   Q.  So this was a report prepared on November 4th, 13 days

14   after the interview of Mr. Campbell on October 22nd, right?

15   A.  Correct.

16   Q.  Was that not in keeping with the five-day guidelines

17   you've mentioned earlier?

18   A.  Yes.  But, again, there are times when we can't get

19   things done right away because of operational needs.  Anytime

20   something of this nature is not submitted in a timely manner,

21   a memo is written to rectify the issue.

22   Q.  Thank you.  So it appears Agent Farrell signed this on

23   November 29th, 38 days after the interview; am I correct or

24   not in that regard?

25   A.  That's what it indicates, yes.

1   Q.  When was the form signed by a DEA supervisor?

2   A.  12-1, which was two days later.

3   Q.  How can you tell?

4   A.  It's in section 15.

5   Q.  Okay.  In that first interview did Mr. Campbell identify

6   someone as a cocaine supplier?

7   A.  Yes.

8   Q.  Who is Tung T. Ha, AKA Bozz?

9   A.  Supposed to be an individual from California where he's

10  getting cocaine.

11  Q.  How did Campbell say he got the cocaine from Tung T. Ha,

12  Bozz?

13  A.  Well, let me double-check everything here.

14          THE COURT:  Is this somehow leading to whether your

15  client provided full information to the DEA?

16          MR. O'DONNELL:  Yes, Your Honor.  Some of this is

17  foundational.

18          THE COURT:  Whether Mr. Campbell is a saint or not,

19  can we move on to your client's honesty in this case.  That

20  seems to me to be the issue.

21          MR. O'DONNELL:  I appreciate the Court, Your Honor.

22  Pursuant to Rule 32 of the Rules of Procedure, I'm trying to

23  offer some evidence that the trier of fact, the Court, needs

24  to hear to gauge the honesty of my client.  I'm laying

25  foundation with some of these questions, and the Court, if

Galbreath, J. - Direct                                    24

1    it indulges me, will see that soon.
2              THE COURT:  All right.  Let's move it along.
3              MR. O'DONNELL:  Yes, sir.
4    BY MR. O'DONNELL:
5    Q.  Were any illicit drugs found during the search of
6    Mr. Campbell's residence?
7    A.  Yes.
8    Q.  A picture was produced by the government in discovery.
9    Look at, please, Exhibit 1B.
10   A.  Yes, sir.
11   Q.  That's the picture from -- of what was seized at
12   Campbell's residence?
13   A.  That is correct.
14   Q.  And there was an inventory produced from the search,
15   Exhibit 1C.  Would you look at that, sir.  Were drugs seized?
16   A.  Yes, sir.
17   Q.  What kind?
18   A.  Cocaine, there was some pills, we suspected was either
19   Adderall or fentanyl, ecstasy pills, but I believe it was
20   going to be Adderall pills.
21   Q.  Would it be fair to say there was nearly two kilograms of
22   cocaine individually wrapped, 900 ecstasy and Adderall pills?
23   A.  Yes.
24   Q.  Based upon your training and experience would the
25   quantity of drugs seized from Campbell's residence indicate

```
 1    personal use quantity or distribution quantity?
 2    A.   Definitely distribution.
 3    Q.   And the drugs appeared packaged for sale?
 4    A.   Yeah.
 5    Q.   And cash was seized?
 6    A.   Correct.
 7    Q.   Directing your attention now to the time frame of
 8    November 2021, other than Campbell, who did the DEA arrest in
 9    connection with this case?
10    A.   Mr. David Chang.
11    Q.   Were you or were you not present when Mr. Chang was
12    arrested in California on November 18th, 2021?
13    A.   I was.
14    Q.   Direct your attention to Defendant's Exhibit 2A.  That's
15    the first debrief of David Chang.
16    A.   Yes, sir.
17    Q.   Was Mr. Chang's home searched that day?
18    A.   It was.
19    Q.   Were you there?
20    A.   Yes, I was.
21    Q.   In terms of drugs, what, if anything, was recovered in
22    Mr. Chang's residence?
23    A.   To my knowledge, small amount of personal use cocaine.
24    Q.   Take a look at Exhibit 2D, please.
25    A.   Okay.
```

1   Q.  Do you recognize it?

2   A.  Well, yeah.  It was received by Special Agent Farrell

3   from special agent -- it's not up there.  He's a postal

4   agent.

5   Q.  Tell the Judge what that item is.  What is that?

6   A.  A search warrant inventory, Your Honor.

7   Q.  An inventory from the search of David Chang's residence?

8   A.  Correct.

9   Q.  You've told us personal use amount of cocaine was seized.

10  In looking at Exhibit 2B, how many pages is that inventory?

11  A.  Just one.

12  Q.  One of one?

13  A.  Correct.

14  Q.  As between the two men, Mr. Campbell and Mr. Chang, from

15  whose residence were more drugs seized?

16  A.  Mr. Campbell.

17  Q.  Take a look at Exhibit 2C.

18  A.  Yes, sir.

19  Q.  Do you recognize it?

20  A.  Correct.  It's the affidavit from Special Agent Faddis.

21  Q.  This is an affidavit in support of the arrest warrant of

22  David Chang dated the same day he was interviewed and his

23  place was searched; is that right?

24  A.  Correct.

25  Q.  Turn to Page -- to Paragraph Number 27, if you would,

1   sir.  Please read out loud the second and third sentence of

2   Paragraph 27 so I can ask you a question.

3   A.  You said Paragraph 27?

4   Q.  Paragraph 27, second and third sentence.

5   A.  All right.

6   Q.  I think it begins, "Additional?"

7   A.  "A small personal use of" -- excuse me, "A small personal

8   use amount of suspected cocaine and a sum of cash was also

9   recovered.  Chang admitted that he used cocaine the previous

10  night and less than a gram of cocaine would be found on a

11  table within the residence.  Chang stated the cash in his

12  residence was from gambling proceeds."

13  Q.  So in the affidavit the agent is telling the Judge that a

14  small personal use amount of cocaine was seized.  Look again

15  at Exhibit 2B, the inventory from the search.

16  A.  Correct.

17  Q.  Tell me, where does it say any drugs were seized?

18  A.  It does not.

19  Q.  So the affidavit to the Judge was incorrect in that

20  regard?

21          THE COURT:  Okay.  Let's get to your client telling

22  the whole truth, which is the issue that we need to address

23  on the safety valve issue, not what some agent in California

24  said to get an arrest warrant, okay.

25          MR. O'DONNELL:  Yes, Your Honor.  The agent was

 1    here at Norfolk.
 2              THE COURT:  Well, the agent here in Norfolk.
 3              MR. O'DONNELL:  I'm seeking to establish for the
 4    Court that the paperwork that was supplied in this case is
 5    not -- it's dangerous to rely on it, that it's got omissions
 6    and misstatements of fact, and I'm trying to use that to
 7    show that my client --
 8              THE COURT:  All right.  Move it along.
 9              MR. O'DONNELL:  Yes, Your Honor.
10    BY MR. O'DONNELL:
11    Q.  Turning your attention now to the second interview of
12    Harold Campbell, March 15th, 2022.  Would you look at
13    Defendant's Exhibit 3.
14    A.  Okay.
15    Q.  Now, that was another debrief, right?  It wasn't
16    recorded, it was just summarized on a form 6, correct?
17    A.  Yes, sir.
18    Q.  All the debriefs in this matter were summarized on form
19    6; is that right?
20    A.  That is correct.
21    Q.  Who was present for the interview of Mr. Campbell, that
22    second interview?
23    A.  Myself, Task Force Officer Cox, and Special Agent
24    Farrell.
25    Q.  Direct your attention to Paragraph Number 2.  According

1    to the report was it or was it not Harold Campbell who
2    approached Chang to see if Chang would get him a marijuana
3    plug?
4            THE COURT:  You have already proffered this, and
5    the government has agreed to it.  Let's move on to things
6    that aren't in evidence.  Come on.
7            MR. O'DONNELL:  Yes, Your Honor.
8    BY MR. O'DONNELL:
9    Q.  Go to Paragraph 6, please.
10           MS. MONTOYA:  Just what document is this?
11           MR. O'DONNELL:  I'm sorry.  I'm on Defendant's
12   Exhibit 3.
13   BY MR. O'DONNELL:
14   Q.  Paragraph Number 6, Defendant's Exhibit 3, please read
15   the first two sentences of Paragraph 6 so I can ask you
16   questions.  Would you read it out loud now, please.
17   A.  Yes.  "Campbell was aware that Chang also mailed cocaine
18   to Hawaii.  Campbell's best friend, Tony Nguyen, travels back
19   and forth from Long Beach to Hawaii and is also largely
20   involved in gambling.  Nguyen runs slap houses in Hawaii and
21   Campbell" --
22   Q.  Thank you, sir.  That is enough.  Who is Tony Nguyen?
23   A.  He was the gentleman who was at the residence of
24   Mr. Chang at the time.
25   Q.  In California?

Galbreath, J. - Direct                                    30

```
 1   A.  That is correct.

 2   Q.  Based upon everything you know and you have heard in this

 3   investigation, was Tony Nguyen best friends of Campbell or

 4   not?

 5   A.  Of Campbell?

 6   Q.  Of Campbell.  It says that in that report, does it not?

 7   Campbell's best friend, Tony Nguyen.  That's incorrect, isn't

 8   it?

 9   A.  I don't know to what extent they were friends, though,

10   but --

11           THE COURT:  I've read the document in this case and

12   Nguyen was Chang's friend.

13           MR. O'DONNELL:  Thank you.

14   BY MR. O'DONNELL:

15   Q.  Mr. Nguyen was interviewed by the DEA on the day of

16   Chang's arrest, right?

17   A.  Yes, sir.

18   Q.  Did he ever tell you that Mr. Chang mailed cocaine to

19   Hawaii?

20   A.  He did.

21   Q.  He did not?

22   A.  No, he did.

23   Q.  He did?

24   A.  Yes, sir.

25   Q.  Where is that in his report?  I want to direct your
```

```
1    attention to the debrief, 2D, debrief of Tony Nguyen on
2    November 18th.
3    A.  2D you said?
4    Q.  2D, Exhibit 2D.
5    A.  Which paragraph, sir?
6    Q.  Paragraph -- excuse me one second.  Page 2, second
7    paragraph.
8    A.  Page 2, that's going to be --
9    Q.  You were telling me that --
10          THE COURT:  What are you asking him about page 2,
11   the second paragraph?
12          MR. O'DONNELL:  Yes, Your Honor.  The witness had
13   just told us under testimony, if I'm correct, and please
14   correct me if I'm wrong, that Mr. Nguyen had told you --
15          THE COURT:  What is the question about page 2,
16   second paragraph?  Ask him the question.  You pointed him to
17   it.  Now ask him a question.
18   BY MR. O'DONNELL:
19   Q.  What quantities of cocaine has Mr. Nguyen seen Mr. Chang
20   with, last sentence?
21   A.  It says small amounts of cocaine, correct -- small
22   quantities of cocaine, I'm sorry.
23   Q.  Thank you, sir.  Where in that report -- you tell us
24   where in the report does it tell us that Tony Nguyen saw
25   Mr. Chang mail cocaine to Hawaii?
```

```
 1              THE COURT:  I thought Nguyen was in Hawaii at some
 2    point and got the cocaine.  Isn't that what happened?
 3              MR. O'DONNELL:  No, it never happened.  This is all
 4    made up by Mr. Campbell.  It didn't happen at all.  It's not
 5    in this form 6 at all.  There is no record of --
 6              THE COURT:  Okay.  Move it along.
 7              MR. O'DONNELL:  Yes, Your Honor.
 8    BY MR. O'DONNELL:
 9    Q.  Now, that section where he says that Mr. Chang -- this is
10    the fifth line down on Paragraph Number 6 where Campbell
11    claims that Mr. Chang mailed cocaine to Hawaii.  Directing
12    your attention now to Defendant's Exhibit 3, Paragraph 6.
13    A.  Yes, sir.
14    Q.  Did Mr. Campbell also claim he traveled together with
15    Tony Nguyen and Mr. Change to Las Vegas?
16    A.  Yes.
17    Q.  What method of travel did he say the three men used?
18    A.  Let me see.
19    Q.  Was it a private plane?
20    A.  I'm not a hundred percent sure if I can recall that right
21    now.  I just know they had traveled.
22    Q.  Paragraph 6.
23    A.  Excuse me.
24              THE COURT:  Does it say in there what method of
25    travel they used?
```

Galbreath, J. - Direct                                              33

```
 1              MR. O'DONNELL:  It says a private plane, Your
 2    Honor.
 3              THE COURT:  All right.  Well, point it out to him.
 4              THE WITNESS:  Paragraph 6.  On which exhibit is
 5    this, please?
 6    BY MR. O'DONNELL:
 7    Q.  Exhibit 3.
 8    A.  Okay.  I'm on the wrong one.  I'm sorry.  And Paragraph
 9    6?
10    Q.  Yes, sir.  Fifth line down.
11    A.  They flew on a private plane and stayed at the
12    Cosmopolitan.  Okay.
13    Q.  Was the pilot of the plane ever interviewed?
14    A.  No, sir.
15    Q.  Pilot's log obtained?
16    A.  No, sir.
17    Q.  Were the records from the Cosmopolitan obtained?
18    A.  No, sir.
19    Q.  Based upon your training and experience, can private
20    planes be used to smuggle drugs?
21    A.  By all means.
22    Q.  Directing your attention to the last numbered paragraph
23    of that Exhibit 3, Paragraph 12, what did Campbell tell the
24    DEA about the involvement of his friend Karmelita Prado in
25    terms of her involvement in the drug trafficking?
```

1   A.  He didn't want to involve her in this investigation.  We

2   attempted to present it, too, that we do know she was

3   involved, and she has mailed boxes before as well, which we

4   assume contained narcotics.

5   Q.  The DEA believes she was involved?

6   A.  Yes.

7   Q.  About how many packages did the DEA intercept in this

8   case that were found to contain cocaine?

9   A.  I think we probably, if I'm not mistaken, maybe about

10  seven.

11  Q.  Of the packages you had analyzed that were found to

12  contain cocaine, were the inside wrapping of those packages

13  examined for latent fingerprints?

14  A.  No, sir.

15  Q.  What about touch DEA evidence?

16  A.  No, sir, because we figured coming through the postal

17  system between anybody boxing it up, whether Mr. Chang or

18  Ms. Prado or Mr. Campbell, there may be more prints on it.

19  But we did not, no, sir.

20  Q.  Just so you're aware, Mr. Galbreath, I'm talking about

21  the inside of the packages, not the outside.

22  A.  Correct.

23  Q.  Does or does not the DEA have pictures of Ms. Prado

24  mailing packages from California to Virginia?

25  A.  Yes, sir.

```
1    Q.  Does that report, Exhibit 3, fairly summarize everything
2    that Mr. Campbell told you that day?
3    A.  I would say yes.
4    Q.  Thank you.  Take a look at Exhibit 4A.  That's the
5    proffer letter from David Chang's last attorney, Amanda
6    Conner.  Direct your attention to the bottom of Page 5.  What
7    did Mr. Chang proffer about mailing multiple packages of
8    cocaine to Virginia?
9    A.  Is this what, this confirms he mailed multiple packages
10   of narcotics to obtain marijuana and accessories to Virginia,
11   including four packages of cocaine?
12   Q.  Yes, sir.
13   A.  Okay.
14   Q.  After the proffer letter was delivered to the government,
15   did there come a time when Mr. Chang was debriefed about
16   details of that proffer?
17   A.  He was.
18   Q.  Take a look at Exhibit 4B, please.  This is the second
19   debrief of David Chang on July 28th, 2022.  Who was present
20   for that final debrief of Mr. Chang?
21   A.  Myself and Special Agent Farrell.
22   Q.  Who prepared that for the Court?
23   A.  Special Agent Farrell.
24   Q.  When was it prepared?
25   A.  Preparation date is 8-1-2022.
```

```
 1   Q.  And when was it approved by Thomas Miles, the supervisor
 2   at the DEA?
 3   A.  This one doesn't have an approval date on it.
 4   Q.  It's missing the date entirely?
 5   A.  It is.
 6   Q.  That's the cover page of the report?
 7           MS. MONTOYA:  And, Your Honor, I just object to
 8   this.  No issue with this date missing on here was ever
 9   brought up to the government.  The reason there's not a date
10   is that this is a draft.  We were trying to get it over to
11   Ms. Conner as soon as possible.  If this is a draft that had
12   been asked for the approved copy, I certainly would have
13   furnished it.
14           MR. O'DONNELL:  Your Honor, I'm puzzled by after a
15   year --
16           THE COURT:  Objection is overruled.
17           MR. O'DONNELL:  Thank you.
18   BY MR. O'DONNELL:
19   Q.  What did Mr. Chang say about mailing packages containing
20   bulk accessories, such as speakers and other equipment, to
21   Virginia?
22   A.  He consistently told us that he thought he was mailing
23   speakers, and if you want to say I mailed cocaine, yes, I
24   did, here I am, but I thought that I was mailing speakers.
25   Q.  Did he say when he mailed those speakers?
```

1    A.  He didn't give a date.

2            THE COURT:  Why would anybody mail speakers from

3    California to Virginia?  It seems to me like -- I'm not an

4    audiophile, but we have a lot of speakers in Virginia.

5            MR. O'DONNELL:  Apparently, they are cheaper there

6    than here.  It's what I've been told, but I don't know.  I'm

7    not a speaker expert.

8            THE COURT:  You can go into Best Buy, I guess.  Go

9    ahead.

10   BY MR. O'DONNELL:

11   Q.  On the day of his debrief or any other day did Mr. Chang

12   ever claim that items went missing from his residence on the

13   day the DEA searched it, money from his wallet, a Gucci

14   jacket?

15   A.  I think he did mention somebody may have taken some

16   money.  It's money indicated on the receipt form, amounts of

17   money.  I don't know.  I didn't prepare this report, but the

18   amounts of money, I don't know, but it's indicated U.S.

19   currency was seized so...

20   Q.  Were his claims of these things missing reported

21   anywhere?

22   A.  To -- they were reported to myself and Special Agent

23   Farrell.

24   Q.  Is there a DEA 6 on it?

25   A.  No, sir.

Galbreath, J. - Direct                                        38

1  Q.  After the proffer debrief of Mr. Chang was completed --

2  let me pass that.  I think we have gone through that enough.

3       You told us a few minutes ago that Chang was asked by

4  Campbell to introduce him to a marijuana plug.  Tell the

5  Court what's a marijuana plug.

6  A.  A supplier, someone who gives a bulk supply of narcotics

7  to distribute it.

8  Q.  Would a cocaine plug be a cocaine supplier?

9  A.  That is correct.

10  Q.  In his third debrief -- this is Defendant's Exhibit 5,

11  Paragraph 2 -- Campbell told the DEA that Mr. Chang was

12  truthful in providing information relating to marijuana

13  connects, such as Mark the Farmer, Stan and Phong?

14  A.  Yes, sir.

15  Q.  And Mr. Campbell admitted in the same paragraph that

16  Mr. Chang introduced Campbell to each of them.  What did the

17  DEA learn from Mr. Campbell about Stan also supplying

18  cocaine?

19  A.  Other than having the name Stan, we haven't been able to

20  investigate anything as far as who he may be or what he does

21  supply.

22  Q.  Did Mr. Campbell mention in Paragraph Number 3 that he

23  went with Mr. Chang to a hotel in Hollywood to meet a new

24  potential source of cocaine named Jay or Jay Boss?

25            THE COURT:  All right.  You need to get to the part

```
 1    where you establish that your client is entitled to the
 2    safety valve.  The DEA and the FBI, to your surprise, are
 3    not on trial in this case.  All right.  Mr. Chang is on
 4    trial.  You need to establish that Mr. Chang told the truth
 5    and the complete truth.  So let's get to that.
 6              MR. O'DONNELL:  Yes, Your Honor.
 7              THE COURT:  Let's just assume for a second that
 8    Mr. Campbell is not the most honest person in the world.  He
 9    is, after all, a drug dealer, kind of like Mr. Chang.  So
10    let's get to the part where Mr. Chang tells the truth and
11    the whole truth so you can get him this safety valve you're
12    trying to get for him.
13              MR. O'DONNELL:  Yes, sir.  Then I have no further
14    questions for this witness at this time.
15              THE COURT:  This has been 50 minutes of useless
16    time for me.
17              MR. O'DONNELL:  Your Honor, I'm sorry the Court
18    feels that way.  I've been trying to lay a foundation to
19    show that the DEA's paperwork in this case isn't reliable
20    and that Mr. Chang was telling the truth.
21              THE COURT:  Okay.  So there is some errors in the
22    DEA paperwork.  Now, okay.  Do you have any questions --
23    thank you.
24              You don't have any questions, do you?
25              MS. MONTOYA:  No, Your Honor, I do not.
```

```
 1              THE COURT:  Sir, you may be seated.
 2              (Witness excused.)
 3              THE COURT:  Now, what is your next piece of
 4    evidence in this?
 5              MR. O'DONNELL:  Your Honor, argument from here.
 6    Just argument.
 7              THE COURT:  All right.  I think eventually Chang
 8    sort of came around and admitted that he wasn't a supplier
 9    of audio equipment and that he was in fact sending cocaine
10    to the guy in Virginia, Mr. Campbell.
11              MR. O'DONNELL:  If I may comment on that, Your
12    Honor.  Mr. Chang, I understand what he told the DEA was
13    that in the beginning he was mailing some prepackaged
14    packages for Mr. Campbell.  Later after he became a means of
15    introduction Mr. Campbell the marijuana and cocaine plug, he
16    knew they were mailing cocaine and marijuana back to
17    Virginia.
18              THE COURT:  That's good because he pleaded guilty.
19              MR. O'DONNELL:  Yes, he did, and he is, in fact,
20    guilty, Your Honor, and he has, in fact, accepted
21    responsibility for that.  I'm trying to distinguish that in
22    the proffer debrief the --
23              THE COURT:  So when did Mr. Chang finally come
24    clean and tell them the whole truth?
25              MR. O'DONNELL:  July 28th in the wake of this --
```

1          THE COURT:  What happened on July the 28th?  That's
2     the second final debrief of Mr. David Chang.
3          MR. O'DONNELL:  Yes.  3353(f) only requires that
4     not later than the time of sentencing.
5          THE COURT:  I understand that.  So that's what the
6     law says, and we don't need any evidence on what the law
7     says.  Thank you.
8          Ms. Montoya, tell me how it was that Mr. Chang, as
9     of this moment in time, has not told the DEA the whole truth
10    or you the whole truth.
11         Mr. O'Donnell, sit down and take your notes with
12    you.
13         MS. MONTOYA:  Yes, Your Honor.
14         THE COURT:  Hold on.  Let Mr. O'Donnell get his
15    notes there.
16         MS. MONTOYA:  Sorry.  Your Honor, here is why the
17    government submits Mr. Chang was not fully truthful in his
18    debrief on July 28th, 2022.
19         THE COURT:  That's the question.
20         MS. MONTOYA:  Yes.
21         THE COURT:  Because as I understand the law, it's
22    okay if he lied earlier, because we understand that, after
23    all, these people are criminals, so at some stage they're
24    going to try to lie their way out of it.  The point of the
25    guidelines is that we want to get to the point whereby the

```
 1    time they're sentenced, they have given them everything they
 2    want plus these other four conditions.  So tell me what
 3    falsehoods are still out there that Mr. Chang said.
 4          MS. MONTOYA:  Yes, sir.  And so the two big issues
 5    of the falsehoods are Paragraph 3 where Chang stated he
 6    understood that the packages he mailed to Campbell contained
 7    those speakers and other equipment.
 8          THE COURT:  All right.
 9          MS. MONTOYA:  And Chang said he was not aware that
10    that they contained cocaine.  And throughout that interview
11    with regard to this, he would say things like, You can prove
12    it, essentially you've got me, but I thought they contained
13    speaker parts.  That is a huge problem, in the government's
14    view, because he is minimizing his conduct, he is minimizing
15    his knowledge, and he is just not able to even be honest
16    about himself and what he did.
17          THE COURT:  Where does it say that he thought he
18    was sending these --
19          MS. MONTOYA:  So that is in Paragraph --
20          THE COURT:  Paragraph 3 he says he thought he was
21    mailing bulk accessories such as speakers for discounted
22    price and sold them for profit in Virginia, and he
23    understood contained those accessories, and Chang said he
24    was not aware that they contained cocaine, and he mailed
25    them strictly as a favor to a friend, his friend being
```

1    Mr. Campbell.  Chang said he used personal amounts of

2    cocaine.

3             All right.

4             MS. MONTOYA:  So I submit to you that based on the

5    phone evidence, based on the fact -- and Mr. Chang does

6    admit, I introduced Mr. Campbell to people for marijuana and

7    cocaine.  He admitted that in his proffer.  I submit that

8    saying, oh, I thought these boxes were just speaker parts,

9    that is entirely inconsistent with the investigation, and it

10   is not candid.

11            Further on, the second issue in Paragraph 3, Chang

12   said he purchased personal use amounts of cocaine from

13   Campbell and that Campbell was his source of supply for

14   cocaine.  It is entirely possible that Mr. Chang is a

15   cocaine user.  I submit to you that it is totally

16   implausible that Mr. Campbell, located in Virginia, is

17   acting as a source of supply for Mr. Chang in California,

18   for a number of reasons.  So, one --

19            THE COURT:  Well, especially, I mean, we have Chang

20   sending cocaine to Campbell in Virginia.  So why would then

21   Campbell be supplying cocaine to Chang in California?  That

22   doesn't --

23            MS. MONTOYA:  It makes zero sense, and it's double

24   the exposure.  It's double the chances of getting caught by

25   law enforcement if you mail it, and then in one round --

```
1            THE COURT:  Plus he mailed --

2            MS. MONTOYA:  And then mailing personal use back,

3    it is also totally inconsistent of everything that we know

4    about drug trafficking where we just don't see cases of a

5    drug distributor sending small gram quantities of cocaine

6    across the country in the mail.

7            THE COURT:  Well, didn't Campbell go to California

8    some?

9            MR. O'DONNELL:  He was in California at different

10   points, but he was also in Virginia.  And then also it's

11   implausible that Mr. Campbell, when he was in Virginia,

12   would have been a source of supply for cocaine for

13   Mr. Chang, who is in Southern California who had -- who,

14   obviously, knew people who distributed cocaine since he made

15   introductions for Mr. Campbell, well, why wouldn't you just

16   use those people as your source of supply?  Why would you

17   connect Mr. Campbell -- have Mr. Campbell get the cocaine,

18   risk that he is going to stomp on the product, dilute that

19   product so you're getting a less potent product as a cocaine

20   consumer.  That is implausible, it does not make any sense.

21            Furthermore, in the debrief or in the proffer when

22   asked about Tony Nguyen, he left out any information about

23   ever distributing cocaine to Tony, which Mr. Nguyen had said

24   that he received quantities for parties sometimes from

25   Mr. Chang.  So that's just yet another example.
```

1          And then I really think, you know, one of the
2     problems in the proffer is he asked at one point the agents
3     to show him evidence of anything.  Specifically, it was
4     about mailing packages to Hawaii, and really in the
5     Government's view, that's Mr. Chang's whole approach to this
6     prosecution, and sometimes defendants do that.  I'll only
7     admit to what you can prove.
8          That certainly happened in my career.  I prosecuted
9     defendants who have taken that task, but that is
10    inconsistent with being fully truthful about everything he
11    knows, which is the requirement for the safety valve.
12         So based on all those factors, I submit he has
13    failed by a preponderance to establish he has been fully
14    truthful; and, alternatively, given his role in the
15    conspiracy, even if the Court finds that he is eligible for
16    the safety valve, I'd ask for a sentence of greater than 72
17    months.  Thank you.
18         THE COURT:  Thank you.
19         Mr. O'Donnell, you want to respond to that?  Now we
20    have finally gotten down to the nub of this case.
21         MR. O'DONNELL:  Yes, Your Honor.
22         THE COURT:  They say that he lied about sending
23    speakers.
24         MR. O'DONNELL:  Yes, Your Honor.
25         THE COURT:  He lied about getting cocaine from

```
 1    Campbell and lied that Campbell was his source of supply,
 2    and he wasn't candid about supplying drugs to Nguyen.
 3            MR. O'DONNELL:  I'm anxious to address those, Your
 4    Honor.  I'm anxious to address those head-on.
 5            THE COURT:  Well, I'm anxious for you to address
 6    it, too.
 7            MR. O'DONNELL:  Good.  I've laid foundation showing
 8    sometimes the DEA's paperwork in this case is missing
 9    things, it's not accurate.  The debrief of Mr. Chang was
10    witnessed by an officer of the Court, Amanda Conner.  Amanda
11    Conner was there.  She watched the debrief.  She
12    participated in it.
13            From her objections to the presentence report, I'm
14    quoting, "Mr. Chang also told agents when he first met
15    Mr. Campbell, he only knew Mr. Campbell to mail speakers and
16    other discounted equipment he bought in California for a
17    discount.  But Mr. Chang made it clear this was when he
18    first met Mr. Campbell back in the summer of 2020, not later
19    on when Mr. Chang mailed the cocaine in question."
20            THE COURT:  This is the proffer letter, right?
21            MR. O'DONNELL:  This is in defendant's objections
22    to the presentence report, prior counsel stating this.
23            THE COURT:  The point is that the agents
24    misconstrued what Mr. Chang said, and that while he said at
25    one time I was sending speakers, really, later on I start to
```

1      send cocaine?

2              MR. O'DONNELL:  Right.  And she said she clarified

3      that with the DEA.  It was Mr. Chang and Ms. Conner's

4      impression that when they left the meeting that -- and I'll

5      quote back to Mrs. Conner -- she wrote, "Mr. Chang

6      reiterated more than once he was guilty.  He just wasn't

7      willing" --

8              MS. MONTOYA:  Your Honor, I object to any proffer

9      related to what Ms. Conner's impressions were of this

10     proffer.  She could have been called as a witness, then I

11     would have had an opportunity to cross-examine her about why

12     she was --

13             THE COURT:  Well, some objection to maybe quadruple

14     hearsay or something.

15             MS. MONTOYA:  I think she should have been called

16     as a witness because I certainly have cross-examination

17     material.

18             THE COURT:  Okay.  Go ahead.

19             MR. O'DONNELL:  Hearsay is admissible at a

20     sentencing hearing, and the government was free to call her.

21             THE COURT:  Well, hearsay is admissible from

22     witnesses but maybe not from you.

23             MR. O'DONNELL:  The point is that the statement,

24     the DEA, Exhibit 4B, Paragraph 3, it's vague.  It's

25     imprecise.  It doesn't nail us down in time.  Like a lot of

1     the reporting in this case, it was cryptic.  The proffer

2     letter was eight pages.  The debrief in this case was two

3     pages, maybe three.

4              The government is basing its entire version of what

5     the truth is on Mr. Campbell, who the Court's already

6     acknowledged lies because he's a drug dealer, and my client

7     also lied.  He's admitted that.  He admitted it in his

8     proffer, but he came clean on July 28th and his position,

9     Your Honor, is he told the truth, and he did not occupy a

10    greater role.

11             THE COURT:  Didn't you tell me or was it

12    Ms. Montoya who told me that Mr. Chang gave to Nguyen party

13    supplies of cocaine?

14             MR. O'DONNELL:  Mr. Chang admitted, and it's in the

15    reports, that he sold cocaine to friends and friends of

16    friends.  Mr. Tony Nguyen, when he was debriefed, said that

17    he would have friends who wanted cocaine from Mr. Chang.  He

18    never actually said it, if you're being precise, that he

19    received cocaine from.  He just made the introduction.  I'm

20    guessing that Mr. Chang was the plug in that situation for

21    personal use amounts of cocaine.

22             Now, these are not mutually inconsistent, Your

23    Honor.  You can mail packages not knowing what they are in

24    the beginning and then later you come to know.

25             THE COURT:  In Paragraph 5, says here that

1    Mr. Chang denied that Nguyen had any involvement with
2    cocaine distribution, but if he was getting party supplies
3    of cocaine, isn't that distribution?
4                 MR. O'DONNELL:  I don't know that --
5                 THE COURT:  People come to my house, and I give
6    them cocaine, which I don't do, but if I did, that would be
7    distribution, wouldn't it?
8                 MR. O'DONNELL:  Yes, but the report here is so
9    vague.  It's consistent with this -- Tony might have said,
10   hey, my friend Chang can hook you up, and go in the other
11   room, and then the two did a deal for cocaine.  That
12   wouldn't mean Tony Nguyen's a drug trafficker.  I mean, I
13   guess it gets into semantics of what is a drug trafficker.
14                THE COURT:  We are not anti-Semantic here.  So go
15   ahead.
16                MR. O'DONNELL:  The next thing the government says
17   that Mr. Chang lied about was his role in the conspiracy.
18   They are trying to say he is a supplier of cocaine.  In a
19   technical sense, he put stuff in the mail.
20                THE COURT:  I asked her at the end of this what the
21   things were that he is lying about now, and I think you have
22   addressed those.  It's clear that at some stage Mr. Chang
23   was in some sense supplying cocaine to Mr. Campbell, and he
24   pretty much admits that.
25                MR. O'DONNELL:  Yes.  He was putting cocaine in the

1    mail.

2            THE COURT:  Yeah.

3            MR. O'DONNELL:  And he was operating at Campbell's

4    directions.  Campbell initiated the whole conversation.

5    Campbell is the one, Your Honor, who comes before the Court

6    with a 20-year span history of drug trafficking.  He

7    approached Mr. Chang, who is a gambler who snorts cocaine.

8    He didn't have any prior drug trafficking history.  But he

9    wants money, and he introduces Campbell to plugs, marijuana

10   plugs, cocaine plugs.  Ms. Prado, who lives across the

11   street at one point from Mr. Chang, is Campbell's

12   girlfriend.

13           The two of them are putting packages in the mail.

14   Now, in the beginning Chang doesn't know that there is

15   cocaine going in the mail.  Later he does.  And that's what

16   he was trying to clarify.  He was afraid the DEA was going

17   to put more drug weight on him, right, increasing the

18   amount -- there were 65 --

19           MS. MONTOYA:  I object to that.

20           THE COURT:  Sit down.  Your objection is overruled.

21           You have made this point several times.

22           MR. O'DONNELL:  Yes, Your Honor.  Next point and

23   the final on the lies, Your Honor.  The DEA is saying that

24   based only on Campbell that he mailed packages to Hawaii

25   with cocaine.  They cite to Tony Nguyen.  I don't see it in

1    that report at all.  Tony Nguyen says he only saw Chang with

2    small amounts of cocaine.

3           Now, I'd like the Court to observe that in this

4    case Campbell met all of Chang's plugs, the cocaine plugs,

5    the marijuana plugs.  Why, if Mr. Chang is a higher level

6    supplier and Mr. Campbell is his customer, why is he

7    introducing his customer to all of his suppliers?

8           THE COURT:  Okay.  If Mr. Campbell is the boss in

9    this, and Mr. Chang is not the boss, why is Chang getting

10   all the money?

11          MR. O'DONNELL:  Chang wasn't getting all the money.

12          THE COURT:  Why is this money sent to Chang?

13          MR. O'DONNELL:  Recognize, Your Honor, that when

14   you buy drugs, you have to pay for them.  Money has to be

15   exchanged.  Money is getting shipped back from Virginia to

16   Mr. Chang on a couple of occasions.

17          THE COURT:  So Chang can pay off his supplier?

18          MR. O'DONNELL:  So it can be picked up by the

19   supplier.  It's sealed in a package.  Ms. Prado is also

20   involved in this.  There were 65 suspicious packages.  In

21   the beginning Mr. Chang didn't know fully what was going on.

22   Over time he knew or should have known, and he acknowledges

23   that, Your Honor.

24          THE COURT:  Okay.

25          MR. O'DONNELL:  But there is no information that he

1    sent anything to Hawaii.  Not supported by anybody.  Yes,
2    Your Honor, moving on.
3              THE COURT:  Thank you.  That's all the evidence and
4    argument on the safety valve, right?
5              MR. O'DONNELL:  Yes, Your Honor.
6              THE COURT:  Okay.  Ms. Montoya, do you have
7    anything more you want to say about the safety valve?
8              MS. MONTOYA:  Nothing further.  Thank you, Your
9    Honor.
10             THE COURT:  All right.  This is what I find.  I
11   find that Mr. Chang and Mr. Campbell are apparently both
12   scoundrels, and I find that Mr. Chang approached his
13   interviews with the FBI or the DEA, essentially giving them
14   as little as possible, and that he would only give them
15   information when they had evidence to prove the information
16   he was giving them, in essence, that they confirm what he
17   did.
18             Nevertheless, I find that by the date of sentencing
19   Mr. Chang had been honest with them, reluctantly so, but
20   honest.  So I find that Mr. Chang, by a preponderance of the
21   evidence, is entitled to the safety valve.  Nevertheless, in
22   my discretion, I decline to give Mr. Chang a sentence below
23   the mandatory minimum because I find that Mr. Chang was up
24   to his ears in this whole drug conspiracy, and I find that
25   Mr. Chang was as duplicitous as he could be at all times

1    with the DEA, and I find that the safety valve is for people
2    who essentially come clean.
3            Or Mr. Chang didn't come clean.  He was scrubbed
4    clean.  He told the truth only when he had to tell the truth
5    and when the FBI -- or the DEA demonstrated to him that
6    something other than the truth would not be useful to him.
7    I find that regardless of whether he told the truth,
8    Mr. Chang's goal in this whole enterprise was of a nature
9    that it would be unjust to go below the mandatory minimum,
10   so I'm not going to do that.
11           All right.  Now, that said, here is how the
12   guidelines work out in this case.  Based on the drug amount
13   in this case, Mr. Chang's base offense level is 26.  He gets
14   three points off for acceptance of responsibility.  That
15   leads to a total offense level of 23.  He has one criminal
16   history point, which makes him category one, and makes his
17   guideline sentence range 46 to 57 months on the distribution
18   charge.
19           Hold on just one second here.  The guidelines, of
20   course, are advisory only.  In this case they're irrelevant
21   because there is a mandatory minimum of five years.  I have
22   received two letters in this case.  One of them was from
23   Mr. Chang himself in which he apologizes for his role in
24   this, indicates that he loves his parents very much,
25   acknowledges that he has a sad situation with respect to his

1    brother, for whom he's estranged, and indicating that he

2    wants substance abuse treatment.

3          I also received today a letter from Sarah Long of

4    Houston, Texas, who says that she is Mr. Chang's girlfriend

5    and asks me to sentence him to serve his time in Southern

6    California because his parents and Ms. Long will be able to

7    visit him there.  That's something I would have done anyhow.

8    So, in fact, in my notes I'm prepared to suggest that he be

9    sentenced to Southern California somewhere.

10          So now we have essentially two requests for

11    variances here.  The defendant asks for a variance down to

12    36 months, but I indicated that we are going to follow the

13    mandatory minimum so that will be denied.  The government

14    asks for a variance to somewhere above 72 months.

15          Does either party have any other evidence on

16    sentencing that they want to introduce?

17          MS. MONTOYA:  No, Your Honor.

18          MR. O'DONNELL:  No, Your Honor.

19          THE COURT:  In that case, then, I will hear from

20    the government on the 3553(a) factors and request for

21    variance and the appropriate sentence.

22          MS. MONTOYA:  Your Honor.

23          THE COURT:  Then I'll hear from Mr. O'Donnell on

24    the very same issues, and then I'll hear from Mr. Chang, who

25    will have a chance to address the Court.

1        MS. MONTOYA:  The basis for the government's

2   request of a sentence in excess of 72 months is based on the

3   sentence the Court previously imposed for Mr. Campbell, as

4   well Mr. Chang's position within the conspiracy, that he was

5   higher up than Mr. Campbell.

6        Mr. Chang is the one who had the connections for

7   the sources of supply for cocaine.  He admits that --

8   Mr. Chang admitted that in his final proffer with the DEA,

9   and so this conspiracy spanned at least from March 2021

10  through October of 2021.  He was a source or connector or

11  middleman, and the conspiracy involved at least 2.71

12  kilograms of cocaine, as well as 907 grams of marijuana.

13       So this was not an isolated, discrete event.  This

14  was an ongoing conspiracy.  He played an important role,

15  sending packages from California, which is a source state

16  for cocaine and marijuana, to the Eastern District of

17  Virginia.

18       So for all of those reasons, as well as his

19  position within the conspiracy, I'd ask that be sentenced to

20  a sentence in excess of 72 months.

21       THE COURT:  Okay.

22       Mr. O'Donnell.

23       Ms. Montoya, isn't it true that Mr. Campbell had a

24  more substantial prior record than Mr. Chang?

25       MS. MONTOYA:  Yes, sir, that is absolutely correct.

```
 1   He had a prior federal drug conviction; whereas, Mr. Chang,
 2   I believe he just had a DUI.
 3           THE COURT:  Mr. Chang has virtually no criminal
 4   record?
 5           MS. MONTOYA:  What was that?
 6           THE COURT:  He had virtually no criminal record
 7   coming in this.  He is category one point.
 8           MS. MONTOYA:  Correct.  He had a driving conviction
 9   and then a conditional discharge for money laundering, so
10   very different, yes.
11           THE COURT:  What does a conditional discharge mean?
12           MS. MONTOYA:  I believe when Ms. Conner had looked
13   into that and obtained additional records, but I believe
14   there is a period that he has to be in compliance with the
15   Court, and then that's dismissed by the Court.
16           MR. O'DONNELL:  My understanding, too, Your Honor.
17           THE COURT:  If he toes the line, they will dismiss
18   the charges.
19           MR. O'DONNELL:  Since the Court's already observed
20   the difference in the criminal histories between the two
21   co-conspirators, I'll not belabor the point, but my client
22   has at least served his country in the past in the United
23   States Air Force and received an honorable discharge.  When
24   he was doing that service, his co-conspirator was apparently
25   involved in drug trafficking in the Eastern District of
```

```
 1   Virginia.
 2          So my client did introduce Campbell to marijuana
 3   and cocaine.
 4          THE COURT:  Wasn't your client also involved in
 5   illegal gambling at one time?
 6          MR. O'DONNELL:  That's, in fact, the prior
 7   conviction that we are just talking about, I think.  It was
 8   money laundering proceeds from a gambling activity.  That's
 9   what it was, Your Honor.
10          THE COURT:  Okay.
11          MR. O'DONNELL:  But it's not a prior drug
12   trafficking offense.
13          THE COURT:  I understand.
14          MR. O'DONNELL:  That is all I have, Your Honor.
15          THE COURT:  Mr. Chang, you now have the opportunity
16   to address me and tell me anything you want me to think
17   about in sentencing you.  If you want to do that, please
18   come up to the podium and speak directly into the
19   microphone, and I'll be happy to hear anything you want to
20   say.
21          THE DEFENDANT:  I want to, first and foremost, I'd
22   like to thank Jesus Christ, my Lord and Savior, for saving
23   my life.  I want to apology to Judge Gibney, the prosecutor.
24   I hope I'm the last Korean-American defendant to ever walk
25   into this court.  I'm actually embarrassed that --
```

```
 1          THE COURT:  Well, you're probably not going to be
 2   the last Korean-American to come in here.  I wouldn't worry
 3   about that.
 4          THE DEFENDANT:  This journey/experience has been
 5   both crazy and beautiful.  It's given me a chance to
 6   reflect, reevaluate, and reset my life.  The positive thing
 7   about struggles and troubles is that there is a thing called
 8   collateral beauty.  Although many times you can't see the
 9   beauty until you're older, but all this craziness shapes you
10   into who God wants you to be.  It's just hard to see it when
11   you're in the moment.
12          Both my mom -- my mom is turning 77.  My dad is 87.
13   They are both of advanced age, and I'm sorry, and I just
14   want to take care of them.  That's my only goal.  I want to
15   thank my first lawyer, Amanda Conner, and my second lawyer,
16   Mr. O'Donnell.  Thank you, and I'm sorry.  That's all I
17   have.
18          THE COURT:  Thank you very much.  You may be
19   seated.
20          MR. O'DONNELL:  Thank you, Your Honor.
21          THE COURT:  Mr. O'Donnell, let me say when I was
22   going through the papers getting ready for today, I was very
23   impressed with the depth in which you have gone into the
24   facts in this case.  You are as thoroughly prepared as a
25   lawyer that I've seen, and I thank you for that.
```

1          MR. O'DONNELL:  Thank you, Your Honor.  I'm new to
2    the CJA panel.
3          THE COURT:  You're not in the most lucrative
4    business as a court-appointed lawyer, but you handled this
5    in the finest tradition of the bar, of doing everything
6    within your ability to get ready for it, and I applaud you
7    for that.
8          MR. O'DONNELL:  Thank you, Your Honor.
9          THE COURT:  So here is where we are in this case.
10   These are 3553(a) factors.  Mr. Chang and Mr. Campbell
11   clearly were involved in sending cocaine and money back and
12   forth across the country, cocaine coming to Campbell, by and
13   large, for him to sell in Virginia.  It's really not a very
14   complicated scheme.  Chang would send it to Campbell and
15   Campbell would sell it, and it went on for a number of
16   months, and it was a lot of cocaine involved.
17          The history and characteristics of the defendant is
18   that Mr. Chang has virtually no criminal record.  His
19   personal history is that his parents raised him.  At some
20   stage Mr. Chang took a swerve on the road.  He served in the
21   military.  He's gone to high school and college and educated
22   himself.
23          He took up drinking and gambling and wound up with
24   a money laundering charge.  I'm familiar with how people get
25   involved in drinking, but it's puzzling to me that Mr. Chang

1    would get involved with this illegal gambling business, but

2    he did.  That kind of led him down the wrong road.

3          Mr. Chang is not married.  He has no children.  His

4    physical condition is good.  He does have a substance abuse

5    problem with alcohol.  He's educated.  He's got a high

6    school diploma and some college.  He has worked, not only

7    he's had illegal activities but he's worked.  Ironically, if

8    he were involved in sports gambling now, it would be legal,

9    something you could do.  Couldn't do it then, but you can do

10   it now.  He served in the Air Force and served his country.

11         So the next factor is the need to reflect the

12   seriousness of the offense, which is, of course, very

13   significant, and the need to promote respect for the law.

14   When Mr. Chang took his turn off the straight and narrow

15   into the world of gambling, respect for the law fell out of

16   his repertoire.

17         The next factor is the need for the sentence to

18   afford continuance deterrence.  I have no illusions that

19   anything I do today will provide general deterrence.

20   Mr. Chang and Mr. Campbell went off the street in terms of

21   distributing cocaine.  They were replaced immediately by

22   someone else.

23         I do hope, and I feel hopeful about this, that

24   Mr. Chang will be deterred from future activities like this.

25   Mr. Chang admitted, I think in his letter to me, a lot of

1   people go through jailhouse conversions.  When they get out,

2   they are less involved in following the Lord.  I don't know

3   where Mr. Chang fits on that, but I do think that he has

4   been motivated to go in a different way of life.  So I hope

5   and believe that this will deter him from future criminal

6   activity.

7            The next factor is the need to protect the public

8   from further crimes of the defendant.  That's not an

9   enormous factor here, nor is the need to provide him with

10  education, vocational training, medical care, or other

11  correctional treatment.  That's not a factor here.

12           I've considered the kinds of sentences available.

13  There's a maximum of 40 years, mandatory minimum of five,

14  fine of $5 million.  I've gone through the guidelines, which

15  are really irrelevant here because he has a mandatory

16  minimum.

17           I'll say this, even if I had granted Mr. Chang the

18  safety valve in this case, I would have given him the

19  sentence I'm going to give him today because I think his

20  culpability is at least equal with that of Mr. Campbell.

21           Well, the next factor is the need to avoid

22  disparities among similarly situated defendants.  I believe

23  that Campbell and Chang were both involved heavily in this,

24  and I'm trying to avoid a disparity with Campbell in this

25  case.  There is a motion for a variance.  Let me go back to

1  disparities.  It's true that Campbell is not a first-time
2  customer of this court, but it's also true that in this case
3  Mr. Chang was up to his ears in this conspiracy, and in
4  considering his culpability, I cannot help but note the cat
5  and mouse game he played with the DEA in this case in terms
6  of his willingness to come clean with them.

7          So I'm going to grant the government's motion for a
8  variance upwards in this case to 72 months.  I'm not
9  convinced that he is more culpable than Campbell, but he is
10 at least equally guilty with him.

11         Mr. Chang, please stand up.  Pursuant to the
12 factors set forth in 18 U.S. Code Section 3553(a) and the
13 Sentencing Reform Act of 1984, and having considered the
14 federal sentencing guidelines as advisory, it is the
15 judgment of the Court that you are hereby committed to the
16 custody of the U.S. Bureau of Prisons to be imprisoned for a
17 term of 72 months with credit for time served.

18         This is sufficient but does not exceed the amount
19 of time necessary to achieve the goals of sentencing as set
20 forth in 18 U.S. Code, Section 3553(a), reflects the
21 seriousness of the offense, promotes respect for the law,
22 provides just punishment, affords adequate deterrence to
23 criminal conduct, and protects the public from further
24 crimes that you may commit.

25         I recommend that you participate in any educational

1     or vocational training offered by the Bureau of Prisons.  I

2     also recommend that the Bureau of Prisons allow you to

3     participate in its 500-hour intensive substance abuse

4     treatment program if you qualify and volunteer.

5          I recommend that the Bureau of Prisons assign you

6     to a facility as close as possible to Los Angeles.  Upon

7     release from imprisonment, you will be placed on supervised

8     release for a term of four years.  So that means within 72

9     hours of your release from prison, you have to report to the

10    probation office in the district in which you are released.

11         While on supervised release, you will not commit

12    any federal, state, or local crime, you're not to unlawfully

13    possess a controlled substance, you will not possess a

14    firearm or destructive device.

15         You will comply with the standard conditions of

16    supervised release as recommended by the U.S. Sentencing

17    Commission and as they appear in the presentence report.

18    You will participate in a program approved by the probation

19    office for substance abuse.  This program may include

20    residential treatment and testing to determine whether you

21    have reverted to the use of drugs or alcohol with costs to

22    be paid by the government.  You will waive any rights of

23    patient confidentiality and allow the Court and probation

24    office to see any records from drug treatment.

25         You have indicated that you have a substance abuse

1    problem with alcohol.  So when you get out, you will not,

2    during the time you are on supervised release, you will not

3    drink any alcohol.  You will also not use any marijuana.  By

4    the time you get out, marijuana will be legal everywhere in

5    the country.  You do not need to have mood-altering

6    substances.  That is part of what has gotten you into the

7    mess you are in right now.

8          You will also attend Alcoholics Anonymous or a

9    secular equivalent approved by the Court.  You can find a

10   substitute for AA, and the Court and the probation office

11   approve it, that's fine.  When you get out, you will go to

12   90 meetings in 90 days, starting ten days after your

13   release.

14         You will have a sponsor who must agree to notify

15   the Court if he or she is your sponsor, and to notify the

16   Court if he stops being your sponsor, or she, whichever you

17   choose.  The sponsor does not have to tell the Court or the

18   probation officer anything about what is going on with you.

19         All right.  You will not incur new credit charges

20   or open additional lines of credit.  You will provide the

21   probation officer access to any requested financial

22   information.  I've considered your net worth and liquid

23   assets, your earning potential, and set forth.  I find

24   you're not capable of paying a fine.  No fine will be

25   imposed.  You will pay a special assessment in the amount of

1    $100, if you haven't already done so.  Technically, it is

2    due in full right now, but I recognize that you probably

3    don't have any money right now.

4           Any balance remaining unpaid on the special

5    assessment at the inception of supervision will be paid in

6    installments of not less than $10 per month until paid in

7    full.  Those payments will start 60 days after your

8    supervised release begins, give you a chance to get your

9    feet on the ground and get a job.  The payment of any unpaid

10   balance is a special condition of supervised release.  Is

11   there a forfeiture in this case?

12          MS. MONTOYA:  No, Your Honor.

13          THE COURT:  Sir, you have 14 days to appeal this

14   sentence to the United States Court of Appeals for the

15   Fourth Circuit.  You can talk to Mr. O'Donnell about how to

16   do that.  You have to file a notice of appeal.  You do not

17   have to pay any money to appeal.  You can file the notice of

18   appeal without paying the fee to do so.  Mr. O'Donnell, I'm

19   sure, will be happy to tell you what your rights are in that

20   effect.  If you want to appeal it, he will file the

21   appropriate documents for you.

22          Anything else, Ms. Montoya?

23          MS. MONTOYA:  Nothing further from the government.

24   Thank you, Your Honor.

25          THE COURT:  Anything else, Mr. O'Donnell?

```
 1              MR. O'DONNELL:  No, Your Honor.

 2              THE COURT:  Again, good job, Mr. O'Donnell.  You

 3     did a nice job on a difficult case.

 4              Let's recess right now and come back here ASAP to

 5     do the next case.

 6              (Hearing adjourned at 10:32 a.m.)

 7                            CERTIFICATION

 8

 9        I certify that the foregoing is a correct transcript

10     from the record of proceedings in the above-entitled matter.

11

12

13          X_____/s/_____x

14                    Jody A. Stewart

15          X_____11-14-2022 _____x

16                       Date

17

18

19

20

21

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 2:21-CR-000146-01

DAVID HYUN CHANG,

         Defendant.

<u>NOTICE OF APPEAL</u>

     Notice is hereby given that David H. Chang, the defendant named above, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the Order entered in this action on the 21st day of October 2022.

                             Respectfully submitted,

                             DAVID HYUN CHANG

                             By_____/s/_____
                                  Of counsel
                             Christopher J. O'Donnell
                             VSB # 88519
                             Attorney to David Hyun Chang
                             Christopher J. O'Donnell, PLLC
                             100 7th St., Suite 104
                             Portsmouth, VA 23704
                             (757) 301-0005 (office and fax)
                             (757) 544-8673 (mobile)
                             cjoAttorney@Gmail.com

Dated: October 24, 2022

**JA137**

**CERTIFICATE OF SERVICE**

I certify that on the 24th day of October 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to the following:

AUSA Megan Montoya
Assistant U.S. Attorney
United States Attorney's Office
101 W. Main St
Suite 8000
Norfolk, VA 23510

_____/s/_____
Christopher J. O'Donnell
VSB # 88519
Attorney to David Hyun Chang
Christopher J. O'Donnell, PLLC
100 7th St., Suite 104
Portsmouth, VA 23704
(757) 301-0005 (office)
(757) 544-8673 (mobile)
cjoAttorney@Gmail.com

**JA138**

AO 245B (Rev. 09/19) (VAE 01/22)  Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| | ) |
| v. | ) Case Number:     2:21CR00146-001 |
| | ) |
| DAVID HYUN CHANG, | ) USM Number:     75385-509 |
| | ) Christopher O'Donnell, Esq. |
| aka "Dave Cali" | ) Defendant's Attorney |
| | ) |

The defendant pleaded guilty to Count One of the Indictment.

The defendant is adjudged guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846; 841(a)(1); 841(b)(1)(B) | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE COCAINE | October 2021 | One |

The defendant is sentenced as provided in pages 2 through 7 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s)
Count(s)         ☐ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 21, 2022
Date of Imposition of Judgment

/s/
John A. Gibney, Jr.
Senior United States District Judge

24 October 2022
Date

**JA139**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case

Sheet 2 - Imprisonment

Page 2 of 7

| | |
|---|---|
| **Case Number:** | **2:21CR00146-001** |
| **Defendant's Name:** | **CHANG, DAVID HYUN** |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of SEVENTY-TWO (72) MONTHS.  The defendant shall receive credit for time served on this charge.

The Court makes the following recommendations to the Bureau of Prisons:

1.   THAT THE DEFENDANT BE DESIGNATED TO A FACILITY NEAR LOS ANGELES, CA;
2.   THAT THE DEFENDANT PARTICIPATE IN THE 500 HOUR INTENSIVE DRUG TREATMENT PROGRAM, IF HE QUALIFIES AND VOLUNTEERS;
3.   THAT THE DEFENDANT RECEIVE EDUCATIONAL AND VOCATIONAL TRAINING.

The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

      ☐   at _____ ☐ a.m. ☐ p.m. on_____.

      ☐   as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on _____    .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

**RETURN**

I have executed this judgment as follows: _____

_____

Defendant delivered on   _____   to_____

at_____, with a certified copy of this Judgment.

<br>

_____

UNITED STATES MARSHAL

<br>

By        _____

DEPUTY UNITED STATES MARSHAL

**JA140**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Page 3 of 7

| | |
|---|---|
| Case Number: | 2:21CR00146-001 |
| Defendant's Name: | CHANG, DAVID HYUN |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of FOUR (4) YEARS.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**JA141**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | |
|---|---|
| Case Number: | 2:21CR00146-001 |
| Defendant's Name: | CHANG, DAVID HYUN |

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____     Date

**JA142**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3A – Supervised Release

| Case Number: | 2:21CR00146-001 |
|---|---|
| Defendant's Name: | CHANG, DAVID HYUN |

# SPECIAL CONDITIONS OF SUPERVISION

1.    The defendant shall not incur new credit card charges or open additional lines of credit without the approval of the probation officer.

2.    The defendant shall provide the probation officer with access to requested financial information.

3.    The defendant shall participate, at no cost to the defendant, in a program approved by the United States Probation Office for substance abuse, which program may include residential treatment and shall include testing to determine whether the defendant has reverted to the use of drugs or alcohol, at the direction and in the discretion of the probation officer.

4.    The defendant shall waive all rights of confidentiality regarding substance abuse treatment in order to allow the release of information to the probation officer and authorize communication between the probation officer and the treatment provider.

5.    The defendant shall not consume any alcohol or marijuana, even if it becomes legal.

6.    The defendant shall participate in Narcotics Anonymous/Alcoholics Anonymous or a similar secular program.  Any program that the defendant chooses as a secular equivalent to NA/AA must be approved by the probation officer and the Court.  Within ten days of release, the defendant shall begin attendance in the selected program.  The defendant shall attend 90 meetings of the selected program within 90 days.  The defendant shall obtain a sponsor in the selected program who agrees to confirm the sponsor relationship with the defendant's probation officer and advise the probation officer if the sponsor relationship ends.

7.    The defendant shall pay the balance owed on any court-ordered financial obligations in monthly installments of not less than $10, starting 60 days after supervision begins until paid in full.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

Page 6 of 7

| Case Number: | 2:21CR00146-001 |
|---|---|
| Defendant's Name: | CHANG, DAVID HYUN |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ N/A | $ 0.00 | $ N/A | $ N/A |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ | $ |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:
    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.
    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

## JA144

| Case Number: | 2:21CR00146-001 |
|---|---|
| Defendant's Name: | CHANG, DAVID HYUN |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $_____ due immediately, balance due
     ☐ not later than _____, or
     ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $_____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $_____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:
     The defendant shall pay towards any remaining balance on his special assessment in monthly installments of at least $10, with payments to begin within 60 days of release from imprisonment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**JA145**

FILED: June 26, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

——————————

**No. 22-4605**
**(2:21-cr-00146-JAG-LRL-1)**

——————————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

DAVID HYUN CHANG, a/k/a Dave Cali,

                Defendant - Appellant.

——————————

O R D E R

——————————

David Hyun Chang appeals his sentence of 72 months' imprisonment following his guilty plea to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846. On appeal, Chang argues that the district court procedurally erred because it treated safety valve relief under 18 U.S.C. § 3553(f) as discretionary. The Government agrees that the district court procedurally erred and has therefore moved to remand this case to the district court for resentencing.

The command of 18 U.S.C. § 3553(f) is plain: when a district court finds that a defendant meets the five requirements in § 3553(f), as the district court here did, the court must disregard the mandatory minimum sentence when imposing a sentence—this is not a

**JA146**

matter of discretion.  *See United States v. Quirante*, 486 F.3d 1273, 1275 (11th Cir. 2007); *see also United States v. Aidoo*, 670 F.3d 600, 605 (4th Cir. 2012) (noting that "[t]he safety-valve statute requires sentencing courts to disregard any statutory mandatory minimum sentence" when defendant establishes five requirements (emphasis added)).[*] We therefore grant the Government's motion, vacate the sentence, and remand for resentencing.

Chang also requests that we reassign his case to a different district court judge upon remand.  "Reassignment is only warranted in unusual circumstances, none of which exist here."  *United States v. Galecki*, 932 F.3d 176, 195 (4th Cir. 2019) (internal quotation marks).  Accordingly, we decline to reassign this case on remand.

Entered at the direction of the panel: Judge Niemeyer, Judge Diaz, and Senior Judge Motz.

For the Court

/s/ Patricia S. Connor, Clerk

---

[*] Although Chang agrees that remand for resentencing is necessary based on the district court's procedural error, Chang opposes the Government's motion for remand. Chang asks this court to wait to order remand until after full briefing, asserting that if his appeal is heard after full briefing, this court would consider his substantive reasonableness argument.  Chang is mistaken.  Because, as the parties concede, the district court procedurally erred, we would not address Chang's substantive reasonableness argument even on plenary review.  *See United States v. Martinovich*, 810 F.3d 232, 243 (4th Cir. 2016).

2

FILED: June 26, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-4605
(2:21-cr-00146-JAG-LRL-1)
_____

UNITED STATES OF AMERICA

    Plaintiff - Appellee

v.

DAVID HYUN CHANG, a/k/a Dave Cali

    Defendant - Appellant

_____

J U D G M E N T

_____

In accordance with the decision of this court, the defendant's sentence is

vacated. This case is remanded to the district court for further proceedings

consistent with the court's decision.

This judgment shall take effect upon issuance of this court's mandate in

accordance with Fed. R. App. P. 41.

       /s/ PATRICIA S. CONNOR, CLERK

**JA148**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:21CR146-01 |
| | ) | |
| DAVID HYUN CHANG, | ) | |
| | ) | |
| Defendant. | ) | |

<u>POSITION OF THE UNITED STATES WITH RESPECT TO RESENTENCING</u>

The United States of America, through its attorneys, Jessica D. Aber, United States

Attorney, and Megan M. Montoya, Assistant United States Attorney, hereby submits its position

with respect to the defendant's resentencing. The government maintains that the defendant's lack

of candor during a debrief with federal agents precludes him from safety valve eligibility.

However, the government is not seeking to challenge the Court's prior ruling regarding the

defendant's safety valve eligibility at the defendant's resentencing hearing. Instead, the

government respectfully requests that the Court exercise its discretion and reimpose a sentence

of 72 months' imprisonment, which is sufficient, but not greater than necessary, to fulfill the

purposes of Section 3553(a). In support of this sentence, the government relies on its previous

arguments contained in its position on sentencing (ECF No. 50) and response in opposition to

defendant's sentencing objection (ECF No. 53), as well as the information below.

I.     **Background**

On November 18, 2021, Chang was arrested and charged by criminal complaint.  ECF No.

1. Campbell and Chang were later named in a one-count Indictment returned by the Grand Jury in

the Eastern District of Virginia, Norfolk Division, on December 16, 2021. ECF No. 8. Count One

charges Chang with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or

1

**JA149**

more of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii), from at least in or about March 2021 and continuing thereafter up to and including October 2021.

On April 1, 2022, Chang appeared before this Court and pleaded guilty to the one-count Indictment. ECF No. 34. The Court accepted Chang's guilty plea and found him guilty as charged, and sentencing was continued pending the completion of a presentence report. *Id.*

On October 21, 2022, the Court determined that the defendant was eligible for the safety valve but exercised its discretion and sentenced the defendant to 72 months' imprisonment, 4 years of supervised release, and a $100.00 special assessment. ECF No. 70.

On October 24, 2022, a Notice of Appeal was filed by the defendant. ECF No. 75. On appeal, the defendant took isolated comments made by the Court and argued that the Court failed to recognize that when the Court finds that a defendant meets the five requirements pursuant to 18 U.S.C. 3553(f), as the Court did in the defendant's case, the Court must disregard the mandatory minimum sentence when imposing a sentence. On June 26, 2023, the Fourth Circuit granted a motion to remand the case, vacated the defendant's sentence, and remanded the case to the Court for further proceeding. The case is reset for resentencing on September 29, 2023. For the reasons outlined below and raised in previous filings, the government maintains that a sentence of 72 months' imprisonment is sufficient but not greater than necessary in this case.

## II.     <u>Standards Governing Sentencing</u>

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several

**JA150**

courts must consider in determining an appropriate sentence." *Id.* at 90.  Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors.  *Id.* at 49-50.  The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence."  *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

## III.    Position on Sentencing and Argument

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.  For the reasons that follow, the government respectfully

3

**JA151**

submits that a sentence of 72 months' imprisonment is appropriate and reasonable in light of the Section 3553(a) factors.

A.    Nature and Circumstances of the Offense

The defendant was an active participant in an interstate drug trafficking organization that transported and distributed quantities of cocaine from California to the Hampton Roads area from approximately March 2021 through October 2021. Within the conspiracy, the defendant acted as a source of supply from California to his codefendant Harold Campbell in Virginia Beach, Virginia. Campbell then acted as a mid-level distributor of cocaine within the Eastern District of Virginia. The defendant's offense conduct warrants a significant period of incarceration.

B.    History and Characteristics of the Defendant

The defendant is a 45-year-old male who became a naturalized United States citizen in November 1996. PSR ⸮ 39. The defendant reported that he did not experience abuse in his home as a child, and that he enjoyed an "overall good upbringing." PSR ⸮ 41.

The defendant served in the United States Air Force for 4 years, from March 10, 1999, to March 9, 2003. PSR ⸮ 55. His DD Form 214 reflects his primary specialty was a journeyman in aircraft electrical and environmental systems. According to the defendant's Record of Nonjudicial Punishment Proceedings, on June 27, 2002, he was found in violation of Uniform Code of Military Justice, Articles 86, 91, and 92—it was noted that he "without authority, go from [his] appointed place of duty" (Article 86); was "disrespectful in language toward … a noncommissioned officer, … by saying to him 'I don't give a fuck I am hungry', 'I don't give a fuck I am leaving', 'l don't fucking care', 'fuck you I am leaving', 'You are a dick', or words to that effect" (Article 91); and failed to obey a lawful order [to get on the truck and go to work] "by wrongfully leaving the building and failing to get on the truck" (Article 92). The defendant's punishment was noted as

4

**JA152**

follows: "Reduction to the grade of Airman First Class suspended until 26 December 2002, after which time it will be remitted without further action, unless sooner vacated. 30 days extra duty." The defendant received the following awards and decorations: Air Force Training Ribbon, National Defense Service Medal, Armed Forces Expeditionary Medal, and Air Force Longevity Service Award.  He ultimately received an honorable discharge, and his rank at separation was senior airman (E-4).

The defendant clearly understands how to earn legitimate income, and he has worked a variety of jobs, including as a bank teller, a sales representative for Penske Truck Rental, and Firestone Tires. PSR ⁋⁋ 56-58.

At the time of the instant offense, the defendant was renting a condo with his friend and the two had been receiving eviction notices, but the defendant was not concerned because he reported that he had "been receiving eviction notices for a while and knows the eviction process can take a long time because California residents reportedly have a lot of rights." PSR ⁋ 45.

The defendant has a criminal history and has previously been convicted of DUI and Money Laundering. The defendant's money laundering conviction stems from his involvement in an illegal gambling organization that operated an unlawful sports gambling enterprise in which he acted as a money collector, money distributor, and bank in the organization by collecting and distributing money among the participants of the enterprise and holding large sums of cash for the advancement of the business. PSR ⁋ 33. According to records, between January 30, 2015 and February 2, 2015, the defendant conducted the exchange of illegal sports gambling proceeds, which in fact involved the proceeds of specified criminal conduct, with intent to promote the carrying on of specified criminal conduct; the total value of the property involved in such financial transaction(s) exceeded $100,000. Despite his prior convictions, the defendant chose to engage in

5

**JA153**

a conspiracy to distribute cocaine, demonstrating that he has not been deterred and does not respect the law.

      C.    <u>Other Factors to be Considered Under 18 U.S.C. § 3553(a)</u>

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense, afford adequate deterrence to future criminal conduct, and the need to provide the defendant with substance abuse treatment.

**IV.**    <u>**Conclusion**</u>

The United States respectfully submits that a sentence of 72 months' imprisonment is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the Court to impose the same.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:             /s/
Megan M. Montoya
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 W. Main St., Suite 800
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-3205
E-Mail Address: <u>Megan.Montoya@usdoj.gov</u>

**JA154**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of September 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of

record.

I hereby certify that on the 15th day of September 2023, I emailed a true and correct copy

of the foregoing to the following:

Kristie Milby
United States Probation Officer

                                                 /s/
                                 Megan M. Montoya
                                 Assistant United States Attorney
                                 Attorney for the United States
                                 United States Attorney's Office
                                 101 W. Main St., Suite 800
                                 Norfolk, VA 23510
                                 Office Number: 757-441-6331
                                 Facsimile Number: 757-441-3205
                                 E-Mail Address: Megan.Montoya@usdoj.gov

**JA155**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                                Criminal Action No. 2:21cr146-1

DAVID HYUN CHANG,
          Defendant.

## **ORDER**

The Court hereby places the parties on notice that the Court will consider an upward variance from the guideline sentencing range set forth by the Presentence Investigation Report for David Hyun Chang filed on September 11, 2023. (ECF No. 98.) The Court believes the following factors may merit an upward variance from the guideline sentencing range:

1.      The nature and circumstances of the offense;

2.      The seriousness of the offense;

3.      The need to provide just punishment for the offense;

4.      And the need to avoid unwarranted sentence disparities.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 26 September 2023
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

**JA156**

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     Norfolk Division

 3

 4  - - - - - - - - - - - - - - - - - -
                                       )
 5    UNITED STATES OF AMERICA,         )
                                        )
 6    v.                                )    CRIMINAL ACTION NO.
                                        )    2:21cr146
 7    DAVID HYUN CHANG,                 )
                                        )
 8          Defendant.                  )
                                        )
 9  - - - - - - - - - - - - - - - - - -

10

11

12                  TRANSCRIPT OF PROCEEDINGS

13                  (Resentencing hearing)

14                     Norfolk, Virginia

15                  September 29, 2023

16

17  BEFORE:   THE HONORABLE JOHN A. GIBNEY, JR.
              United States District Judge

18

19  APPEARANCES:

20          UNITED STATES ATTORNEY'S OFFICE
            By:  Megan Montoya
21               Assistant United States Attorney
                 Counsel for the United States
22
            CHRISTOPHER J. O'DONNELL, PLLC
23          By:  Christopher J. O'Donnell
                 Counsel for the Defendant
24

25
```

1          (Hearing commenced at 9:02 a.m.)

2          THE CLERK:  Case number 2:21cr146, United States

3     represented by Megan Montoya versus David Hyun Chang

4     represented by Christopher O'Donnell.

5          Is everybody ready?

6          MS. MONTOYA:  Government is ready to proceed.

7          Good morning, Your Honor.

8          THE COURT:  All right.  Good morning, Ms. Montoya,

9     Mr. O'Donnell, and good morning, Mr. Chang.  Good to see all

10    three of you today, and everybody else who is here.  We are

11    here today for Mr. Chang's sentencing.

12         Let's see.  Mr. O'Donnell, have you had a chance to

13    go over the presentence report with Mr. Chang, to review it

14    with him and to go over what the standard conditions of

15    supervised release, which are included in the presentence

16    report?

17         MR. O'DONNELL:  Yes, Your Honor.

18         THE COURT:  Do you have any objections to the

19    presentence report?

20         MR. O'DONNELL:  No, Your Honor.

21         THE COURT:  No objections at all?

22         MR. O'DONNELL:  The only objection we have is to

23    the addendum to the presentence report because the probation

24    officer, an addendum to, did not apply the safety valve.

25         THE COURT:  Okay.  It looks like we've been

1    instructed that we've got to apply it, and it will be
2    applied.
3              MR. O'DONNELL:  Thank you, Your Honor.  That will
4    short-circuit a lot of the argument I had on that issue, if
5    we can bypass that.
6              THE COURT:  Okay.  Ms. Montoya, have you had a
7    chance to review the presentence report, and do you have any
8    objections to it?
9              MS. MONTOYA:  Yes, sir, I've reviewed the
10   presentence report, and I have no objection to it.
11             THE COURT:  All right.  Great.  Thank you.  I just
12   put on these headphones.  Did you say something,
13   Ms. Montoya?
14             MS. MONTOYA:  I think my microphone was off, but
15   it's on now.
16             THE COURT:  Could you put -- you say something,
17   Mr. O'Donnell?
18             MR. O'DONNELL:  Can you hear me now?
19             THE COURT:  I can hear you now.  So I will adopt
20   the factual portion of the presentence report as a finding
21   of fact.  I found the last time around that Mr. Chang is
22   entitled to the safety valve, so there are no mandatory
23   minimums.  That means that we use the guidelines.
24             The base offense level in this case is 26, based on
25   the amount of drugs involved, which in his case are greater

4

than or equal to 100 kilograms and less than 400.  There are
no adjustments to the offense level.  So the adjusted
offense level is 26.  Mr. Chang has accepted responsibility,
so he gets three points off, making his total offense level
23.

He has one criminal history point, which makes him
a category one.  That makes the guideline sentence level 46
to 57 months.  The guidelines, of course, are advisory only,
and I believe there are motions to vary from that by both
the government and the defendant.

MR. O'DONNELL:  I hate to object and interrupt, but
perhaps this is the moment to do it.  I calculate the
guideline range from not 23 but to 21, because under Section
2D1.1(b)(18), when the safety valve applies, the defendant
gets a two-level reduction.  That would put his guideline
range in 37 to 46 months.

THE COURT:  Say that again.  2D1.1?

MR. O'DONNELL:  Right.  B as in boy, 18.

THE COURT:  2B1.1.

MR. O'DONNELL:  2D as in delta, 2D1.1.

THE COURT:  1.1.

MR. O'DONNELL:  B as in boy.

THE COURT:  Be as in baseball?

MR. O'DONNELL:  Yes, sir.

THE COURT:  Which number?

JODY A. STEWART, Official Court Reporter

**JA160**

1          MR. O'DONNELL:  18.

2          THE COURT:  Right.  You're exactly right.  Do you

3   agree with that, Ms. Montoya?

4          MS. MONTOYA:  Yes, Your Honor, I do.  I think the

5   new range would be 37 to 46 months.

6          THE COURT:  37 to 46.  All right.  But, still,

7   there is a motion to vary downwards by you, and one to vary

8   upwards by you, Ms. Montoya.

9          I have received only one letter in this case, a

10  letter from Sarah Long, his girlfriend.  I don't know

11  whether she is still his girlfriend, but she was at the time

12  we sentenced him the first time around, who is pretty

13  devoted to him, and asked that we assign him to Southern

14  California, to the Los Angeles area, specifically for prison

15  so that his parents can maintain contact with him.

16         I recommended that the first time around, and they

17  got the southern part right, they put him in South Dakota,

18  which is about as bad a place as you can be sent to prison,

19  as you can imagine.

20         All right.  So do you have any witnesses?

21         MS. MONTOYA:  No, Your Honor.

22         THE COURT:  Do you have any witnesses?

23         MR. O'DONNELL:  Just argument, Your Honor.

24         THE COURT:  Then I will hear the government on

25  their request for a variance, the 3553(a) factors, and the

```
 1   appropriate sentence.  If you could address his request for
 2   a variance as well.  I think when you address yours, you'll
 3   pretty much address his, but I'll be happy to hear anything
 4   you have to say about it.
 5            MS. MONTOYA:  Yes, Your Honor.  The government's
 6   position is that a sentence of 72 months is sufficient but
 7   not greater than necessary based on the 3553(a) factors.
 8   First, turning to the nature and circumstances of the
 9   offense, I would ask the Court to consider that this was not
10   a one-off.
11            THE COURT:  It was a hundred kilograms.
12            MS. MONTOYA:  Of converted drug weight.  I think
13   the total converted drug weight is 544.19 kilograms, but
14   it's 2.7 kilograms of cocaine as well as 907 grams of
15   marijuana.  But this is someone who participated in the
16   conspiracy from March through October of 2021.  So this was
17   not an isolated one-off event.  He had plenty of time to
18   withdraw from the conspiracy, and he chose not to do so.  He
19   also played an integral, and from the government's position,
20   superior role to Mr. Campbell in this conspiracy because
21   Mr. Campbell first reached out to Mr. Chang to get cocaine.
22            So Mr. Chang was essential to this cocaine
23   conspiracy because he had the connections, he made the
24   introductions to Mr. Campbell, and this was not just cocaine
25   that Mr. Chang was sending to Virginia.  A witness also
```

observed him sending, packaging up nine ounces of cocaine as
well as boxes of marijuana to Hawaii.  So this is someone
who is sending drugs in the mail to multiple different
states, and if anything, the drug weights in this case are
underrepresented because -- and I think probation has
calculated them appropriately, but I also think it
underrepresents the total scope of this conspiracy because
of the need to avoid double counting in the drugs, but based
on what the witness observed, as well as what he was sending
to Virginia, this is a significant quantity of drugs that
Mr. Chang was moving.

THE COURT:  So Mr. O'Donnell says that Mr. Chang is
really not as culpable as you might think because he is
simply a liaison or connection, I guess, between
Mr. Campbell and the ultimate source of this.  What do you
have to say about that?

MS. MONTOYA:  To that I say he had a superior
position to Mr. Campbell, and this cocaine conspiracy could
not have operated without Mr. Chang because Mr. Chang was
the one that had those connections and had those sources.

MR. O'DONNELL:  I'm sorry.  I do have to object on
relevance because under the law of the case doctrine, this
Honorable Court had an evidentiary hearing and ruled on this
issue.  The Court ruled that the defendant, Mr. Chang,
occupied at least an equal role but not a greater role.  The

1   law of the case --

2        THE COURT:  Thank you.  Your objection is

3   overruled.

4        MR. O'DONNELL:  Thank you, Your Honor.

5        MS. MONTOYA:  And so based on the Court's prior

6   comments, I think what the Court had said, to the best of my

7   recollection, is that the Court was not convinced he had a

8   superior role but had at least comparable to Mr. Campbell

9   who got 72 months in prison.

10       I'd also turn to the fact that Mr. Chang has not

11  led a completely law-abiding life.  This is someone who, by

12  his own statements, he had a good upbringing.  He had family

13  involvement.  He also worked a number of legitimate jobs,

14  and so he understands how to earn an honest living but has

15  chosen not to do so.  And so he has a prior conviction for

16  money laundering where he acted as a bank for an online

17  gambling group, and he distributed money and also collected

18  money for that group, and the money involved was over

19  $100,000.  That was at the age of 37, which also I think

20  sticks out to the government because it's not as if this is

21  a youthful indiscretion here.  This is somebody involved in

22  a somewhat sophisticated scheme acting as a bank.

23       THE COURT:  It seems to me that with Mr. Chang, he

24  had a relatively decent life for a long time, served in the

25  military and did a lot of good things, and then all of a

1  sudden everything went off the rails for him.

2          MS. MONTOYA:  Well, and I thought it was

3  significant, in the military, he was actually penalized

4  for --

5          THE COURT:  Okay.

6          MS. MONTOYA:  And what I think is significant about

7  that, Your Honor, is somebody with a lack of respect for

8  authority.

9          THE COURT:  Here is what happened.  Somebody told

10  him to do something, and he told them that they could go

11  have sex with themselves.  You know, you reach a point

12  sometimes when people are giving you orders where you break

13  bad, and, you know, I'm sure Mr. Chang wishes he hadn't done

14  it, and I wish he hadn't done it, but that kind of thing

15  happens, and he got punished for it.  I don't know that

16  that's a precursor to being a money launderer.

17          MS. MONTOYA:  What I think is significant with that

18  is that somebody in his past, who had a lack of respect of

19  the law, and then as the Court found when he sat down with

20  the DEA agents, he played a cat and mouse game with them.

21  So it's to this day at 45, this is somebody who still does

22  not respect the law and still needs to be deterred.

23          THE COURT:  Right.

24          MS. MONTOYA:  At 28 he had a driving with a BAC of

25  over .08.  He also, as detailed in Paragraph 36 --

1    THE COURT:  He's probably not the only person in
2  the courtroom that's done that.
3    MS. MONTOYA:  In Paragraph 36, in 2021, he had a
4  civil harassment restraining order as well, and so my point
5  in all of this is this is not somebody who has led a
6  completely honest, law-abiding life.  So for all of those
7  reasons, I'd ask the Court to impose a sentence of 72
8  months.  Thank you.
9    THE COURT:  Thank you.
10    All right, Mr. O'Donnell.  Let's hear from you on
11  this.
12    MR. O'DONNELL:  Thank you, Your Honor.  Good
13  morning again.  So the Court has expressed previously, as
14  has the prosecutor, the need to avoid unwarranted sentencing
15  disparities between this defendant and his co-defendant.  As
16  cited in my position paper --
17    THE COURT:  Here's the thing about your position.
18  You say on the one hand that -- and I think this is
19  accurate -- that really what we don't look at is individuals
20  but we look at nation-wide trends to see what ought to
21  happen in the case.  That's clearly what one of the purposes
22  of the guidelines.  But, on the other hand, you argue about
23  how much worse Mr. Campbell is than Mr. Chang.  Doesn't look
24  to me like you can have it both ways, can you?
25    MR. O'DONNELL:  Well, there are two separate

1   individuals.

2          THE COURT:  There are two separate individuals.

3          MR. O'DONNELL:  And they have different

4   backgrounds, and they had different drug weights, had

5   different criminal histories.  So all those things would be

6   an additional reason not to compare him, not incongruent

7   with the position.

8          The Court's concern seems to stem from 3553(a)(6).

9   That factor that the Court is to consider is unwarranted

10  sentencing disparities among defendants with similar records

11  who have been found guilty of similar conduct.  The men do

12  not have similar records.  Even their base offense level was

13  different.  Campbell was at 30, Mr. Chang was at 26.

14         So the need to avoid unwarranted sentencing

15  disparities can be addressed by simply looking at the

16  sentencing commission's database, the Jason database.  The

17  average sentence for someone in Mr. Chang's exact position

18  under 2D1.1 is a sentence of 31 months.  The median sentence

19  is 34 months.

20         Since the Court has singled out this particular

21  factor as being of concern, that's where we should start the

22  sentencing calculation from, a 31-month sentence.  Now I'm

23  asking for a downward variance, and I'm asking for that on

24  two separate grounds, grounds which are new, which have

25  developed since the defendant was first sentenced on October

21, 2022.  The downward variance is because of his health
problems.  Mr. Chang has been diagnosed with two significant
health problems.

        THE COURT:  He's got high cholesterol.

        MR. O'DONNELL:  High cholesterol.

        THE COURT:  Type II diabetes.

        MR. O'DONNELL:  Type II diabetes requiring daily
injection twice a day.

        THE COURT:  What is he being injected with?

        MR. O'DONNELL:  I do not recall the substance, Your
Honor.  I'm not a medical man, but I did file the
defendant's medical reports as attachment C to my sentencing
position paper, and it should be listed in there.

        THE COURT:  Hold on.

        MR. O'DONNELL:  Yes, sir.  It was filed under seal
with the Court's permission.

        THE COURT:  Right.  Here we go.  So he's got type
II diabetes.  Apparently, he's able to get this in South
Dakota.

        MR. O'DONNELL:  I have found the record, Your
Honor.  It's insulin he has to inject.  It's per sliding
scale is needed twice a day, 200 to 250 -- I don't know what
that is -- that's on the page called Bureau of Prisons
health.

        THE COURT:  I've got it.

1          MR. O'DONNELL:  Yes, sir.

2          THE COURT:  And then what's he take, Lipitor for

3    the cholesterol?

4          MR. O'DONNELL:  Yes, Your Honor.  Now, for both of

5    those maladies, Your Honor, diet and exercise are also

6    important.  The diet you are going to get at a federal

7    prison or at a federal prison camp is going to be severely

8    limited, and the defendant, as the Court's already observed,

9    is in Yankton, South Dakota.  The population of Yankton,

10   South Dakota, on the last sentence, was just over 15,000

11   people.  Defendant is actually from Long Beach, California,

12   a suburb of Los Angeles.

13         THE COURT:  The insulin is on an as needed basis,

14   but his daily medicine is Metformin.  Metformin is a drug

15   that stops your liver from sending sugar into your

16   bloodstream.  So instead of -- there are two ways you can

17   deal with -- there are a number of ways you can deal with

18   diabetes, but one is insulin, which puts extra insulin into

19   your system, and the other is Metformin, which decreases the

20   amount of sugar that goes into your system and makes it so

21   you don't need as much insulin because part of the problem

22   is either your pancreas stops generating enough insulin or

23   the insulin is ineffective.

24         How frequently has he been getting insulin shots?

25   Why don't you go ask him.

1          MR. O'DONNELL:  Yes, sir, Your Honor.

2          It depends on the blood sugar.  They have to

3    measure his blood sugar daily.

4          THE COURT:  What was his blood sugar today?

5          THE DEFENDANT:  It was 137 with medication.

6          THE COURT:  One point lower than mine was this

7    morning.

8          MR. O'DONNELL:  The fact that the blood sugar has

9    to be regularly measured is a consideration here, Your

10   Honor, because, you know --

11         THE COURT:  Do they do that at the prison where he

12   is assigned?

13         MR. O'DONNELL:  I think they do that at the prison,

14   but there is no doctor at Yankton last time he was there.

15   The doctor quit.  Yankton is not a populous area, so there

16   is not a lot of physicians and medical treaters there.  The

17   doctor that he had to see for his medical situations was

18   based in Texas, and he had to see him virtually.

19         THE COURT:  Well, that's not uncommon these days.

20         MR. O'DONNELL:  I'm afraid you're right.

21         THE COURT:  People in southwest Virginia see

22   doctors virtually all the time.  So, unfortunately,

23   Mr. Chang and I have several things in common.  One of them

24   is type II diabetes, and the other is high cholesterol.  And

25   we also both take Metformin, and we both take Atorvastatin,

 1    which is the generic form of Lipitor.

 2           Those things can be provided anywhere, and I'm sure

 3    he gets them in the prison.  I just don't see that as a

 4    reason to depart downward.

 5           MR. O'DONNELL:  The other basis for a downward

 6    departure was the prejudice Mr. Chang has suffered as a

 7    consequence of being resentenced.  The Bureau of Prisons has

 8    a program that was authorized by Congress, it's called the

 9    RDAP program.

10           THE COURT:  Right.

11           MR. O'DONNELL:  The Residential Drug Abuse Program.

12    Participation in that program, because the Court didn't

13    order it here, was voluntary.  One of the reasons that

14    Mr. Chang ended up in Yankton, South Dakota, was because he

15    expressed his desire to voluntarily join the RDAP program,

16    but where he was being held did not have that program.  So

17    he took a transfer to South Dakota just to get into the

18    program.  He has not been allowed to be in the program

19    because he didn't have his projected release date.

20           THE COURT:  I understand RDAP doesn't kick in until

21    the end of your sentence, in any event.  It starts like in

22    your last year or so.

23           MR. O'DONNELL:  The program for RDAP, as I

24    understand it, Your Honor, you're not eligible until you're

25    in the final 24 months of your sentence.

```
 1              THE COURT:  Okay.

 2              MR. O'DONNELL:  If he had been sentenced to 31

 3    months, as the Jason database adjusts the average, he would

 4    have been eligible on October 21, 2022, the day he got

 5    sentenced for RDAP.  He could have already been in RDAP.  He

 6    could already be done with RDAP.  RDAP would knock a year

 7    off a man's sentence.

 8              THE COURT:  Well, as I see his -- in these medical

 9    records you sent to me, they say that he has severe alcohol

10    use disorder but is currently in remission.

11              MR. O'DONNELL:  Yes, Your Honor.

12              THE COURT:  That's what the records say.

13              MR. O'DONNELL:  Yes, Your Honor.  The fact that the

14    gentleman is in recovery from alcohol is, I think, a reason

15    to credit him.  I mean, he's in a prison camp, not a prison.

16    He's doing everything he can do to rehabilitate himself.

17    He's trying to get into that RDAP program, but circumstances

18    beyond his control prevented him from doing it, and he

19    suffered the consequence.

20              THE COURT:  If he is in remission, does he need to

21    be in RDAP?

22              MR. O'DONNELL:  Well, the defendant had more than

23    one addiction issue.  The other was cocaine.  In fact, on

24    the day of his arrest, they found residual cocaine base on

25    his nightstand.  He has a drug problem.  He's been using
```

1    drugs, he's been abusing alcohol.  He's a gambler in the

2    past.  He's trying to reform himself.  He's trying to move

3    past all that.  He's trying to do everything he can do.  He

4    has been denied, by circumstance, of the resentencing, the

5    opportunity to do RDAP.  He has suffered prejudice here,

6    Your Honor.  I think that that's a worthy consideration of

7    the Court for a downward variance, and I know the Court

8    doesn't agree with me about the medical issue, but --

9         THE COURT:  Well, I mean, he has a medical issue,

10   but it's one that people can deal with in the prison system.

11        MR. O'DONNELL:  You can deal with it better, I'd

12   suggest, Your Honor, outside the prison system in Los

13   Angeles suburbs where there is millions of people, doctors.

14   He has TriCare Health insurance.  He can see the best

15   medical providers in the Los Angeles area.  Yes, Your Honor.

16   I understand I'll move it along.

17        THE COURT:  I've been dealing with this for a long

18   time.

19        MR. O'DONNELL:  Yes, Your Honor.

20        THE COURT:  Since I got old.

21        MR. O'DONNELL:  I'm getting there myself, Your

22   Honor.  I appreciate the Court's indulgence, Your Honor.

23        THE COURT:  That's okay.  Go ahead.  You're doing a

24   good job.

25        MR. O'DONNELL:  Thank you.  So when we get down to

1  it, Mr. Chang has been a model prisoner.  He's been in

2  custody since November 18th, 2021.  He's done everything he

3  can do to rehabilitate himself.

4          THE COURT:  Was he arrested after Campbell?

5          MS. MONTOYA:  Yes, Your Honor, that's correct.

6          MR. O'DONNELL:  Yes.

7          THE COURT:  So they caught Campbell and then

8  Campbell rolled over on him?

9          MS. MONTOYA:  Correct.

10          THE COURT:  Okay.

11          MR. O'DONNELL:  Campbell didn't actually roll over

12  on him for five months.

13          THE COURT:  Well, I understand.  These people, both

14  of them sort of leak out information as it becomes -- as the

15  government says, well, we know a little more.

16          MS. MONTOYA:  Just correct that, Mr. Campbell gave

17  access to his cell phone and within that had communications

18  with Mr. Chang that was before Mr. Chang was ever arrested.

19          THE COURT:  Okay.

20          MR. O'DONNELL:  But there is also a FaceTime

21  communication from Campbell's girlfriend, Carmelita Prado,

22  to Mr. Chang in which Campbell told her to take his cell

23  phones out of his residence along with cash, which she says

24  she did, and then he never gave up Carmelita Prado.  He

25  pretended that she wasn't involved in the conspiracy, and we

1    heard testimony about that last time from Task Force Officer
2    Galbreath who said the DEA thought she was involved.
3         THE COURT:  Now you're telling me once again that
4    his sentence should depend on Campbell's sentence.
5         MR. O'DONNELL:  No.  The point I'm trying to make
6    is that his role in the offense isn't greater than the other
7    folks.  The false statements he's made were made by the
8    other folks, and the need to avoid unwarranted sentencing
9    disparities, I've have been through, and we talk about the
10   Jason database.  I've addressed the government's issues for
11   an upward variance, I've addressed the issues for the
12   downward variance, and I'm ready to summarize.
13        THE COURT:  You make the point that while he
14   provided the drugs to Campbell, he really wasn't the source
15   of the drugs because he was essentially the middleman, I
16   think is what you are saying.  But here's the thing.  Isn't
17   that true of everybody except for whoever it is that grows
18   and manufactures the drugs?
19        I mean, you know, let's just assume these came from
20   the cartel in Mexico.  Granted that he's less blameworthy
21   than the people who run the cartel, but doesn't he have some
22   element of culpability because he is the source of a lot of
23   the drugs coming into the country or coming into Virginia,
24   rather?
25        MR. O'DONNELL:  Let's be clear.  The man's pled

1  guilty.

2          THE COURT:  I understand.

3          MR. O'DONNELL:  And he pled within a week of

4  Campbell.  So the fact is he accepted responsibility.  You

5  know, when we get into these discussions of drug

6  conspiracies and hierarchies, as the Court's now doing, I'd

7  suggest to the Court that there is a traditional hierarchy,

8  and that is you got the cartels bringing the cocaine in, and

9  further downstream people are stepping on it, cutting it,

10 and selling it eventually.

11         THE COURT:  Right.

12         MR. O'DONNELL:  So what we have here, though, is

13 Mr. Campbell, who had a prior drug history in federal court.

14 He recruited Mr. Chang because he was looking for a plug, a

15 supplier, first for marijuana, later for cocaine.  But

16 Mr. Campbell went with Mr. Chang to meet those suppliers.

17 It was just the physical distance.  He was based primarily,

18 Mr. Campbell, in Virginia Beach.  So he needed to get from

19 the suppliers to him, and that's where Mr. Chang came in.

20 That's why he was a partner in the conspiracy, not the

21 managing partner.

22         Remember, as I pointed out in the sentencing paper,

23 there was another guy involved in this who has been

24 convicted of this just in August.  He was a postal carrier,

25 a postal carrier in Virginia Beach.  He was recruited by

Mr. Campbell to provide Mr. Campbell with addresses on his
route to which drug packages could go.

THE COURT:  Right.

MR. O'DONNELL:  Then he would intercept those
packages and put them in the trunk of his car.  This was
always designed to protect who?  Mr. Campbell.  It did not
protect Mr. Chang.  When packages went back to Chang, they
went directly to his home.  In fact, the DEA intercepted one
such package.  It's how they identified him in part.

So the fact is that the defendant has done
everything he can do to accept responsibility.  The
probation officer found he accepted responsibility.  The
government did not object to that.  I think that if the
United States has persuaded the Court for the upward
variance, I'd ask the Court to consider, even if it doesn't
like the medical component, but to look at the prejudice he
suffered.

Remember, because of his diabetes, he's had to come
back from South Dakota for this hearing.  They put you on a
van.  You can't go to the bathroom.  You can't eat right.
You can't be monitored properly.  I mean, the whole thing is
arduous travel.  It was no virtual appearance, no way to get
him a pass for getting out of jail to come back here.  Now
he's got to go back.

Guess what?  We are about to have a government

```
 1   shutdown.  What is that going to do to this man?  He will
 2   probably be stuck at Western Tidewater Regional Jail until
 3   Congress works out a continuing budget.  So Western
 4   Tidewater does not have a good menu for people who are
 5   diabetics.  It's all starchy foods all the time.  It's very
 6   difficult for him to maintain himself.  These are fair
 7   issues for the Court to consider.  If the Court is going to
 8   go with the upward variance, I ask it to consider also
 9   dealing with the downward variance.
10           Have them cancel each other out.  Let's get
11   Mr. Chang to a guideline sentencing range, then perhaps,
12   Your Honor, we can have finality here.  We can move on from
13   the sentencing of David Chang once and for all.  I thank the
14   Court for its time.
15           THE COURT:  Thank you.
16           Mr. Chang, if there is anything you'd like to say,
17   now is your opportunity to speak to me, I'll be happy to
18   hear anything you have to say.
19           THE DEFENDANT:  I'd like to thank Jesus Christ, my
20   Lord and savior.  I was here last time, and I told you I
21   would never step in your court ever again.
22           THE COURT:  Lo and behold, here you are back again,
23   but I don't think this was what you were talking about then.
24           THE DEFENDANT:  My lawyer told me to mention that
25   I've gotten zero infractions, zero shots, zero write-ups.
```

1   There is a lot of drugs, alcohol, contraband at the federal

2   prison camps, which I have been to two of them, and I've

3   stayed away from all of that, got no write-ups.  I'm doing

4   my time the way I feel like I should be.  Me being pulled

5   here, I'm not accruing my First Step Act credits so that

6   kind of hurts me, too.

7           THE COURT:  Say that again.  You're not what?

8           MR. O'DONNELL:  You have to be at your designated

9   BOP facility to accrue First Step Act credits.

10          THE COURT:  Okay.

11          MR. O'DONNELL:  Every time he comes out of BOP, the

12  credits stop.

13          THE COURT:  I understand.

14          THE DEFENDANT:  For this bid, I've been shackled up

15  16 times.  Western Tidewater has been my 17th stop, so

16  either way I'm blessed.  It's been scary, but it's been a

17  blessing.  It saved my life, so I'm not going to complain.

18  I want to thank my lawyer for all the hard work he did, and

19  my appellate lawyer, Mr. Kaplan, for all he did, and you

20  won't see me here again.

21          THE COURT:  You didn't handle the appeal,

22  Mr. O'Donnell?

23          MR. O'DONNELL:  No, Your Honor.  I did not feel

24  equal to the task.  I have no appellate experience at the

25  appellate level, so I bowed out, and Mr. Chang and I agreed

1  on that.  So the attorney named Michael Kaplan, very

2  capable, handled the appeal.

3          THE COURT:  He did a pretty good job.

4          THE DEFENDANT:  Thank you.

5          THE COURT:  And you did a good job as well,

6  Mr. O'Donnell.

7          THE DEFENDANT:  Thank you, and that's all I have to

8  say.

9          THE COURT:  Anything else?

10          THE DEFENDANT:  No.

11          THE COURT:  Are your parents still alive?

12          THE DEFENDANT:  They are hanging in there.  My dad

13  is turning -- he was born in 1935, so in February he will be

14  turning 89, I believe, and my mom is turning 79 next month.

15          THE COURT:  Okay.  Thank you.

16          Well, let's take a look at the 3553(a) factors.  In

17  this case essentially the facts are that Mr. Chang sent

18  cocaine from California to Mr. Campbell in Virginia with --

19  he's been caught with 2.7 kilograms along with almost a

20  kilogram of marijuana, and the converted drug weight is 544

21  kilograms.  But we are sentencing based on a converted drug

22  weight of 100 to 400 kilograms.

23          Regardless of the amount, Mr. Chang was a pretty

24  significant supplier for a long time to Mr. Campbell, and

25  interestingly, he did it through the mail.  Mr. O'Donnell

1   makes the point that Mr. Chang is essentially a middleman,

2   that he got it from somebody else, and, of course, that's

3   true of virtually all wholesale suppliers.  They don't

4   create the product, they just provide it.

5          No matter how you cut it, this was a fairly

6   substantial conspiracy with a whole lot of drugs.  As I said

7   before, turning to the history and characteristics of the

8   defendant, Mr. Chang has virtually no criminal history.

9   He's, you know, got the offense for money laundering, and

10  he's got -- as I said the first time around when I sentenced

11  him, I re-read my comments, Mr. Chang had a pretty nice life

12  until he was in his mid-30s, and something went haywire on

13  him.  He took up gambling and drinking, he got the money

14  laundering charge, and it's really hard to understand

15  exactly what happened to him at that time.

16         He came from a family with loving parents.  He's

17  got a brother that he's estranged from.  I don't know

18  whether that remains the case, but it was when we were here

19  before.  He served in the military for four years and got an

20  honorable discharge.  There was the one blip in his record,

21  and Ms. Montoya makes a point about that, but I've got to

22  say, it's pretty clear to me he just got fed up with

23  something and had an outburst.  It certainly did not

24  characterize his entire time in the military.

25         His physical condition is good.  He does have type

1   II diabetes and high cholesterol.  Both of those are

2   controllable by medications.  He has a substance abuse

3   problem with alcohol.  Mr. O'Donnell says that he's got a

4   drug problem as well, and I hope that while he's in federal

5   custody he can do something about that.  He's managed to go

6   to college.

7           As far as employment skills, looks like his

8   employment skill over the past number of years has been

9   gambling.  He's not the most productive citizen that I've

10  seen, especially for someone with his criminal record.

11          The next factor is the need for the sentence to

12  reflect the seriousness of the offense.  Well, the offense

13  is pretty serious.  It's a lot of cocaine.  To promote

14  respect for the law.  You know, as I was going through the

15  materials, I re-read the testimony of the DEA agent who

16  testified the last time we were here, and I characterized it

17  the last time I sentenced Mr. Chang as a cat and mouse game.

18          Essentially what Mr. Chang seems to have done is to

19  have revealed information only when it became apparent to

20  him that not revealing it was not viable anymore.  So when

21  the government would tell him that it had some evidence,

22  then his story would become more expansive.

23          At one point Ms. Montoya suggested that what we

24  needed to do with Mr. Chang was to start the whole process

25  over again.  I'm not sure that that would have cured the

1  problem, but just the whole approach to the debriefing with
2  the authorities was one of someone who gives up what he has
3  to give up when he has to give it up out of respect for
4  himself and not for the law.
5       The next question is the need to provide just
6  punishment.  That's the hard question in this case because
7  the drugs that Mr. Chang brought into Virginia, like the
8  drugs that Mr. Campbell distributed, went to people of all
9  sorts.  Sure, there were people who bought those drugs that
10  wanted to have cocaine.  But there were also people who
11  probably woke up in the morning and said, I need to stop
12  this, but Mr. Chang's drugs got in the way of that so that
13  that had a ripple effect.  It's not just Campbell and Chang
14  and the postal worker.  There are individuals who suffer
15  from this, and their lives are damaged because of this, and
16  when their lives are damaged, there are ripple effects that
17  go out to their family members and so forth.
18       Mr. Chang is not like somebody who is selling
19  donuts that make people overweight and harm their lives that
20  way.  This has a much more broad and immediate effect, not
21  only on the individuals involved but those around him as
22  well.
23       The next factor is the need for the sentence to
24  afford adequate deterrence.  Well, as general deterrence, I
25  don't think anything I do today will deter other drug

1  dealers from dealing drugs either on a wholesale or retail

2  basis.  I've heard Mr. Chang talk about it, and I certainly

3  hope that Mr. Chang has gotten the message and is deterred

4  from future misconduct.

5       The next factor is the need for the sentence to

6  protect the public from further crimes of the defendant.

7  Well, I think that's really important here.  This fellow who

8  is dealing large amounts -- selling large amounts of drugs

9  on a wholesale basis, and that's something that the public

10  needs to be protected from.

11       The next factor is to give him education,

12  vocational training, medical care, and other treatment.  He

13  does have diabetes and cholesterol, but I think those

14  immediate situations can be handled in the prison.

15       I will recommend that he be eligible for the RDAP

16  program when he goes back to wherever he goes.  The kinds of

17  sentences available, there is a maximum sentence of 40

18  years, no mandatory minimum here.  He can be fined $5

19  million.  The guidelines, as I said earlier, are 37 to 46

20  months.

21       Next factor is the need to avoid sentencing

22  disparities among similarly situated defendants.  So

23  Mr. O'Donnell points out that Campbell got 72 months with

24  the worst record, but that really what we need to do is to

25  compare Mr. Chang to other people who are in a similar

1   situation.  I don't think we look just at the prior criminal
2   record.  We look at the conduct, and the conduct here is
3   that Mr. Chang was no small-time dealer.  He was a major
4   supplier.
5           There is a motion for a variance by the government
6   to 72 months because he was, as Mr. O'Donnell put it, a
7   partner in this enterprise.  There is a motion for a
8   downward variance by the defendant because of his health,
9   his lesser role in this offense compared to Campbell,
10  although I think that's debatable, and the fact that he's
11  already had some punishment, which has been harder than it
12  needed to be because he hasn't been able to get in RDAP, and
13  now having to come back here, apparently is unable to get
14  credit towards reduction of sentence or other benefits
15  through the system.
16          I'm going to deny the defendant's motion for a
17  variance.  The nature of the crime, the need to protect the
18  public, the amount of drugs involved, to me, make it so that
19  he's not really someone who should receive a downward
20  variance.  I'm going to grant the government's motion in
21  part.
22          Mr. Chang, I see a lot of people who seem to have
23  been born to commit crimes, you know.  They are raised in
24  homes with no parents, no guidance.  They have lives that
25  just begin in criminality in which their criminal conduct

1  gets worse and worse and worse, and you're different from

2  that. You're brought up in a good home, and then for some

3  reason, you really jump into criminal conduct with both feet

4  in your mid-30s. I think that that indicates a degree of

5  inexcusable seriousness that I don't see in a lot of other

6  people. I just don't understand that for you, Mr. Chang. I

7  don't get it.

8          Mr. Chang, please stand up. Pursuant to the

9  factors set forth in 18 U.S. Code, Section 3553(a) and the

10  Sentencing Reform Act of 1984, and having considered the

11  federal sentencing guidelines as advisory, it is the

12  judgment of the Court that you are here committed to the

13  custody of the U.S. Bureau of Prisons to be imprisoned for a

14  term of 69 months with credit for time served. This is

15  sufficient but does not exceed the amount of time necessary

16  to achieve the goals of sentencing as set forth in 18 U.S.

17  Code, Section 3553, reflects the seriousness of the offense,

18  promotes respect for the law, provides just punishment for

19  the offense, affords adequate deterrence, and protects the

20  public from further crimes you may commit.

21          I recommend that you participate in any

22  educational, vocational training offered by the Bureau of

23  Prisons. I also recommend that the Bureau of Prisons allow

24  you to participate in its 500-hour intensive substance abuse

25  treatment program, if you qualify and volunteer. I

1  recommend that the Bureau of Prisons assign you to a

2  facility as close as possible to L.A., to Los Angeles.

3        It's Los Angeles and not somewhere else in Southern

4  California; is that right, Mr. O'Donnell?

5        MR. O'DONNELL:  Yes, Your Honor.

6        THE COURT:  Upon release from imprisonment, you are

7  placed on supervised release for a term of ten years.  I'm

8  doing that because of your leap into a criminal lifestyle.

9  Your adoption of a criminal lifestyle just seems to be

10  wholehearted.

11        Within 72 hours of release from the custody of the

12  Bureau of Prisons, you are to report in person to the

13  probation office in the district to which you are released.

14  While on supervised release, you will not commit any

15  federal, state, or local crime.  You will not lawfully

16  possess a controlled substance.  You will not possess a

17  firearm or destructive device.  You will comply with the

18  standard conditions of supervised release as recommended by

19  the U.S. Sentencing Commission.

20        You will also comply with the following special

21  conditions:  As directed by your probation officer, you will

22  participate in a program approved by the U.S. Probation

23  Office for substance abuse, so they will be monitoring you

24  to make sure you don't go back to it.  This program may

25  include residential treatment and testing to determine

1    whether you have reverted to the use of drugs or alcohol.

2    The cost of this will be paid by the government so you don't

3    have to pay for it yourself.  You will waive any rights of

4    patient confidentiality and allow the Court and probation

5    officer to see any records from drug treatment.

6        You will also participate in Alcoholics Anonymous

7    or Narcotics Anonymous or the secular equivalent of those

8    programs.  If you want a secular equivalent of that, in

9    other words, the non-spiritual program, it has to be

10    approved by the Court.

11        Starting ten days after your release from prison,

12    you will attend 90 meetings of whatever program you choose

13    within 90 days.  Any combination of AA or NA meetings is

14    acceptable.  You must get a sponsor who will agree to notify

15    the Court that he or she is your sponsor and if or she stops

16    being your sponsor.

17        During the time you're on supervised released, you

18    may not drink alcohol or smoke marijuana.  By the time you

19    get out, marijuana is going to be legal everywhere, but you

20    don't need to take mood-altering substances that just leads

21    you into the kind of trouble that you have here today.  So

22    no alcohol or substances containing THC, the active element

23    in marijuana.

24        You will not incur new credit charges or open

25    credit cards or lines of credit without the approval of the

```
 1  probation officer.  You will provide the probation officer
 2  access to any requested financial information.
 3          I have considered your net worth and liquid assets,
 4  your lifestyle and financial needs as reflected in the
 5  presentence report, your earning potential, and the
 6  dependents relying on your support.  I find that you're not
 7  capable of paying a fine.  No fine will be imposed.  You do
 8  have to pay a special assessment in the amount of $100, if
 9  you've not already done so.
10          I take it he hasn't paid that, has he, to your
11  knowledge, Mr. O'Donnell?
12          THE DEFENDANT:  My hundred dollars?  Yeah, I paid
13  it, sir.
14          THE COURT:  He has paid it?
15          THE DEFENDANT:  I have.
16          THE COURT:  Good.  Well, congratulations.  I thank
17  you for doing that.  If there is any portion still owed on
18  that, it's a special condition of your supervised release --
19  was there a forfeiture in this case?  If there was, it's
20  made a part of the sentence and will be included in the
21  judgment.
22          Sir, you have 14 days to appeal the sentence to the
23  U.S. Court of Appeals for the Fourth Circuit.  You want to
24  do that, you have to file a notice of appeal.  Mr. O'Donnell
25  will do that for you if you ask him to.  You don't have to
```

1   pay any money to appeal.

2           Anything else, Ms. Montoya?

3           MS. MONTOYA:  Nothing further from the government.

4   Thank you, Your Honor.

5           THE COURT:  Anything else, Mr. O'Donnell?

6           MR. O'DONNELL:  No.  I think that covers it, Your

7   Honor.

8           THE COURT:  Mr. O'Donnell, let me thank you.  You

9   have done a terrific job for this gentleman.

10          MR. O'DONNELL:  Thank you.

11          THE COURT:  I'd like to congratulate you on doing

12  so well.

13          All right.  Mr. Chang, God bless you, sir, and good

14  luck.  Take him out.  I want to talk to counsel about

15  something unrelated to this case.  Actually, I want to talk

16  to Mr. O'Donnell about it.

17          (Hearing concluded at 9:55 a.m.)

18

19

20

21

22

23

24

25

1          <u>CERTIFICATION</u>

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6

7          X_____/s/_____x

8                    Jody A. Stewart

9                    X_____10-26-2023 _____x

10                   Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 2:21-CR-000146-001

DAVID HYUN CHANG,

                Defendant.

NOTICE OF APPEAL

Notice is hereby given that David H. Chang, the defendant named above, hereby appeals to the United States Court of Appeals for the Fourth Circuit from the Order entered in this action on the 29th day of September 2023. Mr. Chang and his counsel at the district court level respectfully request that the appeal be assigned to Matthew B. Kaplan, Esq., who handled the previous appeal in this same matter. Mr. Kaplan has already agreed to accept the reappointment.

Respectfully submitted,

DAVID HYUN CHANG

By_____/s/_____
          Of counsel
Christopher J. O'Donnell
VSB # 88519
Attorney to David Hyun Chang
Christopher J. O'Donnell, PLLC
100 7th St., Suite 104
Portsmouth, VA 23704
(757) 301-0005 (office and fax)
(757) 544-8673 (mobile)
cjoAttorney@Gmail.com

Dated: September 29, 2023

**JA192**

## **CERTIFICATE OF SERVICE**

I certify that on the 29th day of September 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to the following:

AUSA Megan Montoya
Assistant U.S. Attorney
United States Attorney's Office
101 W. Main St
Suite 8000
Norfolk, VA 23510

_____/s/_____
Christopher J. O'Donnell
VSB # 88519
Attorney to David Hyun Chang
Christopher J. O'Donnell, PLLC
100 7th St., Suite 104
Portsmouth, VA 23704
(757) 301-0005 (office)
(757) 544-8673 (mobile)
cjoAttorney@Gmail.com

**JA193**

AO 245B (Rev. 09/19) (VAE 01/22) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| | ) | *After Remand from the Fourth Circuit Court of Appeals* |
| v. | ) | Case Number:     2:21CR00146-001 |
| | ) | |
| DAVID HYUN CHANG, | ) | USM Number: 01080-506 |
| | ) | Christopher O'Donnell, Esq. |
| aka "Dave Cali" | ) | Defendant's Attorney |
| | ) | |

The defendant pleaded guilty to Count One of the Indictment.

The defendant is adjudged guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846; 841(a)(1); 841(b)(1)(B) | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE COCAINE | October 2021 | One |

The defendant is sentenced as provided in pages 2 through 7 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

September 29, 2023
Date of Imposition of Judgment

/s/
John A. Gibney, Jr.
Senior United States District Judge

2 October 2023
Date

**JA194**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 2 - Imprisonment

| | |
|---|---|
| **Case Number:** | **2:21CR00146-001** |
| **Defendant's Name:** | **CHANG, DAVID HYUN** |

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of SIXTY-NINE (69) MONTHS.  The defendant shall receive credit for time served on this charge.

The Court makes the following recommendations to the Bureau of Prisons:
1. THAT THE DEFENDANT BE DESIGNATED TO A FACILITY NEAR LOS ANGELES, CA;
2. THAT THE DEFENDANT PARTICIPATE IN RDAP'S 500 HOUR INTENSIVE DRUG TREATMENT PROGRAM, IF HE QUALIFIES AND VOLUNTEERS;
3. THAT THE DEFENDANT RECEIVE EDUCATIONAL AND VOCATIONAL TRAINING.

The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on_____ .

    ☐ as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____   .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to_____
at_____, with a certified copy of this Judgment.


_____
UNITED STATES MARSHAL

By      _____
DEPUTY UNITED STATES MARSHAL

**JA195**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case                                                               Page 3 of 7
    Sheet 3 – Supervised Release

---

| | |
|---|---|
| Case Number: | **2:21CR00146-001** |
| Defendant's Name: | **CHANG, DAVID HYUN** |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of TEN (10) YEARS.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**JA196**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 3 – Supervised Release

| | |
|---|---|
| Case Number: | 2:21CR00146-001 |
| Defendant's Name: | CHANG, DAVID HYUN |

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____   Date _____

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case   Page 5 of 7
Sheet 3A – Supervised Release

| Case Number: | 2:21CR00146-001 |
|---|---|
| Defendant's Name: | CHANG, DAVID HYUN |

## SPECIAL CONDITIONS OF SUPERVISION

1.   The defendant shall not incur new credit card charges or open additional lines of credit without the approval of the probation officer.

2.   The defendant shall provide the probation officer with access to requested financial information.

3.   The defendant shall participate, at no cost to the defendant, in a program approved by the United States Probation Office for substance abuse, which program may include residential treatment and shall include testing to determine whether the defendant has reverted to the use of drugs or alcohol, at the direction and in the discretion of the probation officer.

4.   The defendant shall waive all rights of confidentiality regarding substance abuse treatment in order to allow the release of information to the probation officer and authorize communication between the probation officer and the treatment provider.

5.   The defendant shall not consume any alcohol or marijuana, even if it becomes legal.

6.   The defendant shall participate in Narcotics Anonymous/Alcoholics Anonymous or a similar secular program.  Any program that the defendant chooses as a secular equivalent to NA/AA must be approved by the probation officer and the Court.  Within ten days of release, the defendant shall begin attendance in the selected program.  The defendant shall attend 90 meetings of the selected program within 90 days.  The defendant shall obtain a sponsor in the selected program who agrees to confirm the sponsor relationship with the defendant's probation officer and advise the probation officer if the sponsor relationship ends.

**JA198**

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
    Sheet 5 – Criminal Monetary Penalties

| Case Number: | 2:21CR00146-001 |
|---|---|
| Defendant's Name: | CHANG, DAVID HYUN |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ N/A | $ 0.00 | $ N/A | $ N/A |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ | $ |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:
    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.
    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19) (VAE 11/21) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

| | |
|---|---|
| **Case Number:** | 2:21CR00146-001 |
| **Defendant's Name:** | CHANG, DAVID HYUN |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐  Lump sum payment of $_____ due immediately, balance due
    ☐  not later than _____ , or
    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**JA200**